UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SALVO TECHNOLOGIES, Inc.,

        Plaintiff,

v.

LANDMARK AMERICAN
INSURANCE COMPANY and
ARGONAUT INSURANCE
COMPANY,

        Defendants.

CASE NO.: _____

DECLARATORY RELIEF
REQUESTED

DEMAND FOR JURY TRIAL

## <u>COMPLAINT</u>

Plaintiff Salvo Technologies, Inc. ("Salvo"), for its Complaint against Defendants Landmark American Insurance Company ("Landmark") and Argonaut Insurance Company ("Argo"), alleges as follows:

1.    This dispute arises out of Defendants' wrongful denials of insurance coverage in connection with lawsuits pending against Salvo in the United States District Court for the Southern District of New York and the Supreme Court for the State of New York.

2.    The New York State Attorney General, the City of New York, the City of Buffalo, New York, and the City of Rochester, New York have each sued several manufacturers, including Salvo, in separate lawsuits (collectively, the "New York Firearm Litigation").

3.      Allegations in those lawsuits fall within the scope of coverage provided under certain liability insurance policies issued by Defendants to Salvo and its parent company DBH Tides Salvo Holdco, LLC ("Holdco").   Accordingly, Salvo and Holdco timely notified Defendants of the New York Firearm Litigation and demanded that Defendants defend and indemnify Salvo, as each insurer's respective policy requires.   Defendants each denied coverage and refused to reconsider their positions despite a lengthy letter-writing campaign explaining why Defendants should each be defending and indemnifying Salvo.

4.      Defendants' wrongful coverage denials have left Salvo without the insurance coverage that it and Holdco specifically bargained and paid for. Defendants' wrongful coverage denials have also caused Salvo significant monetary loss.   That loss will continue to accrue so long as the New York Firearm Litigation continues and unless the Court compels Defendants to accept their contractual coverage duties.   Defendants' dereliction of those duties has forced Salvo to file this lawsuit.

## PARTIES, JURISDICTION, AND VENUE

5.      Salvo is a Florida corporation with its principal place of business in Largo, Florida.

6.      Argo is an Illinois corporation, with its principal place of business in Texas.

7.      Landmark is a New Hampshire corporation, with its principal place of business in Georgia.

8.     Salvo seeks a declaratory judgment that Defendants each owe contractual duties to defend and indemnify it against the New York Firearm Litigation.  Salvo further seeks monetary damages for breach of contract and an award of attorney's fees, costs, and other appropriate damages under Fla. Stat. § 86.121.

9.     As discussed further below, each Defendant's insurance policy carries a $1 million limit, and Salvo expects that the cost of defending against the New York Firearm Litigation will meet or exceed the policies' combined $2 million limits.  The value of the insurance coverage that Defendants have refused to provide already exceeds $75,000.

10.     This Court has personal jurisdiction over Argo because it transacts insurance business in Florida.  Argo has established the required minimum contacts with Florida by, among other things, negotiating the Argo Policy with Salvo and corresponding with Salvo about the purported lack of coverage under the Argo Policy in the State of Florida.

11.     This Court also has personal jurisdiction over Landmark because it, too, transacts insurance business in Florida.  Landmark has established the required minimum contacts with Florida by, among other things, negotiating the Landmark Policy with Holdco and corresponding with Holdco about the purported lack of coverage for claims asserted against Salvo under the Landmark Policy in the State of Florida.

12.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Salvo's claims occurred in this district.

3

Salvo designed and manufactured the products involved in the New York Firearm Litigation at its Largo, Florida headquarters.  The executives overseeing Salvo's operations during the time period relevant to the New York Firearm Litigation also worked at Salvo's headquarters.  The insurance policies at issue were also negotiated, at least in part, at Salvo's headquarters.

## FACTUAL ALLEGATIONS

### The New York Firearm Litigation

13.    The New York Attorney General (the "New York AG") sued Salvo and several other companies on June 29, 2022.  The defendants in that action (the "New York AG Action") removed it to the United States District Court for the Southern District of New York on July 19, 2022.  The operative Second Amended Complaint ("SAC"), which was filed on March 13, 2023, is attached hereto as Exhibit 1.

14.    The New York AG Action alleges that Salvo and other companies unlawfully marketed and sold unfinished frames and receivers—which customers then used to build so-called "ghost guns"—into the State of New York.  *See* SAC ¶¶ 1-3.  The New York AG Action further alleges that Salvo and the other defendants rely on the "fiction" that unfinished frames and receivers fall outside of the definition of a "firearm" under federal law in order to sell these items direct-to-consumers "without following any of the federal or state laws and regulations that apply to the sale of guns."  *Id.* ¶ 27.  In particular, the New York AG Action asserts that Salvo and other defendants do not conduct federally mandated background checks, do not

4

place a serial number on the unfinished frames and receivers that they sell, and do not enter the unfinished frames and receivers into the relevant federal databases. *Id.*

15.     According to the allegations in the New York AG Action, Salvo intentionally "attracted New York business and shipped unfinished frames and receivers into New York State." *Id.* ¶ 256.  The New York AG alleges that Salvo used "powerful marketing tool[s]" on its own website and through partnerships with other influential online figures to reach viewers that are "undoubtedly from New York." *Id.* ¶¶ 253, 266.

16.     Salvo allegedly sent "at least 38 packages" into New York "between March 4, 2021 and June 27, 2022." *Id.* ¶ 257.  A "significant portion" of these packages allegedly contained unfinished frames and receivers. *Id.* ¶ 260.

17.     The New York AG claims that Salvo sent "[a]t least one" of these packages into New York City after the City enacted a ban on unfinished frames and receivers on February 23, 2020.  She further claims that Salvo sent "[a]t least ten" shipments of unfinished frames and receivers into New York State after the State enacted legislation known as the Webster Act, which banned unfinished frames and receivers statewide. *Id.* ¶ 259.  The Webster Act became effective on April 26, 2022. *Id.* ¶ 97.

18.     The New York AG Action also alleges that Salvo sold a shipment of unfinished frames and receivers to an undercover employee of the New York City Sheriff's office "[o]n or around May 11, 2022." *Id.* ¶ 262.

19.     Based on these allegations, the New York AG claims that Salvo violated New York Executive Law § 63(12) by: (1) shipping and selling unfinished frames and receivers in violation of New York City law and the Webster Act; (2) aiding and abetting the possession of firearms by convicted persons; (3) aiding and abetting the possession of firearms by unlicensed person; (4) committing deceptive business practices; (5) committing false advertising; (6) aiding and abetting the possession of unserialized firearms; (7) transporting firearms without a federal firearms license; (8) transporting firearms in violation of law; (9) transporting firearms to a foreign state; (10) selling or delivering firearms to persons prohibited by state law; (11) selling or delivering firearms to persons convicted of serious crimes; (12) selling or delivering firearms without a background check; and (13) dealing in firearms without a license. *Id.* ¶ 599.

20.     The New York AG further claims that Salvo violated § 63(12) by "engag[ing] in repeated or persistent fraudulent conduct" by "misrepresenting . . . (1) that it is legal to sell and possess the firearms sold by [Salvo] in the State of New York and/or the City of New York; (2) that it is legal to sell or possess unfinished frames, unfinished receivers, and/or ghost guns in the State of New York and/or the City of New York; and (3) the legal requirements applicable to their sales of guns, including that only completed guns need to be sold by a dealer with an FFL, that purchasers of the guns sold by Defendants are not subject to background checks or waiting periods, and that the guns sold need not be serialized or recorded." *Id.* ¶¶ 601-05.

21.     The New York AG also alleges that Salvo's conduct constituted: (1) a public nuisance under New York General Business Law § 898-d, *id.* ¶¶ 606-17; (2) deceptive acts and business practices under New York General Business Law Article 22-A, § 349, *id.* ¶¶ 618-20; (3) false advertising under New York General Business Law § 350, *id.* ¶¶ 621-23; (4) negligence per se, *id.* ¶¶ 624-27; and (5) negligent entrustment, *id.* ¶¶ 628-34.

22.     The New York AG requests that the court enjoin Salvo from manufacturing unfinished frames and receivers or shipping such products into New York. *Id.* at Prayer for Relief ¶ 1. She also seeks restitution, civil penalties, punitive damages, costs and fees, and an order directing "Defendants, jointly and severally, to endow an abatement fund with sufficient capital to eliminate the public nuisance they are responsible for creating[.]" *Id.* ¶¶ 2-7.

23.     The City of Buffalo filed its lawsuit against Salvo and several other companies on December 20, 2022. The Complaint in that action is attached hereto as Exhibit 2.

24.     The City of Buffalo bases its complaint against Salvo largely on the New York AG's allegations. Citing the New York AG's complaint directly, Buffalo alleges that Salvo shipped unlawful unfinished frames and receivers "into New York State, including the City of Buffalo." *See* City of Buffalo Compl. ¶¶ 327-339. The City of Buffalo asserts that Salvo knew it sold unlawful products, but nonetheless sent these packages into New York "without conducting a background check or implementing

any other controls to prevent improper persons from turning its products into working ghost guns." *Id.* ¶ 338.

25.     The City of Buffalo claims that Salvo has created a public nuisance within the city under New York General Business Law § 898 (a-e) and New York common law. *Id.* ¶¶ 505-53. The City of Buffalo further claims that Salvo has committed deceptive business practices under New York General Business Law §§ 349 and 350. *Id.* ¶¶ 554-73.

26.     The City of Buffalo asks the court for compensatory, treble, and punitive damages, civil penalties, costs and fees, and on order (similar to that requested by the New York AG) directing the endowment of an abatement fund. *See id.* at Prayer for Relief.

27.     The City of Rochester filed its lawsuit against Salvo and several other companies on December 21, 2022. The Complaint in that action is attached hereto as Exhibit 3.

28.     The City of Rochester's allegations against Salvo are identical in all material respects to the City of Buffalo's. *See* City of Rochester Compl. ¶¶ 335-47. The City of Rochester asserts the same causes of action as the City of Buffalo. *See id.* ¶¶ 511-36 (violation of New York General Business Law § 898 (a-e)), ¶¶ 537-59 (common law nuisance), ¶¶ 560-69 (violation of New York General Business Law § 349), ¶¶ 570-79 (violation of New York General Business Law § 350). And the City of Rochester seeks the same relief as the City of Buffalo. *See id.* at Prayer for Relief.

29.     The City of New York also sued Salvo on June 29, 2022.  A true and accurate copy of the Amended Complaint in that action is attached hereto as Exhibit 4.  Like the suits filed by the Cities of Buffalo and Rochester, the City of New York asserted statutory and common-law nuisance claims against Salvo.  *See id.* ¶¶ 94-113.  Salvo has since settled with the City of New York and was dismissed with prejudice from that action on December 9, 2022.

## THE ARGO POLICY

30.     Argo issued Private Company Directors & Officers, Employment Practices and Fiduciary Liability Insurance Policy number ML4263632-0 (the "Argo Policy") to Salvo as the Named Insured for the Policy Period of April 25, 2022 to April 25, 2023.  A true and accurate copy of the Argo Policy is attached hereto as Exhibit 5.

31.     The Argo Policy's aggregate limit of liability is $1 million and there is a retention of $25,000 per Claim.  *See* Argo Policy at Declarations Item 4.

32.     The Argo Policy states that Argo "shall pay Loss of [Salvo] arising from a Claim first made during the Policy Period (or Extended Reporting Period, if exercised) against the Company for a Wrongful Act."  *See id.* at Insuring Agreement § I.C.

33.     The Argo Policy is a "run-off" policy intended to cover liability arising out of conduct that occurred prior to Holdco's acquisition of Salvo on April 25, 2022.  While an endorsement changed the Policy Period to April 25, 2022 through April 25, 2028, it also defined the scope of coverage as follows: "No coverage will be available

under this policy for Loss in connection with any Claim based upon, arising from, or in consequence of any fact, circumstance, or Wrongful Act committed, attempted, or allegedly committed or attempted on or after the Run-Off Date," which is defined to be April 25, 2022. *See id.* at Run-Off Endorsement.

34.     Under the Argo Policy, "Loss" means "the total amount which [Salvo] become[s] legally obligated to pay on account of Claims made against [it] solely for Wrongful Acts for which coverage applies, including, but not limited to: damages, judgments and settlements; any award of pre-judgment and post-judgment interest on covered judgments and settlements; claimants' attorney's fee award pursuant to a covered judgment or included as part of a covered settlement; and Defense Costs." *Id.* at Directors & Officers Liability Coverage Part § II.H.

35.     The Argo Policy defines a "Claim" to include "a written demand against [Salvo] for monetary damages, non-monetary or injunctive relief" or "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading." *Id.* § II.A.  It defines a "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty" by Salvo. *Id.* § II.N.  And it states that "Defense Costs" means "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses . . . (i) incurred by the Insurer on behalf of the Insured(s) or by the Insured(s) and consented to by the Insurer (such consent to not be unreasonably withheld) in defending or investigating Claims[.]"  *Id.* at General Terms and Conditions § II.D.

36.     The allegations made in the New York Firearm Litigation fall within these provisions.

37.     Moreover, the Argo Policy imposes a duty on Argo to defend covered Claims.  It states explicitly that "[Argo] shall have the right and duty to defend any Claim . . . covered under any applicable Coverage Part under this Policy even if the allegations are false, fraudulent or groundless."  *Id.* § V.C.

38.     Finally, the Argo Policy contains an Allocation Clause, which states that:

> In the event the [Salvo] incur[s] Loss that is both covered and not covered by this Policy, either because the Claim includes both covered and uncovered matters or because the Claim includes both insured and uninsured parties, the [Salvo] and the [Argo] agree to use all reasonable efforts to determine a fair and equitable allocation of the amounts as between covered and uncovered Loss based upon the relative legal exposure of the parties, without any presumption as to a fair and equitable allocation; provided, however, regarding Defense Costs to be advanced under any applicable Coverage Part, one hundred percent (100%) of any such Defense Costs shall be allocated to covered Loss if and to the extent such Defense Costs are incurred by the [Salvo] and are in part covered and in part not covered by this Policy solely because the Claim against the [Salvo] includes both covered and uncovered matters.

*Id.* § V.D.

39.     Under the Allocation Clause, so long as any of the causes of action or theories of recovery alleged in the New York Firearm Litigation is covered, Argo must pay 100% of Salvo's Defense Costs.

40.     Read together, the provisions described above require Argo to cover 100% of Salvo's Defense Costs (up to the $1 million policy limit) in connection with the New York Firearm Litigation.

11

41.     All other conditions and requirements imposed by the Argo Policy, including paying premiums and providing notice of a claim, have been satisfied and/or have been waived and/or are subject to an estoppel against Argo. The Argo Policy was in full force and effect at all pertinent times.

42.     On July 8, 2022, Salvo's insurance broker submitted notice of the New York Firearm Litigation to Argo on Salvo's behalf and demanded that Argo defend it against the New York Firearm Litigation. A true and accurate copy of Salvo's demand correspondence is attached hereto as Exhibit 6.

43.     Argo acknowledged receipt of Salvo's notice on July 12, 2022. A true and accurate copy of Argo's acknowledgement is attached hereto as Exhibit 7. On August 22, 2022, Argo formally responded to Salvo's demand. A true and accurate copy of this letter is attached hereto as Exhibit 8. In the letter, Argo asserted that "there is no coverage for the [New York Firearm Litigation] under the [Argo] Policy" and refused to either defend or indemnify Salvo against the New York Firearm Litigation. Ex. 8 at 1.

44.     Argo then supplemented its coverage denial with a second letter, sent on November 10, 2022 after the New York AG amended her original complaint. A true and accurate copy of this supplemental letter is attached hereto as Exhibit 9. In the supplemental letter, Argo reiterated its position that "coverage is unavailable" for the New York Firearm Litigation. Ex. 9 at 3.

45.     Salvo responded to Argo's denial of coverage on January 17, 2023. A true and accurate copy of Salvo's response is attached hereto as Exhibit 10. Salvo

informed Argo that both the Argo Policy and Florida law require Argo to defend and indemnify Salvo, and rebutted Argo's contentions that certain policy exclusions permit Argo to deny coverage.  *See* Ex. 10 at 1-5.

46.     Argo responded on February 7, 2023.  A true and accurate copy of Argo's response is attached hereto as Exhibit 11.  Argo claimed to have "reviewed carefully the arguments set out in [Salvo's] letter," but nonetheless "maintain[ed] its denial of coverage for the" New York Firearm Litigation.  *See* Ex. 11 at 1.

47.     Despite the Argo Policy's clear coverage provisions, and despite Salvo's repeated explanations of Argo's coverage duties. Argo has steadfastly and wrongfully declined to defend or indemnify Salvo against the New York Firearm Litigation. These repeated refusals qualify as a "total coverage denial of a claim" under Fla. Stat. § 86.121(1).

48.     Due to Argo's total coverage denial, Salvo has incurred and will continue to incur Loss, as defined in the Argo Policy, as a result of the New York Firearm Litigation.

49.     An actual and justiciable controversy presently exists between Salvo and Argo concerning Argo's obligation to defend and indemnify Salvo in connection with the New York Firearm Litigation.

## THE LANDMARK POLICY

50.     Landmark issued Private Company Management Liability Policy number PP699354 (the "Landmark Policy") to Holdco as the named insured for the

policy period of April 25, 2022 to April 25, 2023.  A true and accurate copy of the Landmark Policy is attached hereto as Exhibit 12.

51.     Although Landmark issued the Landmark Policy to Holdco, the Landmark Policy includes Salvo as an "Insured Organization" within the meaning of the Policy, since Salvo was a Subsidiary of Holdco at inception of the Policy.

52.     The Landmark Policy defines "Insured Organization" to include Holdco and "any Subsidiary existing prior to *or at* the inception date of this policy." *Id.* at Common Policy Terms and Conditions, Coverage Section § III.H.1 (emphasis added).   It defines "Subsidiary" to mean "any entity of which the Insured Organization, either directly or indirectly . . . [o]wns more than fifty percent (50%) of the voting stock and/or outstanding securities."   *Id.* § III.M.1.  And the Landmark Policy's "inception date" is defined as the Policy Period's first date.   *See id.* § III.L (defining "Policy Period" to "mean the period beginning at the inception date and ending at the expiration date stated in Item 2 of the Declarations Page or to any earlier policy cancellation or termination date.").   That date is April 25, 2022.   *See id.* at Declarations Page Item 2.  Because Salvo became a Holdco "Subsidiary" on April 25, 2022, Salvo qualifies as an Insured Organization under the Landmark Policy.

53.     The Landmark Policy's aggregate limit of liability is $1 million and there is a retention of $50,000 per Claim.   *See* Landmark Policy at Declarations Item 2 Limit of Liability, Item 3 Retention.

54.     In the Landmark Policy, Landmark "agree[d]" with "Salvo" that "that if a Claim for a Wrongful Act is first made against the Insured Organization during

the Policy Period and" is timely reported, Landmark "will pay on behalf of the [Salvo] all Loss [Salvo] is legally obligated to pay."   *Id.* at Directors and Officers Liability Coverage Section § I.C.

55.     The Landmark Policy is intended to pick up where the Argo Policy leaves off by providing coverage for Claims made during the Policy Period relating to Wrongful Acts that occur on or after April 25, 2022, the date that Holdco acquired Salvo.  It states that Landmark "shall not be liable to make any payment for Loss in connection with any Claim made against any Insured that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged Wrongful Acts which first occurred prior to 4/25/2022."  Landmark Policy at Exclusion – Prior Acts.

56.     The Landmark Policy defines "Claim" to mean a "written demand for monetary or non-monetary relief," a "civil . . . proceeding . . . which is commenced by" the "[r]eceipt or service of a complaint or similar pleading."  *Id.* at Directors and Officers Liability Coverage Section § III.A.  It defines "Wrongful Act" to mean "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by" the "Insured Organization."  *Id.* § III.H.

57.     Under the Landmark Policy, "Loss" means "damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and Defense Expenses."  *Id.* § III.F.  In turn, "Defense Expenses" means "reasonable and necessary legal fees and expenses incurred, with [Landmark's] consent, by [Salvo] in defense of a Claim, including any appeal therefrom."  *Id.* at Common Policy Terms

and Conditions, Coverage Section § III.D.

58.    The allegations made in the New York Firearm Litigation fall within these provisions.

59.    Like the Argo Policy, the Landmark Policy imposes a duty to defend. The Landmark Policy states that "[i]t shall be the right and duty of [Landmark] to defend any Claim against [Salvo] for which coverage applies under this policy, and [Landmark] shall have the right to appoint counsel of its choosing. [Salvo] may [not] incur any Defense Expenses, admit liability for or settle any Claim or negotiate any settlement without [Landmark's] prior written consent; such consent not to be unreasonably withheld." *Id.* at Common Policy Terms and Conditions, Coverage Section § V.A.

60.    The Landmark Policy also contains an Allocation Clause, which states that:

> If both Loss covered under this policy and loss not covered under this policy are jointly incurred either because a Claim includes both covered and non-covered matters or covered and non-covered causes of action or because a Claim is made against both [Salvo] and any other parties not insured by this policy, then [Salvo] and the [Landmark] shall use their best efforts to fairly and reasonably allocate payment under this policy between covered Loss and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

> If [Landmark] and [Salvo] agree on an allocation of Defense Expenses, based on covered and non covered matters or persons, the Insurer shall advance Defense Expenses allocated to covered Loss. If there is no agreement on an allocation of Defense Expenses, [Landmark] shall advance Defense Expenses that [Landmark] believes to be covered under

this policy until a different allocation is negotiated, arbitrated, or judicially determined.

*Id.* § V.E.

61.     Under the Allocation Clause, so long as any of the causes of action or theories of recovery alleged in the New York Firearm Litigation is covered, Landmark must contribute to Salvo's Defense Costs.

62.     Construed together, these provisions require Landmark to contribute to Salvo's Defense Expenses (up to the $1 million policy limit) in connection with the New York Firearm Litigation.

63.     All other conditions and requirements imposed by the Landmark Policy, including paying premiums and providing notices of a claim, have been satisfied and/or have been waived and/or are subject to an estoppel against Landmark.  The Landmark Policy was in full force and effect at all pertinent times.

64.     On July 11, 2022, on behalf of Holdco and Salvo, Holdco's insurance broker submitted notice of the New York Firearm Litigation to Landmark's parent company, RSUI, and demanded that Landmark defend Salvo against the New York Firearm Litigation.  A true and accurate copy of the demand correspondence is attached hereto as Exhibit 13.

65.     RSUI acknowledged receipt of the coverage demand the following day. A true and accurate copy of RSUI's acknowledgement is attached hereto as Exhibit 14.  RSUI formally responded to the coverage demand August 26, 2022 by asserting that "there is no coverage for [Salvo] in" the New York Firearm Litigation under the

Landmark Policy and refusing to defend or indemnify Salvo.  A true and accurate copy of RSUI's coverage denial letter is attached hereto as Exhibit 15.

66.    Holdco responded to RSUI's denial of coverage on November 23, 2022. A true and accurate copy of Holdco's response is attached hereto as Exhibit 16. Holdco informed RSUI that the Landmark Policy requires Landmark to defend and indemnify Salvo, and rebutted RSUI's contentions that certain policy exclusions permit Landmark to deny coverage.  *See* Ex. 16.

67.    Landmark replied to Holdco's correspondence on January 17, 2023 with a letter informing Holdco that Landmark "is constrained to reiterate its previous declination of coverage."  A true and accurate copy of Landmark's reply is attached hereto as Exhibit 17.

68.    Holdco sent an additional response on February 27, 2023, noting that Landmark's coverage position was unfounded and violated the clear terms of the Landmark Policy.  A true and accurate copy of Holdco's response is attached hereto as Exhibit 18.  Holdco also sent a supplemental response on March 28, 2023 informing Landmark that new claims included in the SAC in the New York AG Action also clearly fall within the Landmark Policy's coverage provisions.  A true and accurate copy of Holdco's supplemental response is attached hereto as Exhibit 19.

69.    Holdco has not received a reply to its most recent correspondence.

70.    Despite the Landmark Policy's clear coverage provisions, and despite Salvo's repeated explanations of Landmark's coverage duties.   Landmark has

steadfastly and wrongfully declined to defend or indemnify Salvo against the New York Firearm Litigation.  These repeated refusals qualify as a "total coverage denial of a claim" under Fla. Stat. § 86.121(1).

71.     Due to Landmark's total coverage denial, Salvo has incurred and will continue to incur Loss, as defined in the Landmark Policy, as a result of the New York Firearm Litigation.

72.     An actual and justiciable controversy presently exists between Salvo and Landmark concerning Landmark's obligation to defend and indemnify Salvo in connection with the New York Firearm Litigation.

## COUNT I – DECLARATORY JUDGMENT REGARDING DEFENSE COSTS
### (Against Argo)

73.     Salvo repeats and realleges the allegations contained in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     Because at least one of the theories and/or causes of action asserted in the New York Firearm Litigation potentially falls within the scope of coverage of the Argo Policy, Argo has a duty to defend Salvo and the Argo Policy's Allocation Provision requires Argo to pay 100% of Salvo's Defense Costs incurred in the New York Firearm Litigation.

75.     Salvo has notified Argo of its obligation to pay Salvo's Defense Costs connection with the New York Firearm Litigation.

76.     Argo has denied its obligation to pay Salvo's Defense Costs in connection with the New York Firearm Litigation.

19

77.     Accordingly, an actual and justiciable controversy exists between Salvo and Argo concerning Argo's obligation to pay Salvo's Defense Costs in connection with the New York Firearm Litigation.

## COUNT II – DECLARATORY JUDGMENT REGARDING DEFENSE EXPENSES
### (Against Landmark)

78.     Salvo repeats and realleges the allegations contained in paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     Because at least one of the theories and/or causes of action asserted in the New York Firearm Litigation potentially falls within the scope of coverage of the Landmark Policy, Landmark has a duty to defend Salvo and the Landmark Policy's Allocation Provision requires Landmark to contribute to Salvo's Defense Expenses incurred in the New York Firearm Litigation.

80.     Salvo has notified Landmark of its obligation to pay Salvo's Defense Expenses in connection with the New York Firearm Litigation.

81.     Landmark has denied its obligation to pay Salvo's Defense Expenses in connection with the New York Firearm Litigation.

82.     Accordingly, an actual and justiciable controversy exists between Salvo and Landmark concerning Landmark's obligation to pay Salvo's Defense Expenses in connection with the New York Firearm Litigation.

### COUNT III – DECLARATORY JUDGMENT REGARDING INDEMNIFICATION
#### (Against Argo)

83.     Salvo repeats and realleges the allegations contained in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     The Argo Policy obligates Argo to indemnify Salvo for any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Argo Policy.

85.     Salvo has notified Argo of its obligation to indemnify any Loss that Salvo may incur in connection with covered Claims, up to the limits of the Argo Policy.

86.     Argo has denied its obligation to indemnify Salvo for any such Loss.

87.     Accordingly, an actual and justiciable controversy exists between Salvo and Argo concerning Argo's obligation to indemnify any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Argo Policy.

### COUNT IV – DECLARATORY JUDGMENT REGARDING INDEMNIFICATION
#### (Against Landmark)

88.     Salvo repeats and realleges the allegations contained in paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.     The Landmark Policy obligates Landmark to indemnify Salvo for any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Landmark Policy.

21

90.     Salvo has notified Landmark of its obligation to indemnify any Loss that Salvo may incur in connection with covered Claims, up to the limits of the Landmark Policy.

91.     Landmark has denied its obligation to indemnify Salvo for any such Loss.

92.     Accordingly, an actual and justiciable controversy exists between Salvo and Landmark concerning Landmark's obligations to indemnify any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Landmark Policy.

## COUNT V – BREACH OF CONTRACT
### (Against Argo)

93.     Salvo repeats and realleges the allegations contained in paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     The Argo Policy constitutes an enforceable contract.

95.     Argo has breached the Argo Policy in the following ways:

a. The Argo Policy obligates Argo to defend Salvo and promptly pay Salvo's Defense Costs because those Defense Costs constitute Loss arising from a Claim against Salvo for a Wrongful Act made during the Policy Period.  Under the Argo Policy's Allocation Clause, if at least one of the theories and/or causes of action in the New York Firearm Litigation falls within the potential coverage of the Argo Policy, Argo must pay 100% of Salvo's Defense Costs.  Argo has

22

denied its obligation to defend Salvo has refused to pay Salvo's Defense Costs in connection with the New York Firearm Litigation.

b. The Argo Policy obligates Argo to indemnify Salvo for any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Argo Policy. Argo has denied its obligation to indemnify and has refused to indemnify Salvo for any such loss.

96. Salvo has incurred and will continue to incur Defense Costs, as defined under the Argo Policy, in connection with the New York Firearm Litigation.

97. Salvo has suffered harm as a direct and proximate result of Argo's breach and failure to honor its contractual obligation to defend Salvo against the New York Firearm Litigation. Salvo will continue to suffer harm in the future as a direct and proximate result of Argo's breach and failure to honor its contractual obligation to defend and indemnify Salvo in connection with the New York Firearm Litigation.

## COUNT VI – BREACH OF CONTRACT
### (Against Landmark)

98. Salvo repeats and realleges the allegations contained in paragraphs 1 through 97 of this Complaint as if fully set forth herein.

99. The Landmark Policy constitutes an enforceable contract.

100. Landmark has breached the Landmark Policy in the following ways:

a. The Landmark Policy obligates Landmark to defend Salvo and promptly pay Salvo's Defense Expenses because those Defense

Expenses constitute Loss arising from a Claim against Salvo for a Wrongful Act made during the Policy Period.  Under the Landmark Policy's Allocation Clause, if at least one of the theories and/or causes of action in the New York Firearm Litigation falls within the potential coverage of the Landmark Policy, Landmark must contribute to Salvo's Defense Expenses.  Landmark has denied its obligation to defend Salvo and has refused to pay Salvo's Defense Expenses in connection with the New York Firearm Litigation.

b. The Landmark Policy obligates Landmark to indemnify Salvo for any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Landmark Policy.  Landmark has denied its obligation to indemnify and has refused to indemnify Salvo for any such loss.

101.   Salvo has incurred and will continue to incur Defense Expenses, as defined under the Landmark Policy, in connection with the New York Firearm Litigation.

102.   Salvo has suffered harm as a direct and proximate result of Landmark's breach and failure to honor its contractual obligation to defend Salvo against the New York Firearm Litigation.  Salvo will continue to suffer harm in the future as a direct and proximate result of Landmark's breach and failure to honor its contractual obligation to defend and indemnify Salvo in connection with the New York Firearm Litigation.

## PRAYER FOR RELIEF

WHEREFORE, Salvo respectfully requests that the Court enter judgment against Argo and Landmark:

1.　On Count I of the Complaint, declaring that Argo is contractually obligated under the Argo Policy to defend Salvo against the claims asserted in the New York Firearm Litigation, together with interest, attorneys' fees, and costs;

2.　On Count II of the Complaint, declaring that Landmark is contractually obligated under the Landmark Policy to defend Salvo against the claims asserted in the New York Firearm Litigation, together with interest, attorneys' fees, and costs

3.　On Count III of the Complaint, declaring that Argo is contractually obligated under the Argo Policy to indemnify any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Argo Policy;

4.　On Count IV of the Complaint, declaring that Landmark is contractually obligated under the Landmark Policy to indemnify any additional Loss that Salvo may incur in connection with covered Claims through future settlement or judgment, up to the limits of the Landmark Policy;

5.　On Count V of the Complaint, awarding Salvo compensatory and consequential damages against Argo, in an amount to be proven at trial,

for the breach of Argo's contractual duties to indemnify and defend Salvo in the New York Firearm Litigation;

6.   On Count VI of the Complaint, awarding Salvo compensatory and consequential damages against Landmark, in an amount to be proven at trial, for the breach of Landmark's contractual duties to indemnify and defend Salvo in the New York Firearm Litigation; and

7.   Awarding Salvo their reasonable attorneys' fees all other costs incurred in connection with this action, and the appropriate damages award under Fla. Stat. § 86.121.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Salvo demands a trial by jury on all the issues so triable.

Dated: May 8, 2023

Respectfully submitted,

McGuireWoods LLP

*/s/ Emily Y. Rottmann*
Emily Y. Rottmann
50 North Laura Street
Suite 3300
Jacksonville, FL 32202
Telephone: 904.798.3224
Facsimile: 904.798.3263
erottmann@mcguirewoods.com
clambert@mcguirewoods.com
flservice@mcguirewoods.com

and

Stephen G. Foresta
McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020
Telephone: 212.548.7033
Facsimile: 212.715.6295
sforesta@mcguirewoods.com
(pro hac vice statement to be filed)

*Attorneys for Plaintiff*
*Salvo Technologies, Inc.*