COMPLAINT

# EXHIBIT 5

*Salvo Technologies, Inc. v.*
*Landmark American Insurance Company and Argonaut Insurance Company*
U.S. District Court, Middle District of Florida, Tampa Division



## Private PROtect<sup>SM</sup>

## FLORIDA

## Private Company Directors & Officers, Employment Practices and Fiduciary Liability Insurance Policy Declarations

**NNOTICE: THIS IS CLAIMS MADE AND REPORTED COVERAGE.  DEFENSE COSTS ARE A PART OF, AND NOT IN ADDITION TO, THE POLICY LIMITS.  PLEASE READ THE POLICY CAREFULLY.**

**DEFENSE WITHIN LIMITS: THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY DEFENSE COSTS.**

| **Insurer:** | Argonaut Insurance Company<br>225 West Washington Street<br>24th Floor<br>Chicago, IL 60606 | **Producer:** | R-T Specialty, LLC<br>5565 Glenridge Connector, Suite 550<br>Atlanta, GA 30342 |
|---|---|---|---|
| **Policy Number:** | ML4263632-0 | | |
| Renewal of Policy Number: | New Business | | |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY, THE INSURER AGREES WITH THE INSUREDS TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

Item 1. **Named Insured**:  Salvo Technologies, Inc
Mailing Address:  8060 Bryan Dairy Rd
Largo, FL 33777

Item 2. **Policy Period:**  From: 12:01 a.m. on  April 25, 2022      To: 12:01 a.m. on April 25, 2023
Local time at the address shown in Item 1.

Item 3.   **Coverage Parts**:

| Coverage Part | Purchased | Not Purchased | Separate Limits | Shared Limits |
|---|---|---|---|---|
| Directors & Officers Liability | ☒ | ☐ | ☐ | ☒ |
| Employment Practices Liability | ☐ | ☒ | ☐ | ☐ |
| Fiduciary Liability | ☒ | ☐ | ☐ | ☒ |

Item 4.   Limits of Liability:

A.   Maximum Aggregate Limit of Liability for all **Loss** under all **Coverage Parts** other than as indicated in Item 4.B.4. below:   $1,000,000

B.   Limits of Liability applicable to **Directors & Officers Liability Coverage Part**:

    1.   Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A., B., C. and D.:   $1,000,000

    2.   Aggregate Sub-Limit of Liability for all **Shareholder Derivative Demands** under **INSURING AGREEMENT** D.:   $250,000

    3.   Aggregate Sub-Limit of Liability for all **Inquiry Costs** under **INSURING AGREEMENT** E.:   $10,000

    4.   Aggregate Sub-Limit of Liability for all **Loss** from all **Employed Lawyers Claims**:   $1,000,000

    5.   Aggregate Additional Limit of Liability for Non-Indemnified **Loss**:   $1,000,000

C.   Limit of Liability applicable to **Employment Practices Liability Coverage Part**:

    1.   Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A. and B.:   No Coverage

    2.   Aggregate Sub-Limit of Liability for all **Loss** from all **Claims** under **INSURING AGREEMENT** B.:   No Coverage

    3.   Aggregate Sub-Limit of Liability for all **Loss** constituting **Sensitivity Training Costs** under **INSURING AGREEMENTS** A. and B.:   No Coverage

D.   Limits of Liability applicable to **Fiduciary Liability Coverage Part**:

    1.   Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A. and B.:   $1,000,000

    2   Aggregate Sub-Limit of Liability for all Loss from all Claims under **INSURING AGREEMENT** B.:   $250,000

    3.   Aggregate Sub-Limit of Liability for all **Loss** from all **HIPAA CLAIMS** under **INSURING AGREEMENT** A.:   $250,000

Item 5.   Retentions:

    A.   Retentions applicable to **Directors & Officers Liability Coverage Part:**

        1.   Each **Claim** under **INSURING AGREEMENT** B.:  $25,000

        2.   Each **Claim** under **INSURING AGREEMENT** C.:  $25,000

    No Retention is applicable to **INSURING AGREEMENTS** A. (**NON-INDEMNIFIED LOSS COVERAGE**) and D. (**DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE**)

    B.   Retentions applicable to **Employment Practices Liability Coverage Part**:

        1.   Each **Claim** under **INSURING AGREEMENT** A.:  No Coverage

        2.   Each **Claim** under **INSURING AGREEMENT** B.:  No Coverage

    C.   Retentions applicable to **Fiduciary Liability Coverage Part**:

        1.   Each **Claim** under **INSURING AGREEMENT** A.:  $0
           (Not Applicable to **Non-Indemnified Loss** or **HIPAA Claims**)

        No Retention is applicable to **INSURING AGREEMENT** B.

Item 6.   Annual Premiums:

    A.   **Directors & Officers Liability Coverage Part**:  Included

    B.   **Employment Practices Liability Coverage Part:**  No Coverage

    C.   **Fiduciary Liability Coverage Part**:  Included

                             Total  $23,000

Other: _____
       (Specific type of tax, fee or surcharge, if required)  N/A

                             Total  $23,000

Item 7.   Notices to **Insurer**:

<span style="color:red">**Broker Fee: $500.00**</span>
<span style="color:red">**FL State Surcharge: $161.00**</span>

Claims:                                          All Other Notices:
Attn:   Argo Pro Claims                Attn:   Argo Pro Underwriting
       PO BOX 469012                      PO BOX 469012
       San Antonio, TX 78246          San Antonio, TX 78246
       Phone: (833) 240-4128          Phone: (210) 321-8400
        New Claims ArgoProNewClaims@argogroupus.com
       Existing claims ArgoProClaimsMail@argogroupus.com

Item 8.   Endorsements Applicable to Coverage at Inception of Policy:

| | |
|---|---|
| PPRO0002 0219 | General Terms and Conditions |
| PPRO0003 0219 | Private PROtect D and O |
| PPRO0005 0219 | Fiduciary Part |
| PPRO2034FL 0219 | Florida D and O Table Contents |
| PPRO2036FL-0219 | Table of Contents Private Protect Fiduciary Liability Coverage Part |
| PPRO2037FL 0219 | Florida GTC Table Contents |
| PrivacyNotice 0820 | Notice Of Insurance Information Practices |
| TRIA Notice A 0115 | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act |
| ILP001 0104 | Policyholder Notice- US Dept of Treasury Office of Foreign Asset Control (OFAC) |
| FS-APP001 0618 | Fraud Statements |
| SIGAIC 0416 | Signature Page-SIGAIC |
| CLMSMADENOTICE 0117 | Important Information For Policyholders - Claims-Made Notice |
| ILP0220FL 0920 | Florida Changes - Cancellation And Nonrenewal |
| DWLNOTICE 0117 | Policyholder Notice - Defense Within Limits |
| PPRO2032FL 0219 | FL Changes |
| PPRO4032 0719 | Liquidated Damages Exclusion Endorsement |
| PPRO-4204 0420 | Amended Retention Endorsement |
| PPRO-4048 0919 | Crisis Management Coverage Endorsement |
| PPRO-4122 0220 | Run-Off Endorsement |
| PPRO1012 0219 | State Amendatory Inconsistency |
| PPRO-4027 0819 | Antitrust Claim Coverage Subject To A Sub-Limit And Coinsurance Percentage Endorsement |
| PPRO2015 0219 | FLC-Sublimit For Certain Civil Penalties |

Item 9.   Pending or Prior Date:

| | | |
|---|---|---|
| A. | **Directors & Officers Liability Coverage Part**: | April 25, 2022 |
| B. | **Employment Practices Liability Coverage Part**: | No Coverage |
| C. | **Fiduciary Liability Coverage Part**: | No Coverage |

This Policy shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

Countersigned:                                    By:

Date: Apr 26, 2022                        Authorized Representative: Austin King



# Private PROtect<sup>SM</sup>
# General Terms and Conditions Part

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, all of which are made part of this Policy, and subject to the Declarations and the other terms of this Policy, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

## I.    APPLICABILITY OF GENERAL TERMS AND CONDITIONS

**All Coverage Parts** are subject to this General Terms and Conditions Part. In the event of any conflict between this General Terms and Conditions Part and a particular **Coverage Part**, the terms of the **Coverage Part** shall apply to the coverage afforded by such **Coverage Part**.  The terms of each **Coverage Part** shall only apply to that **Coverage Part**.  Any term that is bolded but not defined in this General Terms and Conditions Part shall, for the purpose of applying this General Terms and Conditions Part to a particular **Coverage Part**, incorporate the definition of such term as set forth in such **Coverage Part**.

## II.    DEFINITIONS

A.    **Application** means the written statements and representations made by an **Insured** including as defined in any **Coverage Part** (if applicable) and provided to the **Insurer** during the negotiation of this Policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this Policy.

B.    **Company** means:

1.    the **Named Insured**; and

2.    any **Subsidiary** of the **Named Insured**.

**Company** shall also include any such organization as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

C.    **Coverage Part** means the **Directors & Officers Liability Coverage Part**, the **Employment Practices Liability Coverage Part** and the **Fiduciary Liability Coverage Part**, but only if such **Coverage Part** is purchased.

D.    **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other

types of compensation or overhead expenses of **Insured Person(s)**, or the **Company**) (i) incurred by the **Insurer** on behalf of the **Insured(s)** or by the **Insured(s)** and consented to by the **Insurer** (such consent to not be unreasonably withheld) in defending or investigating **Claims**, including costs assessed against the **Insured(s)** in a **Claim** or the premium for appeal, attachment or similar bonds provided the **Insurer** shall have no obligation to apply for or furnish such bonds or (ii) incurred at the **Insurer's** request to assist the **Insurer** in the investigation of a **Claim**.

E.    **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, local law or under the provisions of any formal program established by the **Company**.

F.    **Employee** means any past, present or future full time, part time, seasonal or temporary employee of the **Company**, including any officer, volunteer, intern, leased employee or natural person independent contractor, provided, that in each instance such individual is an **Employee** solely in his or her capacity as such and provided, further, in the case of leased employees, volunteers and independent contractors, the **Company** indemnifies such individuals in the same manner it indemnifies permanent employees. Furthermore, regarding leased employees and independent contractors, coverage provided under this policy shall be excess of any other insurance coverage or other indemnification provision provided by any professional employment organization.

Regarding the coverage provided under the **Fiduciary Liability Coverage Part**, if purchased, **Employee** will not include any independent contractor.

G.    **Extended Reporting Period** means the period or periods of extended coverage set forth in Item 7. of the Declarations.

H.    **Extradition** means any formal process by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

I.    **Financial Insolvency** means the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

J.    **Insured(s)** means:

1.    the **Insured Person(s)**; and

2.    the **Company**.

K.    **Insured Person(s)** means:

1.    any one or more natural persons who were, now are or shall become (i) a duly elected or appointed director, trustee, governor, management committee member, advisory board member, **Manager**, officer, in-house

general counsel or controller of the **Company** (ii) director of human resources, risk manager or their functional equivalent of the **Company**; or (iii) with respect to a **Company** incorporated outside the United States, the functional equivalent of any of the foregoing positions; or

2.      any **Employee**;

Any individual included in Subsections 1. or 2. above is an **Insured Person** solely in his or her capacity as specified in such subsection.

If the **Fiduciary Liability Coverage Part** is purchased, any individual included in Subsections 1. or 2. above is an **Insured Person** solely in his or her capacity as a fiduciary of a **Plan** or in his or her **Administration** of a **Plan**. A **Claim** against a "plan committee" comprised entirely of **Insured Persons** shall be deemed to be a **Claim** against each of the individual members of the committee.

L.    **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of logically or causally connected facts, circumstances, situations, events, transactions or causes.

M.    **Manager** means any natural person who was, now is or shall become a (i) a manager, member of the board of managers or equivalent executive of a **Company** that is a limited liability company, and (ii) a general partner, managing partner or equivalent executive of a **Company** that is a partnership or joint venture.

N.    **Named Insured** means the organization set forth in Item 1. of the Declarations.

O.    **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations or any earlier Policy cancellation or termination date.

P.    **Pollutants** means any substance located anywhere in the world exhibiting hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured(s)** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

Q.    **Subsidiary** means:

1.      any entity in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, **Managers** or equivalent executives is owned or controlled by the **Named Insured**, either directly or indirectly on or before

the effective date of this Policy;

2.　　　any entity in which the **Named Insured** has the right, pursuant to written contract or by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company; or

3.　　　any entity that becomes a subsidiary (as defined in subparts Q.1. or Q.2.) after the effective date of this Policy by reason of being created or acquired by the **Named Insured** after such date.

**Subsidiary** also means any foundation or charitable trust controlled or directly sponsored by the **Named Insured**.

Provided, however, this Policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective date an entity becomes a **Subsidiary** and prior to the effective date such entity ceases to be a **Subsidiary**.

R.　　**Wage and Hour Violation** means any actual or alleged:

1.　　　violation of the Fair Labor Standards Act (except the Equal Pay Act)

2.　　　refusal, failure, or inability of any **Insured** to pay, or to pay timely, wages, bonuses, perquisites, benefits or overtime pay for time worked (as opposed to front pay or back pay arising from tortious conduct or violations of the Civil Rights Act of 1964 or any similar federal, state, local or foreign statute, rule regulation or common law); or

3.　　　failure to provide or enforce meal breaks or rest breaks required by law;

4.　　　improper classification of individuals for the purposes of determining eligibility for compensation or other benefits under any statute;

5.　　　improper deductions from pay for any **Employee**;

6.　　　failure to provide, or to provide timely, statements of earnings or amounts withheld from earnings.

## III.　GENERAL EXCLUSIONS

Under all **Coverage Parts** purchased, and in addition to any Exclusions included in such **Coverage Parts**, the **Insurer** shall not be liable for that portion of **Loss** in connection with any **Claim** made against any **Insured**:

A.　　based upon, arising out of, or attributable to:

1.　　　any **Wrongful Act**, matter, fact, circumstance, situation, transaction, or event which has been the subject of written notice given and accepted prior to the inception of this Policy under any other directors & officers

management, employment practices or fiduciary liability policy; or

2.  any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

B.  based upon, arising out of, or attributable to:

1.  any **Claim** pending as of or made prior to the Pending or Prior Date set forth in Item 11. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

2.  any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

C.  based upon, arising out of or attributable to:

1.  any deliberate criminal or deliberate fraudulent act or omission or intentional or knowing violation of law by any **Insured** if established by any final, non-appealable adjudication in any underlying action or proceeding; or

2.  any **Insured** gaining any personal profit, remuneration, or other financial advantage to which the **Insured** was not legally entitled if established by any final, non-appealable adjudication in any underlying action or proceeding.

For the purpose of determining the applicability of this General Exclusion C., the **Wrongful Act** or knowledge of any **Insured Person** shall not be attributed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of any past, present or future Chief Executive Officer or Chief Financial Officer (or functional equivalent), and/or regarding coverage provided under the **Employment Practices Liability Coverage Part**, if purchased, the head of the department of Human Resources (or functional equivalent), of the **Company** (or of any **Plan** if the **Fiduciary Liability Coverage Part** is purchased) shall  be imputed to such **Company** (or **Plan** if the **Fiduciary Liability Coverage Part** is purchased).

D.  for bodily injury, sickness, disease emotional distress or mental anguish or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply:

1.  to **Loss** for emotional distress or mental anguish that is attributable to any **Claim** otherwise covered under the **Employment Practices Liability Coverage Part**; or

2.  if the **Directors & Officers Liability Coverage Part** is purchased, to any **Exempt Securities Claim** as defined and otherwise covered under such **Coverage Part**.

IV.    **EXTENSIONS OF COVERAGE**

A.    **ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS**

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Person(s)** shall be considered an **Insured Person(s)** under this Policy but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person(s)** to the spouse or **Domestic Partner**. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All terms of this Policy applicable to **Loss** incurred by the **Insured Person(s)** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

B.    **EXTENDED REPORTING PERIOD**

If the **Insurer** or **Named Insured** terminates or refuses to renew this Policy or any **Coverage Part** of this Policy other than for nonpayment of premium, the **Insured(s)** shall have the right, upon payment of the applicable additional premium set forth in Item 7. of the Declarations, to the applicable **Extended Reporting Period** following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place in whole or in part prior to the effective date of such termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due is given by the **Insured(s)** to the **Insurer** within sixty (60) days following the effective date of termination or nonrenewal. The **Extended Reporting Period** shall only be applicable to a particular **Coverage Part** if the **Insurer** or **Named Insured** terminates or refuses to renew such **Coverage Part**.

The **Extended Reporting Period** shall be subject to all the terms and conditions of this Policy. No coverage will be provided for any actual or alleged **Wrongful Acts** occurring in whole after the effective date of such termination or nonrenewal.

The **Extended Reporting Period** is non-cancellable and the entire additional premium shall be deemed fully earned.

C.    **PRE-DETERMINED RUN-OFF**

In the event of an **Organizational Change** in accordance with **SECTION V. GENERAL CONDITIONS AND LIMITATIONS**, subsection H of the **General Terms and Conditions Part,** and solely with respect to coverage sections already purchased by the **Insured** (hereinafter the **Applicable Coverage Part(s)**), the **Named Insured**, on its own behalf or on behalf of any **Subsidiary** thereof, for an additional premium as indicated below, shall have the right to choose a period of time as listed in Item 8. Pre-Determined Run-Off of the Declarations following the effective date of the **Organizational Change** (hereinafter the **Run-Off Period**) in which to give written notice to the **Insurer** of **Claims** first made against the **Insureds** during said **Run-Off Period** for any

**Wrongful Act** occurring in whole or in part on or prior to the effective date of said **Organizational Change**.

The additional premium for the election of the **Run-Off Period** shall be the corresponding percentage amount as indicated in Item 8. Pre-Determined Run-Off of the Declarations for the option chosen of the full annual premium, less any remaining unearned pro-rata premium of this policy.

The **Run-Off Period** shall be subject to all the terms and conditions of this policy. No coverage will be provided for any actual or alleged **Wrongful Acts** occurring in whole after the effective date of the **Organizational Change**.

The Policy Aggregate Limit of Liability for the **Run-off Period** shall be part of and not in addition to the remaining Policy Aggregate Limit of Liability of this policy as of the effective date of the **Organizational Change**. If a Separate Limit of Liability applied to an **Applicable Coverage Part** for the **Policy Period**, then the same such Separate Limit of Liability shall also apply to such **Applicable Coverage Part** for the **Discovery Period**, and such Separate Limit of Liability for the **Run-Off Period** shall be part of and not in addition to the Separate Limit of Liability for the **Policy Period**. If a Shared Limit of Liability applied to two or more **Applicable Coverage Parts** for the **Policy Period**, then the same such Shared Limit of Liability shall also apply to such **Coverage Parts** for the **Run-Off Period**, and such Shared Limit of liability for the **Run-Off Period** shall be part of and not in addition to the Shared Limit of Liability for the **Policy Period**. In no way shall the language of this endorsement be construed to reinstate, renew or increase the Aggregate Limit of Liability for this policy or any applicable Separate Limit of Liability or Shared Limit of Liability for the **Discovery Period**.

## V.   GENERAL CONDITIONS AND LIMITATIONS

### A.   LIMITS OF LIABILITY

1.   The **Insurer's** maximum aggregate Limit of Liability for all **Loss** under all **Coverage Parts** combined shall be the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.

2.   The **Insurer's** maximum aggregate Limit of Liability for all **Loss** under any **Coverage Part** shall be the maximum aggregate Limit of Liability for such **Coverage Part** set forth in Item 4. of the Declarations, which shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 4.A. of the Declarations.

3.   The **Insurer's** maximum aggregate Limit of Liability for all **Loss** covered under all such shared **Coverage Parts** as set forth in Item 3. of the Declarations shall be the largest of such single maximum aggregate Limit of Liability applicable to any one **Coverage Part** subject to the shared Limit of Liability, which shall be part of and not in addition to the maximum aggregate Limit of Liability, set forth in Item 4.A. of the Declarations.

4.   The **Insurer's** maximum aggregate Limit of Liability for any coverage

subject to a Sub-limit of Liability as provided in any **Coverage Part** shall be the Sub-limit set forth in Item 4. of the Declarations for such sub-limited coverage. The Sub-limit of Liability shall be part of and not in addition to the maximum aggregate Limit of Liability applicable to such **Coverage Part**. The maximum aggregate Limit of Liability applicable to such **Coverage Part** shall be subject to any applicable shared maximum Limit of Liability, and the maximum aggregate Limit of Liability set forth in Item 4.A. of the Declarations.

5. **Defense Costs** under all **Coverage Parts** are part of and not in addition to each of the Limits of Liability set forth in Item 4. of the Declarations, and any payments by the **Insurer** of **Defense Costs** under any **Coverage Part** shall reduce the maximum aggregate Limit of Liability applicable to such **Coverage Part** and any applicable Sub-limit of Liability.   The maximum aggregate Limit of Liability applicable to such **Coverage Part** shall be subject to any applicable shared Limit of Liability, and the maximum aggregate Limit of Liability set forth in Item 4.A. of the Declarations.   In the event of the reduction of any shared maximum aggregate Limit of Liability by payment of **Defense Costs**, such reduced Limit of Liability shall be applicable to all **Coverage Parts** subject to such shared Limit of Liability.

6. If the maximum aggregate Limit of Liability, if any, for all **Loss** on account of all **Claims** under all **Coverage Parts** is exhausted by payment of **Loss**, the **Insurer's** obligations under this Policy shall be completely fulfilled.  If the maximum aggregate Limit of Liability for any **Coverage Part** for all **Loss** on account of all **Claims** under that **Coverage Part** is exhausted by payment of **Loss**, the **Insurer's** obligations under that **Coverage Part** shall be completely fulfilled.  If the maximum aggregate Limit of Liability for any **Coverage Part** subject to a shared Limit of Liability is exhausted by payment of **Loss** under that **Coverage Part**, the **Insurer's** obligations under all **Coverage Parts** subject to that shared Limit of Liability shall be completely fulfilled.

7. The Limit of Liability for any **Extended Reporting Period** shall be part of and not in addition to the applicable Limits of Liability set forth in Item 4. of the Declarations.

B. **RETENTION**

1. Unless otherwise stated, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 5 of the Declarations.

2. Each Retention amount shall apply separately to each **Coverage Part** as set forth in the Declarations. The payment of **Loss** credited to the satisfaction of the Retention under one **Coverage Part** shall not be credited to the satisfaction of the Retention under any other **Coverage Part.**

3. In the event a **Claim** gives rise to **Loss** covered under multiple **Coverage**

**Parts** and no such **Coverage Parts** are subject to a shared Limit of Liability, the Retention amount for each such **Coverage Part** shall apply separately to the **Loss** under such **Coverage Part**.

4. In the event a **Claim** gives rise to **Loss** covered under multiple **Coverage Parts** and such **Coverage Parts** are subject to a shared Limit of Liability, the Retention applicable to **Loss** covered under such multiple **Coverage Parts** with a shared Limit of Liability shall be the single highest Retention applicable to such **Loss** under any one **Coverage Part**.

5. If for any reason (including but not limited to **Financial Insolvency**), the **Company** fails or refuses to advance, pay or indemnify **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until the **Company** agrees to make such payments, or the Retention has been satisfied. In no event shall any such advancement by the **Insurer** relieve the **Company** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person**, and the **Company** agrees to provide such advancement, payment or indemnification to the fullest extent permitted by law.

C. **DEFENSE, SETTLEMENT AND COOPERATION**

1. The **Insurer** shall have the right and duty to defend any **Claim,** other than a **Claim** alleging, in whole or in part, a **Wage and Hour Violation,** covered under any applicable **Coverage Part** under this Policy even if the allegations are false, fraudulent or groundless. The **Insurer's** duty to defend any **Claim** under this Policy shall terminate upon the earliest of (i) the exhaustion of the maximum aggregate Limit of Liability applicable to this Policy; (ii) the exhaustion of the maximum aggregate Limit of Liability applicable to any applicable **Coverage Part**; or (iii) the exhaustion of any applicable Sub-limit of Liability of coverage for the **Claim** if coverage is afforded solely under a Sub-limit. If the maximum aggregate Limit of Liability applicable to any **Coverage Part** is subject to a shared Limit of Liability with another **Coverage Part**, the maximum aggregate Limit of Liability applicable to this **Coverage Part** shall be reduced or exhausted by payments made by the **Insurer** under such other **Coverage Part**.

2. Regarding any **Claim** alleging, in whole or in part, a **Wage and Hour Violation**, it shall be the duty of the **Insureds**, and not the **Insurer**, to defend such **Claim**.

3. The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation: attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim** (or **Voluntary Compliance Loss** if the Fiduciary Liability Coverage Section is purchased). The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall

not undertake to negotiate to settle, offer to settle, or settle any **Claim**, (or negotiate to pay, offer to pay or pay any **Voluntary Compliance Loss** if the **Fiduciary Liability Coverage Part** is purchased), incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld.  The failure of any **Insured Person** to comply with the provisions of this subsection shall not be imputed to any other **Insured Person**. Any **Defense Costs** incurred or settlements made (or agreement to pay **Voluntary Compliance Loss** if the **Fiduciary Liability Coverage Part** is purchased) without the **Insurer's** prior written consent shall not be covered under this Policy.

D.   **ALLOCATION**

In the event the **Insured(s)** incur **Loss** that is both covered and not covered by this Policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both insured and uninsured parties, the **Insured(s)** and the **Insurer** agree to use all reasonable efforts to determine a fair and equitable allocation of the amounts as between covered and uncovered **Loss** based upon the relative legal exposure of the parties, without any presumption as to a fair and equitable allocation; provided, however, regarding **Defense Costs** to be advanced under any applicable **Coverage Part,** one hundred percent (100%) of any such **Defense Costs** shall be allocated to covered **Loss** if and to the extent such **Defense Costs** are incurred by covered **Insureds** and are in part covered and in part not covered by this Policy solely because the **Claim** against the **Insureds** includes both covered and uncovered matters.

Notwithstanding the above, no **Defense Costs** shall be allocated to that portion of **Loss** in connection with any **Claim** alleging, in whole or in part, a **Wage and Hour Violation**.

E.   **PRIORITY OF PAYMENTS**

In the event of **Loss** arising from one or more covered **Claims** for which payment is due under this Policy, the **Insurer** shall:

1.   first, pay the **Loss** incurred by an **Insured Person** that is not paid, advanced or indemnified by the **Company**;

2.   second, only after paying **Loss** pursuant to Subsection 1. above, and to the extent of any remaining Limit of Liability, pay the **Loss** of the **Company,** whether directly or as indemnitor of an **Insured Person**.

F.   **REPORTING AND NOTICE**

1.   As a condition precedent to coverage under this Policy under each **Coverage Part** other than the **Directors and Officers Liability Coverage Part**, the **Insured(s)** shall give to the **Insurer** written notice of

any **Claim** made against, or, if the **Fiduciary Liability Coverage Part** is purchased, the intent to enter into a **Voluntary Compliance Program** by, the **Insured(s)** as soon as practicable after the **Company**'s general counsel or risk manager (or functionally equivalent position) first becomes aware of the **Claim** or potential of the payment of **Voluntary Compliance Loss**, but in no event later than: (i) sixty (60) days after expiration of the **Policy Period**; or (ii) the expiration of the applicable **Extended Reporting Period**, if exercised.

2.    As a condition precedent to coverage under this Policy under the **Directors and Officer Liability Coverage Part**, the **Insured(s)** shall give to the **Insurer** written notice of any **Claim** made against the **Insured(s)** as soon as practicable after the **Company's** general counsel or risk manager (or functionally equivalent position) first becomes aware of the **Claim**, but in no event later than (i) ninety (90) days after the expiration of the **Policy Period** if this Policy is not renewed; (ii) one hundred and twenty (120) days after the expiration of the **Policy Period** if this Policy is renewed; or (iii) the expiration of the applicable **Extended Reporting Period**, if exercised.

3.    The **Insurer** shall not raise as a defense to any **Claim** that notice was not "as soon as practicable" if such **Claim** was reported during the **Policy Period**, and was otherwise reported in compliance with this section.

4.    If during the **Policy Period** the **Insured(s)** become aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** against the **Insured(s)** and provides details as set forth in this paragraph, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with this Section **V**.F., shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period**. No coverage is afforded under this Policy for any **Loss** incurred in connection with such circumstances prior to the time such circumstances result in a **Claim**. Pursuant to this paragraph, and as a condition precedent to exercising any rights under this Policy with respect to a notice of circumstances that may give rise to a **Claim** against the **Insured(s)**, the **Insured(s)** shall specify and include within any such notice of circumstance a description of the circumstances that may give rise to a **Claim**, the nature of the alleged **Wrongful Act(s)** (or the nature of the alleged **Wrongful Act(s)** anticipated) and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved.

G.    **INTERRELATED CLAIMS**

All **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:

1.     any of such **Claims** was first made, or deemed to have been made pursuant to Section **V**.F. above, even if such date is before the **Policy Period**;

2.     proper notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section **V**.F. above; or

3.     notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given under any other policy of insurance of which any of the applicable Coverage Parts is a direct or indirect renewal or replacement.

H.   **ORGANIZATIONAL CHANGES**

If during the **Policy Period**:

1.     the **Named Insured** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

2.     any person or entity or group of persons or entities acting in concert shall acquire:

   i)     more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the Board of Directors; management committee members (if a joint venture); or the members of the management board (if a limited liability company), of the **Named Insured**; or

   ii)    the right, pursuant to a written contract or the by-laws, charter, operating agreement or similar documents of the **Named Insured**, to elect, appoint or designate the majority of: the Board of Directors; management committee members (if a joint venture); or the members of the management board (if a limited liability company), of the **Named Insured,**

(any events described in Subsections 1. or 2. above is an "**Organizational Change**"), then this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the **Organizational Change**. However, there shall be no coverage afforded by this Policy for any actual or alleged **Wrongful Act(s)** occurring after the effective date of the **Organizational Change**.

In the event of an **Organizational Change**, this Policy shall not be cancelled by the **Named Insured** after such **Organizational Change** occurs.

I.   **OTHER INSURANCE**

The **Insured(s)** agree that any insurance provided by this Policy shall apply only as excess over any other valid and collectible insurance, whether primary, contributory, excess, contingent or otherwise, unless such insurance is written only as specific excess insurance over the Limits of Liability provided by this

Policy.  For coverage provided under this Policy to any **Employee** that is a leased employee or independent contractor, any insurance provided under this Policy shall be excess over any insurance or indemnification provided by any professional employer organization. This Policy shall not be subject to the terms and conditions of any other insurance policy.

Notwithstanding the foregoing, this policy shall apply as primary insurance with respect to: (i) any private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance maintained by any **Insured Person** or any direct or indirect shareholder of the **Named Insured**; (ii) any indemnification which may be owed to an **Insured Person** by a direct or indirect shareholder of the **Named Insured**; (iii) any personal liability or umbrella insurance that may be available to an **Insured Person**; or (iv) if the **Employment Practices Liability Coverage Part** is purchased, with respect to any **Claim** covered under said **Coverage Part** for an **Employment Practices Wrongful Act,** other than that portion of a **Claim** made against a leased employee or natural person independent contractor.

J.      **TERMINATION, CANCELLATION AND NONRENEWAL**

This Policy shall terminate at the earlier of the end of the **Policy Period** shown in Item 2. of the Declarations or the effective date of cancellation, as described below.

1.      Cancellation

a.      The **Named Insured** may cancel this Policy by surrender of this Policy to the **Insurer.** The **Named Insured** may also cancel this Policy or any **Coverage Part** by giving prior written notice to the **Insurer** stating when such cancellation shall take effect; provided, however, that such date of cancellation shall not be later than the end of the **Policy Period**.   If the **Named Insured** cancels this Policy, or any **Coverage Part**, the **Insurer** shall retain the proportion of the premium paid for the Policy, or any such **Coverage Part**, on a pro-rata basis.

b.      The **Insurer** may cancel this Policy or any **Coverage Part** only for non-payment of premium.  In this event, the **Insurer** shall mail written notice of cancellation for non-payment of premium to the **Named Insured**.  The **Insurer's** notice shall state the effective date of cancellation, which shall not be less than twenty (20) days after mailing such notice.  If the **Insurer** cancels this Policy or any **Coverage Part**, the **Insurer** shall retain the proportion of the premium paid on a pro-rata basis.

2.      Non-Renewal

The **Insurer** has no obligation to renew this Policy or any **Coverage Part**. If the **Insurer** elects not to renew this Policy or any **Coverage Part**, the **Insurer** shall mail to the **Named Insured** written notice of non-renewal at least sixty (60) days prior to the expiration of the **Policy Period**.

3.    Notice

The **Insurer** shall send all notices required under this Section **V.J.** by certified or registered mail to the **Named Insured** at the address listed in Item 1. of the Declarations, and by mail or electronic mail to the **Named Insured's** authorized agent, if any.  Proof of mailing shall be sufficient proof of notice.

K.    **SUBROGATION**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to any **Insured(s)'** rights of recovery.  The **Insured(s)** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights in the name of the **Company** or any **Insured Person**.

Regarding coverage provided by this Policy under the **Directors and Officers Liability Coverage Part** and/or the **Employment Practices Liability Coverage Part**, if purchased and as applicable:

In no event shall the **Insurer** exercise its right of subrogation against an **Insured** under this Policy unless there has been a final, non-appealable adjudication in the underlying proceeding establishing that such **Insured** committed a deliberate criminal or deliberate fraudulent act or omission, knowingly violated any statute, regulation or law or gained any personal profit, remuneration or other financial advantage to which such **Insured** was not legally entitled.

Regarding coverage provided by this Policy under the **Fiduciary Liability Coverage Part**, if purchased and as applicable:

If the premium for this Policy has been paid by an **Insured** other than a **Plan,**  the **Insurer** shall not exercise its right of subrogation against an **Insured** under this Policy unless there has been a final, non-appealable adjudication in the underlying proceeding establishing that such **Insured** committed a deliberate criminal or deliberate fraudulent act or omission, knowingly violated any statute, regulation or law or gained any personal profit, remuneration or other financial advantage to which such **Insured** was not legally entitled.

L.    **BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights, remedies or defenses under this Policy or at law.

In the event a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Company** and the **Insured Person(s)** hereby agree to cooperate in any efforts by the **Insurer**, the

**Company** or any **Insured Person(s)** to obtain relief from any stay or injunction that may prohibit or delay the **Insurer's** payment of **Loss**.

M.   **ALTERATION AND HEADINGS**

No alteration, change or modification to this Policy shall be effective unless made by written Endorsement to this Policy which is signed by an authorized representative of the **Insurer**.

The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

N.   **TERRITORY AND VALUATION**

Coverage under this Policy shall extend to **Wrongful Acts** taking place, **Loss** incurred or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, Limits of Liability, Retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America.  If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

O.   **AUTHORIZATION CLAUSE**

By acceptance of this Policy, the **Named Insured** agrees to act on behalf of the **Insured(s)** with respect to:

1.   giving or receiving notices provided for in this Policy, including but not limited to giving notices of **Claim** or circumstances that may give rise to a **Claim** or giving or receiving notice of termination, cancellation or non-renewal, provided, however, that any **Insured Person** may give notice to the **Insurer** pursuant to Section **V**.F. of this Policy

2.   paying premiums and receiving any return premiums that may become due under this Policy;

3.   agreeing to any changes in the Policy; and

the **Insured(s)** agree that the **Named Insured** shall act on their behalf.

P.   **ASSIGNMENT**

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

Q.   **REPRESENTATIONS**

By acceptance of this Policy, the **Insured(s)** represent and acknowledge that the statements and information contained in the **Application** are accurate and complete and that this Policy is issued in reliance upon the accuracy and completeness of such representations, statements and information.   No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

The **Insured(s)** further agree that in the event of any material misstatement, misrepresentation or omission in the **Application**, no coverage under this Policy shall apply to:

1.   Any **Insured Person** who knew, as of the inception date of this Policy, that the facts were not accurately and completely disclosed; and

2.   The **Company** (or any **Plan** if the **Fiduciary Liability Coverage Part** is purchased), either for **Claims** against it or as indemnitor of any **Insured Person**, if any of the following individuals, or their functional equivalents, knew, as of the inception date of the Policy, the facts that were not accurately and completely disclosed:

   i)   regarding coverage under the **Directors and Officers Coverage Part**, or the **Fiduciary Liability Coverage Part**, if purchased: any **Insured Person** who is or was a Chief Executive Officer or Chief Financial Officer;

   ii)   regarding coverage under the **Employment Practices Liability Coverage Part**: any **Insured Person** who was or is the head of the **Company's** Human Resources department.

The **Insurer** waives any right it may have to rescind or void this Policy.



# Private PROtect<sup>SM</sup>
# Directors & Officers Liability Coverage Part

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, all of which are made part of this Policy, and subject to the Declarations and the other terms of this Policy applicable to this **Coverage Part**, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

## I.   INSURING AGREEMENTS

### A.   NON-INDEMNIFIED LOSS COVERAGE

The **Insurer** shall pay **Loss** of any **Insured Person(s)** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against such **Insured Person(s)** for a **Wrongful Act**, if the **Company** has not indemnified the **Insured Person(s)** for such **Loss**.

### B.   COMPANY REIMBURSEMENT COVERAGE

The **Insurer** shall pay **Loss** of the **Company** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against any **Insured Person(s)** for a **Wrongful Act**, but only to the extent the **Company** has indemnified the **Insured Person(s)** for such **Loss**.

### C.   COMPANY LIABILITY COVERAGE

The **Insurer** shall pay **Loss** of the **Company** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against the **Company** for a **Wrongful Act**.

### D.   DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE

The **Insurer** shall pay **Investigative Costs**, subject to an aggregate Sub-limit of Liability as stated in Item 4.B.2. of the Declarations, resulting from a **Shareholder Derivative Demand** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) regardless of the outcome of, or finding as a result of, such **Shareholder Derivative Demand**.

### E.   INQUIRY COSTS COVERAGE

The **Insurer** will pay **Inquiry Costs**, subject to an aggregate Sub-Limit of Liability as stated in Item 4.B.3. of the Declarations, incurred by an **Insured Person(s)** as a result of an **Inquiry** first received by such **Insured Person(s)** during the **Policy Period** (or **Extended Reporting Period**, if applicable) if the **Company** has not indemnified such **Insured Person** for such **Inquiry Costs**.

## II.   DEFINITIONS

A.   **Claim** means:

1.   a written demand against any **Insured** for monetary damages, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations pertaining to a **Wrongful Act,** commenced by the **Insured's** receipt of such demand;

2.   a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.   a criminal proceeding against any **Insured** commenced by return of an indictment or similar document;

4.   an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5.   a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a Wells notice, target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6.   an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7.   an arbitration, mediation or any other alternative dispute resolution proceeding against any **Insured** commenced by the service of such proceeding or demand or similar document;

8.   solely with respect to **INSURING AGREEMENT** D., a **Shareholder Derivative Demand**.

9.   solely with respect to **INSURING AGREEMENT** E., an **Inquiry.**

10.   any of 1 through 7 above against an **Insured Person** arising out of, based upon or attributable to an actual or alleged **Wrongful Act** as defined below in Section **II. DEFINITIONS**, subsection N., paragraph 2.

**Claim** shall also include any appeal resulting from Subsections 2., 3., 4. or 5. above.

B.   **Employed Lawyers Claim** means a **Claim** as defined in Subsection A. 10. of this **Coverage Part,** subject to an aggregate Sub-Limit of Liability as stated in Item 4.B.4. of the Declarations.

C.  **Exempt Securities Claim** means any **Claim**:

1.  Based upon, arising out of or attributable to the actual or alleged purchase, sale or offer to purchase or sell any securities of the **Company** in any transaction that is in fact exempt from registration under the Securities Act of 1933 (including any amendments thereto and regulations promulgated there under and ), including any Regulation CF offering, or any other offering under any similar provision of foreign law;

2.  by a securities holder of the **Company** arising out of the actual or alleged failure of the **Company** to undertake a public offering of securities;

3.  for a **Wrongful Act** in connection with the preparation of the **Company** to commence an initial public offering of securities, including without limitation, any **Wrongful Act** relating to a road show.  This addition to the definition of **Exempt Securities Claim** shall be void ab initio upon the registration statement for such initial public offering's becoming effective (the "**IPO Commencement Time**") except to the extent, (i) prior to the **IPO Commencement Time**, a **Claim** was made against an **Insured** and reported to the **Insurer** in accordance with the reporting provisions of the General Terms and Conditions Section, Section **V. GENERAL CONDITIONS AND LIMITATIONS**, subsection F.2.  **REPORTING AND NOTICE** of this Policy and (ii) no other insurance policy is applicable to the **Claim** or would be applicable but for the exhaustion of its Limit of Liability or the failure to provide notice to the insurer of such other policy.

D.  **Inquiry** means:

1.  a subpoena or similar document compelling witness testimony or document production by an **Insured Person** with respect to such **Insured Person's** capacity in any **Company** or a **Company's** business activities;

2.  a written request by an **Investigating Authority** for an **Insured Person** to appear for an interview or meeting with respect to such **Insured Person's** capacity in the **Company** or **Company's** business activities; or

3.  a written request by a **Company** for an **Insured Person** to appear for an interview or meeting in connection with an investigation by an **Investigating Authority** or a security holder derivative demand, with respect to such **Insured Person's** capacity in any **Company** or a **Company's** business activities;

provided that, **Inquiry** shall not mean any routine or regularly scheduled oversight, compliance, audit, examination or inspection conducted by an **Investigating Authority**.

E.  **Inquiry Costs** means reasonable and necessary fees, costs and expenses incurred solely by an **Insured Person** in connection with the preparation for or response to an **Inquiry**, but shall not include salaries, wages, overhead or benefit expenses associated with **Insured Persons** or employees of the **Company** or the costs of complying with any formal or informal discovery request or production request seeking documents, records or electronic information that are in the possession of the **Company** or any third party.

F.  **Investigating Authority** means any federal, state, local or foreign law enforcement or governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities or commodities exchange or other self-regulatory body.

G.  **Investigative Costs** means that part of **Loss** consisting of reasonable and necessary fees (including but not limited to attorney's fees and expert's fees), costs and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other types of compensation or overhead expenses of **Insured Person(s)** or the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) and consented to by the **Insurer** (such consent to not be unreasonably withheld), in investigating or evaluating the claims alleged in a **Shareholder Derivative Demand**.

H.  **Loss** means the total amount which the **Insured(s)** become legally obligated to pay on account of **Claims** made against them solely for **Wrongful Acts** for which coverage applies, including, but not limited to: damages, judgments and settlements; any award of pre-judgment and post-judgment interest on covered judgments and settlements; claimants' attorney's fee award pursuant to a covered judgment or included as part of a covered settlement; and **Defense Costs**.
**Loss** shall also include punitive, exemplary, and multiplied damages included as part of a  covered settlement to the extent that such damages are insurable provided, however, that the insurability of punitive, exemplary and multiplied damages shall be governed by the law of any jurisdiction having a substantial relationship to the **Claim**, the **Loss** or this **Coverage Part,** that most favors the insurability of such punitive, exemplary or multiplied damages.  Solely with respect to **INSURING AGREEMENT** D., **Loss** means **Investigative Costs**.  Solely with respect to **INSURING AGREEMENT** E., **Loss** means **Inquiry Costs**.

Loss shall not include, other than **Defense Costs**:

1.  criminal or civil fines or penalties, other than civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B), or to **UK Bribery Act Fines**;

2.  taxes;

3.  any amount for which the **Insured(s)** are not financially liable or which are without legal recourse to the **Insured(s)**;

4.  matters which are deemed uninsurable under the law pursuant to which this **Coverage Part** shall be construed;

5.  any amounts paid or incurred by any **Insured(s)** in providing injunctive or non-pecuniary relief;

6.  any amounts incurred by any **Insured(s)** to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants** regardless of whether such amounts are incurred compulsorily or voluntarily;

7.      disgorgement or restitution, whether paid, returned or reimbursed pursuant to a settlement or in satisfaction of a judgment; or

8.      any amount of any judgment or settlement representing the amount by which any price or consideration is effectively increased in connection with the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of an entity; provided this paragraph shall not exclude plaintiffs' attorney's fees with respect to any such judgment or settlement.

In addition, the **Insurer** shall not assert with respect to a **Claim** that **Loss** incurred by any **Insured**, in the **Insured's** capacity as such, is uninsurable due to the **Insured's** actual or alleged violation of Sections 11, 12 or 15 of the Securities Act of 1933, as amended; provided, however, this paragraph shall not apply to any settlement or judgment in said **Claim** if and to the extent a final and non-appealable judgment adverse to such **Insured** in any proceeding not brought by the **Insurer**, or a final determination by a regulatory or other governmental authority, or a written admission by such **Insured** in a settlement of such **Claim**, establishes such settlement or judgment constitutes disgorgement, restitution or the return of ill-gotten gain.

I.      **Moonlighting** means professional legal services rendered by an **Insured Person** outside the scope of his or her employment with the **Company** but during such time as the **Insured Person** is a licensed attorney employed by the **Company** to render professional legal services, which include notarizing, certifying or acknowledging signatures. **Moonlighting** shall not include any such professional legal services by any such **Insured Person** in his or her capacity with any entity that is not a current **Insured** at the time such services are rendered, including, without limitation, such **Insured Person's** capacity as an owner, principal, partner, employee, counsel or of counsel with any such entity.

J.      **Outside Entity** means:

1.      any organization chartered and operated as a not-for-profit organization;

2.      any other organization specifically included as an **Outside Entity** by specific written Endorsement applicable to this **Coverage Part**;

provided any organization referred to in Subsections 1. or 2. above is not included in the definition of **Company**.

K.      **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person** as defined in Subsection 1. of **II. DEFINITIONS** Section F. if service in such position is with the knowledge and consent of and at the direction or request of or part of the duties regularly assigned to the **Insured Person**, by the **Company**.

L.      **Shareholder Derivative Demand** means a written demand by one or more shareholders of the **Company** against the **Company's** board of directors or board of managers to bring a civil proceeding on behalf of the **Company** against any **Insured Person** for a **Wrongful Act**;

M.      **UK Bribery Act Fines** means fines or penalties assessed against any **Insured Person**

pursuant to Section 11(1)(a) of the United Kingdom Bribery Act of 2012, Chapter 23, up to a maximum amount of $10,000 per event.

N.   **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty:

1.   by an **Insured Person** while acting in his or her capacity as such and on behalf of the **Company**, or any matter claimed against the **Insured Person** solely by reason of his or her status as an **Insured Person**;

2.   by an **Insured Person** employed by the **Company** as an attorney (i) while acting in his or her capacity as an **Insured Person** and as a licensed attorney rendering professional legal services, including, without limitation, pro bono legal service; or (ii) while **Moonlighting;** or (iii) by any **Insured Person** while acting under the supervision of and at the direction of another **Insured Person** who is employed by the **Company** as an attorney provided that such other **Insured Person**, is providing. such supervision and direction, is acting in his or her capacity as an **Insured Person** and as a licensed attorney rendering professional legal services. Rendering professional legal services includes notarizing, certifying or acknowledging signatures;

3.   with respect to any **Outside Position**, by such **Insured Person** in his or her capacity as such and while acting on behalf of the **Outside Entity** or any matter claimed against such **Insured Person** solely by reason of his or her status in such **Outside Position**; or

4.   with respect to **INSURING AGREEMENT** C., by the **Company**.

## III.   EXCLUSIONS

The **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured**:

A.   brought or maintained by or on behalf of the **Company,** any **Insured Person** (other than an **Employee**) in any capacity or by any past, present or future security holder, partner or member of the **Company**, provided this exclusion shall not apply to:

1.   a **Claim** by or on behalf of a security holder, partner or member of the **Company**, whether direct or derivative, that is brought and maintained without the solicitation, assistance or participation of any **Insured** or **Outside Entity**;

2.   a **Claim** brought or maintained by any **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is otherwise covered under the terms of this **Coverage Part;**

3.   a **Claim** brought by any **Insured Person** who has not served in such capacity for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

4.  a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors' committee for such **Company**, or any assignee of such trustee, examiner, receiver, or similar official or creditors' committee;

5.  a **Claim** brought by or on behalf of the **Company** against any **Insured Person** that is brought and maintained in any non-common law jurisdiction outside the United States; or

6.  a **Claim** brought against an **Insured Person** based upon or arising out of any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

B.  for any **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor, trustee, security holder, partner or member of such **Outside Entity**, provided this exclusion shall not apply to:

1.  a **Claim** by or on behalf of a security holder, partner or member of the **Outside Entity,** whether direct or derivative, that is brought and maintained without the solicitation, assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager, governor or trustee of the **Outside Entity**;

2.  a **Claim** brought or maintained by or on behalf of such **Outside Entity** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is otherwise covered under the terms of this **Coverage Part**;

3.  a **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such two (2) year period;

4.  a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors' committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, similar official or creditors' committee;

5.  a **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States; or

6.  a **Claim** brought against the **Outside Entity** based upon or arising out of any protected activity     specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

C.  based upon, arising out of or attributable to:

     1.    the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants** at any time; provided, however, that this Subsection 1. shall not be applicable to **INSURING AGREEMENT** A. except with respect to **Loss** (Including without limitation legal and professional fees) incurred in connection with testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**; or

     2.    any direction, demand or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

D.    for service by the **Insured Person(s)** in any position or capacity in any organization other than the **Company** even if the **Company** directed or requested the **Insured Person(s)** to serve in such other position or capacity, provided this exclusion shall not apply to service by the **Insured Person** in an **Outside Position**;

E.    based upon, arising out of or attributable to (i) the actual or alleged purchase or sale, or offer to purchase or sell any securities of any kind, including, without limitation, securities issued by an entity other than the **Company**, or (ii) the actual or alleged violation of: the Securities Act of 1933; the Securities Exchange Act of 1934; the Investment Act of 1940; any state "Blue Sky" securities law;  or any other federal, state or local regulation, rule or statute regulating securities.  This exclusion shall not be applicable to any **Exempt Securities Claim.**

F.    based upon, arising out of or attributable to any actual or alleged employment related **Wrongful Act**, including but not limited to any refusal to employ, wrongful termination, wrongful discipline, breach of contract, harassment, violation of civil rights, or retaliation; however, if the Employment Practices Liability **Coverage Part** is not purchased, this exclusion will only apply to Insuring Agreement C.

G.    based upon, arising out of, attributable to any actual or alleged:

     1.    **Wage and Hour Violation**; or

     2.    any violation of: (i) any law governing workers' compensation, unemployment insurance, social security or disability benefits; (ii) the National Labor Relations Act; (iii) the Worker Adjustment and Retraining Notification Act; (iv) the Consolidated Omnibus Budget Reconciliation Act of 1985; (v) the Occupational Safety and Health Act; (vi) the Employee Retirement Security Act of 1974 (vii) any federal, state, local or foreign statute, rule, regulation or common law similar or related to, or promulgated pursuant to, any of the foregoing in subparts (i) through (vi);

H.    based upon, arising out of or attributable to any actual or alleged:

     1.    Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time domestic or foreign government official, agent, representative, employee, or military personnel, including any family member of, or any entity affiliated with, any of the foregoing;

2.      Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time officers, directors, agents, partners, representatives, principal shareholders, owners or employees of any customer or potential customer of any **Insured**, including any family member of, or any entity affiliated with, any of the foregoing; or

3.      Political contributions, whether domestic or foreign;

Provided, however, this Exclusion shall not apply to civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B) or to **UK Bribery Act Fines.**

Solely with respect to **INSURING AGREEMENT** C., the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Company**:

I.      based upon, arising out of or attributable to any actual or alleged libel, slander oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, assault, battery, loss of consortium, malicious prosecution or malicious use or abuse or process;

J.      based upon, arising out of or attributable to any actual or alleged discrimination against, or harassment of, any person or entity, whether employment related or not;

K.      based upon, arising out of or attributable to the actual or alleged violation of intellectual property rights, including, without limitation: (i) infringement of patent, copyright, trademark, trade dress, service mark, service name, title or slogan; (ii) misappropriation of ideas or trade secrets; or iii) plagiarism. This exclusion will not apply to any **Exempt Securities Claim**.

L.      based upon, arising out of or attributable to any actual or alleged false advertising or misrepresentation in advertising, with respects to the advertising of the **Insured's** own goods, products, publications or services.

M.      based upon, arising out of or attributable to any actual or alleged price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition or unfair business or trade practice or any interference in another's contractual or business relationship.   Without limitation, this exclusion shall be applicable to any actual or alleged violation of: the Federal Trade Commission Act; the Sherman Act; the Clayton Act; any amendments to any of the foregoing or any regulations promulgated pursuant to any of the foregoing; any statutory or common law definition of unfair competition, or unfair business or trade practice; or any provision of any federal, state, local or foreign statute regulation or common law relating to any of the foregoing or actually or allegedly relating to any activity set forth in this exclusion. However, this Exclusion shall not apply to civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B) or to **UK Bribery Act Fines**;

N.      based upon, arising out of or attributable to any **Insured's** actual or alleged rendering or failure to render professional services, provided, however, that this exclusion shall not be applicable to **Investigative Costs**; or

O.   based upon, arising out of or attributable to any actual or alleged liability of the **Company** under any contract or agreement; provided, however, that this exclusion shall not be applicable to any liability that would have attached to the **Company** in the absence of such contract or agreement.

## IV.   OUTSIDE POSITION COVERAGE

Subject to this Policy's other terms, **INSURING AGREEMENTS** A. and B. shall extend coverage to **Insured Persons** while serving in an **Outside Position**.  However, this coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** or any other entity in which the **Insured Person(s)** serve(s) in the **Outside Position**.  Payment by the **Insurer** or any affiliate of the **Insurer** under another policy as a result of a **Claim** against an **Insured Person(s)** in an **Outside Position** shall reduce, by the amount of such payment, the **Insurer's** Limit of Liability applicable to this **Coverage Part** with respect to such **Claim**.

## V.   ADDITIONAL LIMIT FOR NON-INDEMNIFIED LOSS

The **Insurer** shall pay **Loss** of any **Insured Person(s)** for which the **Insured Person(s)** are not indemnified by the **Company** and which the **Insured Person(s)** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**, subject to a limit as set forth in Item 4.B.5 of the Declarations. Coverage under this Subsection shall apply only if the Limits of Liability in Item 4.B.1. of the Declarations are exhausted by reason of payment by the **Insurer** of **Loss**; such coverage shall then be excess of all other insurance specifically excess of this policy as well as all other insurance described the **General Terms and Conditions** Section, Subsection **V. GENERAL CONDITIONS AND LIMITATIONS**, subparagraph I. **OTHER INSURANCE**.

## VI.   PRESUMPTIVE INDEMNIFICATION

If the **Company** is permitted or required by common or statutory law to indemnify the **Insured Person(s)** for **Loss** but fails or refuses to do so other than for reason of **Financial Insolvency** then, notwithstanding any other conditions, provisions or terms of this policy to the contrary, any payment by the **Insurer** of such **Loss** under **INSURING AGREEMENT** A. shall be subject to the Retention set forth in Item 5.A.1. of the Declarations

For purposes of this section, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by law.



# Private PROtect<sup>SM</sup>
# Fiduciary Liability Coverage Part

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, all of which are made part of this Policy, and subject to the Declarations and the other terms of this Policy applicable to this **Coverage Part**, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

## I.   INSURING AGREEMENTS

### A.   WRONGFUL ACTS COVERAGE

The **Insurer** shall pay the **Loss** of any **Insured** arising from a **Claim** first made during the **Policy Period** (or the **Extended Reporting Period**, if exercised) against such **Insured** for a **Wrongful Act**.

### B.   VOLUNTARY COMPLIANCE LOSS COVERAGE

The **Insurer** shall pay the **Voluntary Compliance Loss** first assessed in writing against any **Insured** during the **Policy Period** (or the **Extended Reporting Period**, if exercised), subject to the aggregate Sub-Limit of Liability set forth in Item 4.D.2. of the Declarations.

## II.   DEFINITIONS

### A.   **Administration** means with respect to a **Plan**:

1.   advising, counseling or giving notice to **Employees**, **Plan** participants and beneficiaries;

2.   providing interpretations to **Employees**, **Plan** participants and beneficiaries;

3.   handling of records; or

4.   effecting enrollment, termination or cancellation of **Employees**, participants and beneficiaries under a **Plan**.

### B.   **Application** means, in addition to the information and representations included in the definition of **Application** in **II. DEFINITIONS** Section A. of the General Terms and Conditions, the following materials: any public documents filed by or on behalf of the **Company** or any **Plan** during the twelve (12) month period prior to the inception of the **Policy Period** with any state, federal or local government agency, including without limitation the Securities and Exchange Commission and the United States Department of Labor.

C.    **Benefits** means any obligation under a **Plan** to a **Plan** participant or beneficiary, or that would be such an obligation if the **Plan** complied with applicable law.   **Benefits** shall include plaintiffs' attorneys fees in any settlement or judgment based upon a percentage of **Benefits** or payable from a common fund established to pay **Benefits**.   Solely for the purpose of this Definition, an "obligation" is a payment of money or property, or the grant of a privilege, right, option or perquisite.

D.    **Claim** means:

1.    a written demand against any **Insured** for monetary, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations pertaining to a **Wrongful Act** commenced by the **Insured's** receipt of such demand;

2.    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.    a criminal proceeding against any **Insured** commenced by return of an indictment, information or similar document;

4.    an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5.    an arbitration, mediation or any other alternative dispute resolution proceeding against any **Insured** commenced by the service of such proceeding or demand or similar document; or

6.    written notice of the commencement of a fact finding investigation of an **Insured** pertaining to a **Wrongful Act** by the United States Department of Labor, the United States Pension Benefit Guaranty Corporation or any similar foreign governmental agency, including but not limited to the Pensions Ombudsmen or Pensions Regulator in the United Kingdom, having authority to regulate the governance, terms or solvency of a **Plan**.   Nothing in this Subsection 6. shall be deemed to include a fact finding investigation by the United States Internal Revenue Service or any similar foreign governmental agency having responsibility for the administration of tax laws or any governmental agency conducting a criminal investigation.

7.    solely with Insuring Agreement B., written notice of an assessment by a governmental regulatory authority of a **Voluntary Compliance Loss** against any **Insured**.

8.    any of the above based upon, arising out of or attributable to an actual or alleged violation of **HIPAA** or **HIPAA Privacy Regulations**.

**Claim** shall also include any appeal resulting from the **Claims** listed above in Subsections 2., 3., 4. or 5. above.

E.    **Corporate Trustee** means any corporation that (i) is established by the **Named Insured**; (ii) is formed and operating outside the United States; (iii) is duly appointed to act as a

trustee of the assets of a **Plan;** and (iv) performs no other function.  Such an entity shall be considered a **Subsidiary** during such time as all the conditions of this Definition are met even if it does not otherwise meet the definition of **Subsidiary** set forth in **II**. **DEFINITIONS** Section L. of the General Terms and Conditions.

F.   **Defense Costs**, in addition to the provisions of the General Terms and Conditions Section, shall also include the reasonable and necessary fees and expenses of an independent fiduciary (and such independent fiduciary's legal counsel) retained to review the proposed settlement of a covered **Claim** pursuant to the United States Department of Labor Prohibited Transaction Exemption PTE 2003-39 and any amendments thereto. **Defense Costs** shall not include costs, charges, fees or expenses incurred by any **Insured** in connection with any circumstance involving an actual or potential **Voluntary Compliance Loss**, whether such costs, charges, fees or expenses are incurred in connection with a defense to or investigation of a **Voluntary Compliance Loss**, or a correction or remedy of a non-compliance with applicable law.

G.   **Employee Benefits Law** means:

1.   the Employee Retirement Income Act of 1974 ("ERISA"), including all amendments thereto, including amendments contained in **HIPAA**, regulations promulgated under ERISA, and any similar state, local or foreign statute, regulation or common law provision pertaining to the governance, terms or solvency of a **Plan**;

2.   **HIPAA Privacy Regulations**; or

3.   in addition to the laws specified above in subsections 1. and 2. above, but solely with respect to a **Wrongful Act** as defined in **II**. **DEFINITIONS** Section V. Subsections 2. and 4., and solely with respect to a **Government Plan** any law governing workers' compensation, unemployment insurance, social security or disability insurance for **Employees** of the **Company**.

H.   **ESOP** means an Employee Stock Ownership Plan as defined in ERISA and regulations promulgated pursuant thereto, or any other plan, fund or program whose assets are comprised in whole or part in securities of or issued by the **Company**.

I.   **Government Plan** means a government mandated program for workers compensation, unemployment insurance, social security or disability insurance for **Employees** of the **Company**.

J.   **Health Care Exchange** means the American Health Benefit Exchange, the SHOP Exchange, as such terms are defined in Section 1311 of the Patient Protection and Affordable Care Act, and any other exchange, including any public or private entity established to facilitate the purchase of health insurance coverage in accordance with the Patient Protection and Affordable Care Act, as amended.

K.   **Health Care Exchange Wrongful Act** means any actual or alleged breach of fiduciary duty by an **Insured**, or any actual or alleged act, error or omission by an **Insured**, in connection with the insurance purchased through, or attempted to be purchased through, a **Health Care Exchange**.

L.  **HIPAA** means the Health Insurance Portability and Accountability Act of 1996, including any amendments thereto.

M.  **HIPAA Claim** means a **Claim** as defined in paragraph 8. of subsection D of this **Coverage Part**, subject to the aggregate Sub-Limit of Liability set forth in Item 4.D.3. of the Declarations.

N.  **HIPAA Privacy Regulations** means privacy regulations promulgated pursuant to **HIPAA** insofar as any such privacy regulations pertain to a **Plan**.

O.  **Insured(s)**, in addition to the meaning set forth in the General Terms and Conditions Section, shall also include any **Plan** except a **Government Plan**.

P.  **Loss** means the total amount the **Insured(s)** become legally obligated to pay on account of **Claims** made against them solely for **Wrongful Acts** for which coverage applies, including, but not limited to damages, judgments and settlements; any award of pre-judgment and post-judgment interest on covered judgments and settlements; claimants' counsel's fees awarded pursuant to a covered judgment or included as part of a covered settlement; **Defense Costs**; and **Voluntary Compliance Loss** under Insuring Agreement B.  **Loss** shall also include punitive and exemplary damages and multiplied damages not in excess of the damage award so multiplied awarded as part of a covered judgment or included as part of a covered settlement where insurable under applicable law.

In determining the insurability of punitive or exemplary damages, the multiplied portion of multiplied damages, or any other **Loss** the insurability of which is dependent on the law applicable to this **Coverage Part**, the law of the jurisdiction having a substantial relationship to the **Claim**, the **Loss** or this **Coverage Part** that most favors the insurability of such damages or **Loss** shall apply.

**Loss** shall not include:

1.  criminal or civil fines or penalties, except the following civil fines or penalties solely in connection with a **Plan**:
    **a.** the five percent (5%) or less civil penalty imposed upon an **Insured** pursuant to section 502(i) of ERISA;
    **b.** the twenty percent (20%) or less civil penalty imposed upon an **Insured** pursuant to Section 502(I) of ERISA;
    **c.** civil fines or penalties imposed by the Pensions Ombudsmen or Pensions Regulator (or any successor regulatory authority) in the United Kingdom;
    **d.**  civil fines or penalties constituting **Voluntary Compliance Loss** under Insuring Agreement B subject to the sub-limit of Liability set forth in Item 4.D.2. of the Declarations**;** and
    **e.** civil penalties imposed upon an **Insured** for violations of **HIPAA Privacy Regulations** subject to the sub-limit of Liability set forth in Item 4.D.3. of the Declarations;

2.  taxes;

3.  any amounts for which the **Insured(s)** are not financially liable or which are without legal recourse to the **Insured(s)**;

4.      matters which are deemed uninsurable under the law pursuant to which this **Coverage Part** shall be construed;

5.      amounts paid or incurred by any **Insured(s)** in providing injunctive or non-pecuniary relief;

6.      amounts constituting disgorgement or restitution whether paid, returned or reimbursed pursuant to a settlement or in satisfaction of a judgment;

7.      **Benefits**, or that portion of any settlement, judgment or award in an amount equal to such **Benefits**, unless and to the extent that the recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person** without indemnification, payment or advancement from any source.  Notwithstanding the foregoing, loss or damages sought by a claimant for diminution in the value of the assets of a **Plan**, including the value of individual accounts in a **Plan**, because of a change in the value of investments held by the **Plan**, shall not be considered **Benefits** even if the claimants or a court has characterized such loss or damage as "benefits";

8.      the return or reversion to an employer of any contribution to, or asset of, a **Plan**; or

9.      wages, tips, commissions, fees or investigative costs except fees or investigative costs that constitute **Defense Costs.**

Q.      **Managed Care Services** means the administration or management of a health care, pharmaceutical, vision or dental **Plan** utilizing cost control mechanisms, including, but not limited to utilization review, case management, the use of a preferred provider medical, vision or dental network, or a health maintenance organization

R.      **Multiemployer Plan** means any multiemployer plan as defined by ERISA to which the **Company** and an employer other than the **Company** are required to contribute.

S.      **Non-indemnifiable Loss** means **Loss,** incurred by an **Insured Person,** that has not been indemnified, paid or advanced by the **Company** or a **Plan** and for which the **Company** or a **Plan** is not permitted to indemnify pursuant to law.

T.      **Plan** means:

1.      a welfare plan, as defined in ERISA, sponsored solely by the **Company** or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees** of the **Company**;

2.      a pension plan, as defined in ERISA, sponsored solely by the **Company** or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees** of the **Company** provided that such plan was in existence before the beginning of the **Policy Period**; or

3.      a pension plan (including a plan that is both welfare plan and a pension plan) as defined in ERISA, which during the **Policy Period** first becomes sponsored solely

by the **Company** or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees** of the **Company**, subject to the following:

a.      this **Coverage Part** shall only provide coverage with respect to **Wrongful Acts** occurring after the first date of such sponsorship;

b.      the **Company** shall provide written notice of such sponsorship to the **Insurer** by the end of the **Policy Period** or, if there are fewer than thirty (30) days remaining in the **Policy Period** on the first date of such sponsorship, then within thirty (30) days after the **Policy Period**; or

4.      A **Government Plan**; however, coverage with respect a **Government Plan** is solely for a **Wrongful Act** as defined in **II**. **DEFINITIONS** Section V. Subsections 2. or 4.

Any entity meeting the definition of **Plan** set forth in this Definition shall constitute a **Plan** irrespective of whether such entity is subject to regulation under any provision of ERISA or constitutes a qualified or non-qualified plan under the United States Internal Revenue Code**.**

Notwithstanding anything in this Definition, **Plan** shall not include (i) any **ESOP**, unless included by specific written endorsement to this Policy that is applicable to this **Coverage Part**; or (ii) a **Multiemployer Plan**. Coverage relating to an **Insured Person's** serving with a **Multiemployer Plan** shall be afforded solely for any **Wrongful Act** as defined in **II. DEFINITIONS** Section T. Subsection 5. and only if (i) the **Insured Person** is serving with the **Multiemployer Plan** at the specific direction of the **Company;** and (ii) the **Insured Person's** service with the **Multiemployer Plan** is added by specific written endorsement applicable to this **Coverage Part**.  In no event shall any **Multiemployer Plan** be an **Insured** under this **Coverage Part**.

Without in any way limiting the applicability of Exclusion F., coverage under this **Coverage Part** relating to a **Wrongful Act** concerning a **Plan** as defined in Subsections 1., 2. or 3. above with respect to any **Claim** made against any **Insured** or **Voluntary Compliance Loss** incurred by an **Insured** shall only apply for **Wrongful Acts** occurring during such time as the **Plan** is sponsored by the **Named Insured** or a then current **Subsidiary** (whether solely or jointly with a labor organization) solely for the benefit of **Employees** of the **Company**.  In the event any such **Plan** is merged, sold, spun off or terminated whether prior to or during the **Policy Period,** coverage under this **Coverage Part** shall only apply with respect to **Wrongful Acts** occurring prior to the date of such merger, sale, spin off or termination, or prior to the date of final distribution of the assets of any such **Plan**, whichever is later.

U.      **Voluntary Compliance Loss** means fines, penalties, or fees, subject to the sub-limit of Liability set forth in Item 4.D.2. of the Declarations, assessed in writing by a governmental regulatory authority against, and collected from, an **Insured** in connection with the correction of a **Plan's** noncompliance with applicable law pursuant to the following programs: the Employee Plans Compliance Resolution System; the Delinquent Filer Voluntary Compliance Program; the Voluntary Fiduciary Correction Program; and the Participant Notice Voluntary Correction Program; provided, however, that the **Insured** first became aware of such non-compliance during the **Policy Period** or during the policy period of a policy or coverage section of a policy providing fiduciary liability

coverage issued by the **Insurer** of which this **Coverage Part** is a continuous renewal and provided further, that the United States Department of Labor or other applicable regulatory body shall have issued a "No Action" letter or similar document to the extent applicable procedures pursuant to any of the foregoing programs provide for the issuance of any such document.

V.   **Wrongful Act** means:

1.   any actual or alleged violation by an **Insured** of any of the responsibilities, obligations or duties imposed upon fiduciaries by **Employee Benefits Law** with respect to a **Plan,** including but not limited to breaches of such duties in connection with the hiring or monitoring of third party service providers, or the violation of **HIPAA Privacy Regulations** with respect to a **Plan**;

2.   any actual or alleged negligent act, error or omission in the **Administration** of a **Plan**;

3.   any matter claimed against an **Insured** solely by reason of his, her or its status as a fiduciary of a **Plan**;

4.   any matter claimed against an **Insured** solely by reason of his, her or its status as a person or entity engaging in **Administration** of a **Plan**;

5.   in connection with an **Insured Person's** service with a **Multiemployer Plan** at the specific direction of the **Company**, any actual or alleged breach of any of the duties imposed upon such **Insured Person** as a fiduciary of the **Multiemployer Plan** by **Employee Benefits Law**; any actual or alleged negligent act, error or omission by such **Insured Person** in the **Administration** of such **Multiemployer Plan**; any matter claimed against such **Insured Person** solely by reason of his or her status as a fiduciary of such **Multiemployer Plan**; or any matter claimed against such **Insured Person** solely by reason of his or her status as a person engaging in the **Administration** of such **Multiemployer Plan**. **Wrongful Act** shall also include any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by **Employee Benefits Law** by, or any actual or alleged negligent act, error or omission in the **Administration** by, another **Insured** arising out of or related to such **Insured Person's** service with the **Multiemployer Plan** and any matter claimed against such other **Insured** solely by reason of his, her or its status as a fiduciary of, or engaging in the **Administration** of, the **Multiemployer Plan**.   This paragraph shall only be applicable if the **Insured Person's** service with the **Multiemployer Plan** is added by specific written endorsement applicable to this **Coverage Part**;

6.   any matter claimed against an **Insured** in their capacity as a settlor of any **Plan**.

7.   any of the following:

   i)   improper or negligent selection of a **Managed Care Services** provider;

   ii)   denial or delay of any benefit under a health care, pharmaceutical, vision, or dental **Plan** of an **Insured**;

iii)    the actual or alleged improper selection of or inadequate monitoring of third-party service providers;

iv)    the actual or alleged failure to properly and timely provide notices under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) or other required notices, the alleged failure to make timely determinations of eligibility for benefits;

v)    any **Health Care Exchange Wrongful Act**.

## III.   EXCLUSIONS

The **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured**:

A.    for the actual or alleged failure to fund a **Plan** in accordance with **Employee Benefits Law** or the terms of the **Plan** or to collect an employer's contributions owed to a **Plan**

B.    for any actual or alleged liability of any **Insured** under any contract or agreement; provided, however, that this exclusion shall not apply to (i) any liability that would have attached in the absence of such contract or agreement; (ii) **Defense Costs**; or (iii) liability assumed in accordance with the agreement or declaration of trust pursuant to which the **Plan** was established;

C.    based upon, arising out of or attributable to:

    1.    the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants**; provided, however, this subsection 1. of Exclusion C. shall not be applicable to **Defense Costs** or **Non-indemnifiable Loss** incurred by an **Insured Person** in connection with any **Claim** based upon, arising out of or attributable to the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants**; or

    2.    any direction, demand or request to test for, monitor, clean up, remove contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**;

D.    for libel, slander, oral or written publication of defamatory or disparaging material; provided this exclusion shall not be applicable to **Defense Costs** incurred in the defense of a **Claim** for a violation of **Employee Benefits Law**;

E.    based upon, arising out of or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, or other employment practices act, error or omission; provided this exclusion shall not be applicable to an actual or alleged violation of Section 510 of **ERISA**;

F.    based upon, arising out of or attributable to any **Wrongful Act** with respect to a **Plan** actually or allegedly committed at a time when the **Named Insured** or a then current **Subsidiary** did not sponsor the **Plan** or actually or allegedly committed when the **Insured Person(s)** against whom the **Claim** is made were not, at the time of the alleged

**Wrongful Act(s)**, then current **Insured Person(s)** acting in their capacity as a fiduciary of, or in the **Administration** of, such **Plan**;

G.     based upon, arising out of or attributable to an **Insured(s)'** actual or alleged act or omission in his or her capacity as a fiduciary or administrator of any plan, fund or program other than a **Plan** or by reason of his**,** her or its status as a fiduciary or administrator of such plan, fund or program;

H.     by or in the right of a fidelity insurer against an **Insured Person** whose conduct has resulted in the payment of loss by such fidelity insurer under a fidelity bond;

I.     for any actual or alleged violation of any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law except (i) the Consolidated Omnibus Budget Reconciliation Act of 1985; (ii) **HIPAA**; or (iii) as respects a **Government Plan** any **Claim** for any **Wrongful Act** except a **Wrongful Act** as defined in **II**. **DEFINITIONS** Section V. Subsections 2. or 4;

## IV.   SUBROGATION

In the event of any payment under this Policy, the **Insurer** shall be subrogated to any **Insured(s)'** rights of recovery.  The **Insured(s)** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly in the name of the **Company,** the **Plan** or any **Insured Person**.

If the premium for this Policy has been paid by an **Insured** other than a **Plan**, the **Insurer** shall not exercise its right of subrogation against any **Insured** unless it shall have been finally adjudicated that such **Insured** committed a deliberate criminal or deliberate fraudulent act or omission, knowingly violated any statute, regulation or law or gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled pursuant to the terms of the exclusions set forth in any **Coverage Part.**

Argonaut Insurance Company

---

## TABLE OF CONTENTS

## PRIVATE PROTECT
## DIRECTORS & OFFICERS LIABILITY COVERAGE PART

**I.     INSURING AGREEMENTS** ................................................................1

    A.    **NON-INDEMNIFIED LOSS COVERAGE** ...............................1
    B.    **COMPANY REIMBURSEMENT COVERAGE** .........................1
    C.    **COMPANY LIABILITY COVERAGE** .....................................1
    D.    **DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE** ...........1

**II.    DEFINITIONS** ................................................................................2

    A.    **Claim** .......................................................................2
    B.    **Employed Lawyers Claim** .........................................2
    C.    **Exempt Securities Claim** .........................................2
    D.    **Inquiry** ....................................................................3
    E.    **Inquiry Costs** ..........................................................3
    F.    **Investigating Authority** ...........................................3
    G.    **Investigative Costs** .................................................4
    H.    **Loss** .......................................................................4
    I.    **Moonlighting** ..........................................................5
    J.    **Outside Entity** ........................................................5
    K.    **Outside Position** .....................................................5
    L.    **Shareholder Derivative Demand** ...............................5
    M.    **UK Bribery Act Fines** ..............................................5
    N.    **Wrongful Act** ..........................................................6

**III.   EXCLUSIONS** ...............................................................................6

**IV.    OUTSIDE POSITION COVERAGE** .................................................10

**V.     ADDITIONAL LIMIT FOR NON-INDEMNIFIED LOSS** .........................10

**VI.    PRESUMPTIVE INDEMNIFICATION** ..............................................10

Argonaut Insurance Company

_____

## TABLE OF CONTENTS

### PRIVATE PROTECT
### FIDUCIARY LIABILITY COVERAGE PART

I.      **INSURING AGREEMENTS**................................................................................1

     A.    **WRONGFUL ACTS COVERAGE**...........................................................1

II.     **DEFINITIONS**.............................................................................................1

     A.    **Administration**...............................................................................1
     B.    **Application**....................................................................................1
     C.    **Benefits**.......................................................................................2
     D.    **Claim**...........................................................................................2
     E.    **Corporate Trustee**........................................................................2
     F.    **Defense Costs**..............................................................................3
     G.    **Employee Benefits Law**.................................................................3
     H     **ESOP**...........................................................................................3
     I.     **Government Plan**..........................................................................3
     J.     **Health Care Exchange**...................................................................3
     K.    **Health Care Exchange Wrongful Act**..............................................3
     L.     **HIPAA**.........................................................................................4
     M.    **HIPAA Claim**................................................................................4
     N.    **HIPAA Privacy Regulations**...........................................................4
     O.    **Insured(s)**...................................................................................4
     P.     **Loss**...........................................................................................4
     Q.    **Managed Care Services**.................................................................5
     R.    **Multiemployer Plan**......................................................................5
     S.     **Non-indemnifiable Loss**................................................................5
     T.     **Plan**...........................................................................................5
     U.    **Voluntary Compliance Loss**..........................................................6
     V.    **Wrongful Act**...............................................................................7

III.    **EXCLUSIONS**...........................................................................................8

IV.    **SUBROGATION**........................................................................................9

Argonaut Insurance Company

---

## TABLE OF CONTENTS

## PRIVATE PROTECT
## GENERAL TERMS AND CONDITIONS

I.      **APPLICABILITY OF GENERAL TERMS AND CONDITIONS** ...........................1

II.      **DEFINITIONS** ....................................................................................................1

         A.      **Application** ...................................................................................1
         B.      **Company** ......................................................................................1
         C.      **Coverage Part** .............................................................................1
         D.      **Defense Costs** .............................................................................1
         E.      **Domestic Partner** .......................................................................2
         F.      **Employee** ....................................................................................2
         G.      **Extended Reporting Period** ........................................................2
         H.      **Extradition** .................................................................................2
         I.      **Financial Insolvency** ..................................................................2
         J.      **Insured(s)** ...................................................................................2
         K.      **Insured Person(s)** ......................................................................2
         L.      **Interrelated Wrongful Acts** ........................................................3
         M.      **Manager** .....................................................................................3
         N.      **Named Insured** ..........................................................................3
         O.      **Policy Period** ..............................................................................3
         P.      **Pollutants** ..................................................................................3
         Q.      **Subsidiary** .................................................................................3
         R.      **Wage and Hour Violation** ..........................................................4

III.      **GENERAL EXCLUSIONS** ..................................................................................4

IV.      **EXTENSIONS OF COVERAGE** .........................................................................5

         A.      **ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS** ...............................................................5
         B.      **EXTENDED REPORTING PERIOD** ..............................................6

V.      **GENERAL CONDITIONS AND LIMITATIONS** ...................................................7

         A.      **LIMITS OF LIABILTIY** ..................................................................7
         B.      **RETENTION** .................................................................................8
         C.      **DEFENSE, SETTLEMENT AND COOPERATION** ..........................9
         D.      **ALLOCATION** .............................................................................10
         E.      **PRIORITY OF PAYMENTS** .........................................................10
         F.      **REPORTING AND NOTICE** ........................................................10
         G.      **INTERRELATED CLAIMS** ..........................................................11
         H.      **ORGANIZATIONAL CHANGES** ..................................................12
         I.      **OTHER INSURANCE** ..................................................................12
         J.      **TERMINATION, CANCELLATION AND NONRENEWAL** ...............13
         K.      **SUBROGATION** ..........................................................................14
         L.      **BANKRUPTCY** ...........................................................................14

M.   **ALTERATION AND HEADINGS** ..............................................................15
N.   **TERRITORY AND VALUATION**..............................................................15
O.   **AUTHORIZATION CLAUSE**....................................................................15
P.   **ASSIGNMENT** ............................................................................................15
Q.   **REPRESENTATIONS** ..................................................................................15

## Notice of Insurance Information Practices

Argo Group US, Inc., and each of its subsidiaries ("Argo Group") recognizes the importance of maintaining the privacy of our customers and their personal information. We take seriously the responsibility that accompanies our collection and use of your personal information. Argo Group protects the privacy and security of our customers and their personal information as required by applicable privacy and security laws.

This Notice of Insurance Information Practices ("Insurance Privacy Notice") provides notice of our information practices to all applicants, policyholders, and where applicable claimants, in connection with our insurance transactions. It supplements the privacy and security provisions contained in Argo Group's Global Privacy Notice (which is located at *www.argolimited.com/privacy-policy*).

This Insurance Privacy Notice applies to all companies and business produced or underwritten within Argo Group, and complies with the requirements of the Gramm-Leach-Bliley Act (GLBA), and any federal and state privacy and security laws and regulations applicable to insurance transactions. You are receiving this Insurance Privacy Notice with respect to your relationship with Argo Group* and one or more of the subsidiaries listed below.

### Information Collection and Use

To conveniently and effectively provide and service the insurance products we sell, we may collect and use your personal information, including information that may be considered nonpublic personal information, under applicable privacy and security laws. This personal information may include identifiers, financial and insurance underwriting information, financial and account information, and information considered protected classifications under applicable privacy and security laws. More information on the specific personal information we may collect and how we might use it is available in our Global Privacy Notice referenced above.

### Information Sharing and Disclosure

Applicable laws impose certain obligations upon third parties and organizations with which we share personal information. Accordingly, we prohibit the unauthorized disclosure of personal information, except as legally required or permitted.

Argo Group does not rent, sell or share your personal information with nonaffiliated third parties except that Argo Group may share personal information with nonaffiliated third parties to the extent necessary in furtherance of the applicable insurance transaction, including third party contractors. These third parties are prohibited from using the information for purposes other than performing services for Argo Group. Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or act regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees. In certain instances, you may share your information with a third party directly and that information may be subject to that party's applicable security and privacy policies.

Finally, Argo Group may transfer your personal information to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

### Security

We implement technical and organizational security measures designed to secure and protect personal information. Please note, however, we cannot fully eliminate security risks associated with the storage and transmission of personal information.

To protect the confidentiality and integrity of your personal information, we limit access to personal information by only allowing authorized personnel to have access to such information. We maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records. Documents that contain an individual's personal information are appropriately destroyed or deleted before disposal; Argo Group maintains security measures to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting

facility. Administrative access is limited to authorized employees including specific remote administration protocols and IP addresses. All employees with access to personal information have been advised of Argo Group's security policies and practices and receive regular training regarding these policies and practices.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of your nonpublic personal information is expected and required to immediately report such behavior to Argo Group's Data Protection Officer.

**Contact Us**

If you have any questions about this Insurance Privacy Notice, our Global Privacy Notice, or our privacy and security practices, please contact:

> Data Protection Officer
> privacy@argogroupus.com
> Argo Group International Holdings Ltd.
> P.O. Box 469011
> San Antonio, TX 78246
> 800-470-7958

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; ARIS Title Insurance Corporation; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company; Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; and Argonaut Management Services, Inc.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019; AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

PLEASE ALSO BE AWARE THAT YOUR POLICY DOES NOT PROVIDE COVERAGE FOR ACTS OF TERRORISM THAT ARE NOT CERTIFIED BY THE SECRETARY OF THE TREASURY.

### Acceptance or Rejection of Terrorism Insurance Coverage

You must accept or reject this insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*, before the effective date of this policy.  Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

[x] **Coverage acceptance:**

I hereby elect to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act* for a prospective premium of $  Included            .  I understand that I will not have coverage for losses resulting from any non-certified acts of terrorism.

OR

[ ] **Coverage rejection:**

I hereby decline to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act*. I understand that I will not have coverage for any losses arising from either certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | Argonaut Insurance Company |
| **Policyholder/Applicant's Signature-** **Must be person authorized to sign for all Insureds.** | **Insurance Company** |
| On File | ML4263632-0 |
| **Print Name** | **Policy Number** |
| | On File |
| | **Submission Number** |
| Salvo Technologies, Inc | |
| **Named Insured** | **Producer Number** |
| On File | R-T Specialty, LLC |
| **Date** | **Producer Name** |
| | 5565 Glenridge Connector, Suite 550 |
| | **Street Address** |
| | Atlanta, GA 30342 |
| | **City, State, Zip** |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us.  Please discuss this Disclosure with your agent before signing.**

TRIA Notice A-0115                                                                                   Page 1 of 1

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004



**FRAUD STATEMENTS**

---

**FRAUD STATEMENT**
**(Not applicable in the states mentioned below where a specific warning applies.)**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act, and may be subject to a civil penalty or fine.

**Alabama**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.

**Arkansas, District of Columbia, Louisiana, Rhode Island, West Virginia**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Colorado**

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company.  Penalties may include imprisonment, fines, denial of insurance and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Florida**

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Kansas**

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

**Kentucky**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties may include imprisonment, fines or denial of insurance benefits.

**Maryland**

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**New Jersey, New Mexico**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**Ohio**

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oklahoma**

WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon**

Any person who knowingly and with intent to defraud or solicit another to defraud the insurer by submitting an application containing a false statement as to any material fact may be violating state law.

**Pennsylvania**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Pennsylvania (Auto)**

Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000.

**Tennessee, Virginia, Washington**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

**New York**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**New York (Auto)**

Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

## SIGNATURES

**DO NOT SIGN UNTIL YOU HAVE READ THE CONTENTS OF THIS APPLICATION AND THE APPLICABLE FRAUD WARNING(S).**

I have reviewed the contents of this application and with my signature, I declare to the best of my knowledge that all statements herein are true and no material facts have been suppressed or misstated.  I am also aware that my operation may be inspected by the Insurance Company.

| APPLICANT/NAMED INSURED | |
|---|---|
| APPLICANT/NAMED INSURED SIGNATURE | DATE |

**Agent/Broker:**

Are you personally familiar with this Applicant's operations?  ☐ Yes  ☐ No
Did your office control this risk in the past year?  ☐ Yes  ☐ No

| AGENT'S OR BROKER'S NAME AND ADDRESS | TELEPHONE NUMBER | LICENSE NO. |
|---|---|---|
| AGENT'S OR BROKER'S SIGNATURE | | DATE |

# SIGNATURE PAGE

IN WITNESS WHEREOF, the company issuing this policy has caused this policy to be signed by its President and its Secretary and countersigned (if required) on the Declarations page by a duly authorized representative of the company. This endorsement is executed by the company stated in the Declarations.

Argonaut Insurance Company

**President**                    **Secretary**

# IMPORTANT INFORMATION FOR POLICYHOLDERS - CLAIMS-MADE NOTICE

THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS.

This means that only claims actually made and reported DURING the policy period are covered unless coverage for an extended reporting period is purchased. If an extended reporting period is NOT made available to you, you risk having gaps in coverage when switching from one company to another. Moreover, even if such a reporting period is made available to you, you may still be personally liable for claims reported after the period expires.

Claims-made policies do NOT provide coverage for loss, injury or damage, as defined by the policy, that occur before a fixed retroactive date.

I / We hereby acknowledge the differences in a claims-made policy, and agree to purchase claims-made coverage.

_____          _____

INSURED'S SIGNATURE                       DATE

_____          _____

AGENT'S SIGNATURE                         DATE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

All Coverage Parts included in this policy are subject to the following condition.

Throughout this endorsement, the term **Named Insured** refers to the **Policyholder**, **Named Entity** or **Named Insured** shown in Item 1. of the Declarations.

Any Cancellation, Nonrenewal or similar provision(s) of this policy is/are deleted and replaced with the language below. If no such provisions exist, the language below is added:

A.  Cancellation

   1.  The first **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to the **Insurer** advance written notice of cancellation.

   2.  Cancellation of policies in effect:

      a.  for 90 days or less

         If this policy has been in effect for 90 days or less, the **Insurer** may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation, accompanied by the reasons for cancellation, at least:

         (1) 10 days before the effective date of cancellation if the **Insurer** cancels for nonpayment of premium; or

         (2) 20 days before the effective date of cancellation if the **Insurer** cancels for any other reason, except the **Insurer** may cancel immediately if there has been:

            (a) a material misstatement or misrepresentation; or

            (b) a failure to comply with the underwriting requirements established by the **Insurer**.

      b.  for more than 90 days

         If this policy has been in effect for more than 90 days, the **Insurer** may cancel this policy only for one or more of the following reasons:

         (1) nonpayment of premium;

         (2) the policy was obtained by a material misstatement;

         (3) failure to comply with underwriting requirements established by the **Insurer** within 90 days of the effective date of coverage;

         (4) a substantial change in the risk covered by the policy; or

         (5) the cancellation is for all **Insureds** under such policies for a given class.

         If the **Insurer** cancels this policy for any of these reasons, the **Insurer** will mail or deliver to the first **Named Insured** written notice of cancellation, accompanied by the reasons for cancellation, at least:

            (a) 10 days before the effective date of cancellation if the **Insurer** cancels for nonpayment of premium; or

            (b) 45 days before the effective date of cancellation if the **Insurer** cancels for any of the other reasons stated in paragraph 2.b.

3. The **Insurer** will mail or deliver the **Insurer's** notice to the first **Named Insured** at the last mailing address known to the **Insurer**.

4. Notice of cancellation will state the effective date of cancellation.  The **Policy Period** will end on that date.

5. If this policy is cancelled, the **Insurer** will send the first **Named Insured** any premium refund due.  If the **Insurer** cancels, the refund will be pro rata.  If the first **Named Insured** cancels, the refund may be less than pro rata.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to the **Insurer**, the **Insurer** will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to the **Insured's** full cooperation with the **Insurer** or the **Insurer's** agent in securing the necessary data for audit, the **Insurer** will return any premium refund due within 90 days of the date cancellation takes effect. If the **Insurer's** audit is not completed within this time limitation, then the **Insurer** will accept the **Insured's** own audit, and any premium refund due will be mailed within 10 working days of receipt of the **Insured's** audit.

   The cancellation will be effective even if the **Insurer** has not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B.  Nonrenewal

1. If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the first **Named Insured** written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first **Named Insured** at the last mailing address known to the **Insurer**. If notice is mailed, proof of mailing will be sufficient proof of notice.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# POLICYHOLDER NOTICE – DEFENSE WITHIN LIMITS

I hereby acknowledge that I understand that this policy is written on a defense within limits basis.  The limits of liability may be reduced or completely exhausted by payments for defense costs as defined in the policy.

Policy No.    ML4263632-0

Policy Inception Date    April 25, 2022

_____    Date    _____
Insured or Insured's Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided by this policy

A. Section **II. DEFINITIONS** E. **Domestic Partner** of the **General Terms and Conditions Part** is deleted in its entirety.

B.  Section **II. DEFINITIONS** P. **Pollutants** of the **General Terms and Conditions Part** is deleted and replaced by the following:

   P.  **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed.

C.  Section **IV. EXTENSIONS OF COVERAGE** A. **ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS** of the **General Terms and Conditions Part** is deleted and replaced by the following:

   A.  **ESTATES, LEGAL REPRESENTATIVES AND SPOUSES**

   The estates, heirs, legal representatives, assigns and spouses of **Insured Person(s)**  shall be considered an **Insured Person(s)** under this Policy but only for a **Claim** arising  solely out of their status as such and, in the case of a spouse, where such **Claim** seeks  damages from marital community property, jointly held  property or property transferred  from the Insured Person(s) to the spouse.  No coverage is provided for any wrongful act  or  omission of an estate, heir, legal representative, assign or spouse. All terms of this  Policy applicable to **Loss** incurred by the **Insured Person(s)** shall also apply to **Loss**  incurred by such estates, heirs, legal representatives, assigns and spouses.

D.  The last sentence of Section **V. GENERAL CONDITIONS AND LIMITATIONS** F. **REPORTING AND NOTICE** of the **General Terms and Conditions Part** is deleted in its entirety.

E.  In the event the Insured needs to contact someone about this Policy for any reason or to obtain infor-mation about coverage or receive assistance in resolving complaints, the Insurer may be contacted at the Home Office address listed in the Policy's Declarations or at the following telephone number: 1-800-470-7958.

F.  The definition of **Loss** in Section **II. DEFINITIONS** under all of the **Coverage Parts** is amended by the addition of the following:

   Notwithstanding anything stated to the contrary in this Policy, punitive damages are not insurable in Florida.

The following applies only to the **Fiduciary Liability Coverage Part:**

G.  Section **I. INSURING AGREEMENTS** B. **VOLUNTARY COMPLIANCE LOSS COVERAGE** is deleted in its entirety.

H.  Section **II. DEFINITIONS** D. **Claim** 7. is deleted in its entirety.

I.   Section **II. DEFINITIONS** F. **Defense Costs** is deleted in its entirety.

J.   The first paragraph of Section **II**. **DEFINITIONS** P. **Loss** is amended by deleting the words "; and **Vol-untary Compliance Loss** (if purchased)".

K.  Section **II. DEFINITIONS** P. **Loss** 1. is amended by deleting the words "civil fines or penalties consti-tuting **Voluntary Compliance Loss**,".

M. Section **II. DEFINITIONS** T. **Plan** 4. is amended by deleting the words "or **Voluntary Compliance Loss** incurred by an **Insured**".

N. Section **II. DEFINITIONS** U. **Voluntary Compliance Loss** is deleted in its entirety.

O. Section **II. DEFINITIONS** V. **Wrongful Act** 6. is deleted in its entirety.

P. Section **V. GENERAL CONDITIONS AND LIMITATIONS** A. **LIMITS OF LIABILITY** 1. is deleted in its entirety.

Q. Section **V. GENERAL CONDITIONS AND LIMITATIONS** A. **LIMITS OF LIABILITY** 2. is amended by replacing the words "Item 4.D.3." with the words "Item 4.D.2.".

R. The second paragraph of Section **V. GENERAL CONDITIONS AND LIMITATIONS** C. **DEFENSE, SETTLEMENT AND COOPERATION** is deleted and replaced by the following:

The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim**.  The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall not undertake to negotiate to settle, offer to settle, or settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld.  Any **Defense Costs** incurred or settlements made without the **Insurer's** prior written consent shall not be covered under this **Coverage Part**.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | |
|---|---|---|---|
| Endorsement Effective | April 25, 2022 | Policy No. ML4263632-0 | Endorsement No. 1 |
| Insured | Salvo Technologies, Inc | | Premium |
| Insurance Company | Argonaut Insurance Company | Authorized Signature | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LIQUIDATED DAMAGES EXCLUSION ENDORSEMENT

---

This Endorsement modifies the coverage provided under the following insurance policy:

**Private PROtect: General Terms and Conditions Part, Private Company Directors & Officers Liability Coverage Part, Employment Practices Liability Coverage Part, Fiduciary Liability Coverage Part**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Section **III. GENERAL EXCLUSIONS** of the General Terms and Conditions Part is amended to add the following exclusion:

> Under all **Coverage Parts** purchased, and in addition to any Exclusions included in such **Coverage Parts**, the **Insurer** shall not be liable for that portion of **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of, or attributable to liquidated damages, provided this exclusion shall not apply to liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act that are otherwise covered under the **Employment Practices Liability Coverage Part**.

All other terms and conditions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective  ___April 25, 2022___  Policy No.  ___ML4263632-0___  Endorsement No.  ___2___

Insured  ___Salvo Technologies, Inc___  Premium  _____

Insurance Company  ___Argonaut Insurance Company___  Authorized Signature  _____

PPRO-4032-0719

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Private PROtect: General Terms and Conditions Part, Directors & Officers Liability Coverage Part, Employment Practices Liability Coverage Part, Fiduciary Liability Coverage Part**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph B. **RETENTION** of the General Terms and Conditions Part is amended as follows:

I.      Subsection 1. is amended to add the following final sentence to the paragraph:

The Retention amount shall be borne by the **Insureds** uninsured and at their own risk.

II.     Subsection 5. is deleted and replaced with the following:

5.      For the **Directors & Officers Liability Coverage Part** only, no Retention shall apply to an **Insured Person** for **Loss** incurred by such **Insured Person** when the **Company** is prohibited from indemnifying such **Insured Person** either: (i) under applicable bylaws, statutory, law or common law; or (ii) by reason of **Financial Insolvency**. The **Company** agrees to indemnify the **Insured Persons** to the fullest extent permitted by law. To the extent the **Company** fails to pay a Retention because of **Financial Insolvency**, the **Insurer** shall have the right to claim such unpaid Retention amount as a debt in any **Financial Insolvency** proceeding.

III.    The following subsections are added:

6.      For all purchased **Coverage Parts**, if for any reason, other than the ones described in Subsection 5. above for the **Directors & Officers Liability Coverage Part**, the **Insureds** fail to pay all or part of a Retention applicable to the **Loss** of an **Insured Person**, then the **Insurer** may, in its sole discretion, advance the **Loss** of such **Insured Person**. The **Insurer** shall have an immediate contractual right of reimbursement from the **Company** for any **Loss** advanced under this Subsection.

7.      Any amounts of **Loss** advanced by the **Insurer** under Subsection 5. or 6. above shall apply towards exhaustion of the applicable Limit of Liability. Any amount of such advanced **Loss** which is reimbursed by the **Company** to the **Insurer** shall be added back into the Limit of Liability.

8.      Subsections 5. and 6. only concern the Retention obligations for **Loss** of an **Insured Person**, nothing in these Subsections shall apply to the Retention

obligations for **Loss** of a **Company**.

All other terms and conditions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   April 25, 2022          Policy No.      ML4263632-0      Endorsement No.        3

Insured      Salvo Technologies, Inc                                   Premium

Insurance Company      Argonaut Insurance Company      Authorized Signature

Page **2** of **2**

PPRO-4204-0420

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CRISIS MANAGEMENT COVERAGE ENDORSEMENT

This Endorsement modifies the coverage provided under the following insurance policy:

**Private PROtect:  General Terms and Conditions Part and Directors & Officers Liability Coverage Part**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that, solely for the purposes of the coverage provided by this Endorsement, the Policy is amended as follows:

I.      The **Directors and Officers Liability Coverage Part** is amended as follows:

    A.      Section **I. INSURING AGREEMENTS** is amended to include the following additional Insuring Agreement:

        **CRISIS MANAGEMENT COVERAGE**

        Subject to the limit of liability set forth in Section II. of this Endorsement, the **Insurer** shall pay the **Crisis Management Loss** of the **Company** arising from a **Crisis Management Event** first occurring during the **Policy Period**.

    B.      Section **II. DEFINITIONS**, Definition H. **Loss** is amended to add the following:

        **Loss** also includes **Crisis Management Loss**.

    C.      The exclusions set forth in Section **III. EXCLUSIONS** shall not apply to **Crisis Management Loss**.

II.     The General Terms and Conditions Part is amended as follows:

    A.      Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph **A. LIMITS OF LIABILITY** is amended to include the following additional subparagraph:

        The limit of the **Insurer's** liability for **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period**, in the aggregate, shall be the amount set forth in Section III. of this Endorsement as the **Crisis Management Fund**. This limit shall be the maximum limit of the **Insurer** under this policy, regardless of the number of **Crisis Management Events** occurring during the **Policy Period** and shall be in part of and not in addition to the Limit of Liability stated in Item 4.B of the Declarations.

    B.      Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph **B. RETENTION** is amended to include the following additional subparagraph:

        A retention amount of $2,500 shall be applicable to **Crisis Management Loss** and the **Insurer** shall pay such **Crisis Management Loss** excess of such Retention amount subject to the other terms and conditions of this Endorsement and the Policy.

    C.      Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph **C. DEFENSE, SETTLEMENT AND COOPERATION** is amended to include the following additional subparagraph:

PPRO-4048-0919

The **Company** shall not be required to obtain the prior written approval of the **Insurer** before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by the **Company** to perform the **Crisis Management Services** has been pre-approved by the **Insurer**.

D.     Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph **F. REPORTING AND NOTICE** is amended to include the following additional subparagraph:

An actual or anticipated **Crisis Management Event** shall be reported to the **Insurer** as soon as practicable but in no event later than thirty (30) days after the **Company** first incurs **Crisis Management Loss** for which coverage will be requested under this Endorsement.

III.   Solely with respect to the coverage provided by this Endorsement, Section **II. DEFINITIONS** of the General Terms and Conditions Part is amended to add the following definitions:

● **Material Effect** means the publication of unfavorable information regarding the **Company**, which can reasonable be considered to lessen public confidence in the competence of the **Company**. Such publication must occur in either:

a.     A daily newspaper of general circulation in the geographic area of the **Company**; or

b.     A radio or television news report on a facility received in the geographic area of the **Company**.

● **Crisis Management Event** means one of the following events which, in the good faith opinion of the **Company**, did, or is reasonably likely to, cause a **Material Effect**.

| | |
|---|---|
| Mass Tort: | The public announcement or accusation that a **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof. |
| Debt Default: | The public announcement that the **Company** has defaulted or intends to default on its debt or intends to engage in a debt restructuring. |
| Bankruptcy: | The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary. |
| Employee Layoffs or loss of key executive officer(s): | The public announcement of layoffs of **Employees** of the **Company**. The death or resignation of one or more key directors, trustees or officers of the **Named Insured**. |
| Regulatory Crisis: | The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against a **Company**. |

Page **2** of **4**

Provided, however, that the term **Crisis Management Event** shall not include any event relating to:

1.   any **Claim** which has been reported, or any circumstance of which notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time;

2.   any litigation, proceeding, or administrative action pending on or prior to [Insert Date];

3.   the actual, alleged or threatened discharge, dispersal release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; or the hazardous properties of nuclear materials.

For the purpose of this Endorsement, a **Crisis Management Event** shall first commence when the **Company** or any of its directors or executive officers shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of:

1.   the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists; or

2.   when the **Crisis Management Fund** has been exhausted.

●   **Crisis Management Firm** means any public relations firm hired by the **Company** subject to the **Insurer's** consent, provided always such consent shall not be unreasonably withheld, to perform **Crisis Management Services**.

●   **Crisis Management Fund** shall mean:  $25,000.

●   **Crisis Management Loss** shall mean the  following  amounts  incurred  during the pendency of or within ninety (90) days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an **Insured** arising from the **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

1.   amounts  for  which  the  **Company**  is  legally  liable  for  the  reasonable  and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Company** arising from a **Crisis Management Event**; and

2.   amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Company** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

●   **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Company** or any of its directors, officers or **Employees** on minimizing potential harm to the **Company** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Company**.

All other terms and conditions remain unchanged.

PPRO-4048-0919

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ___April 25, 2022___ Policy No. ___ML4263632-0___ Endorsement No. ___4___

Insured ___Salvo Technologies, Inc___ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

PPRO-4048-0919

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RUN-OFF ENDORSEMENT

This Endorsement modifies the coverage provided under the following insurance policy:

**Private PROtect: General Terms and Conditions, Directors & Officers Liability Coverage Pat, Employment Practices Liability Coverage Part, Fiduciary Liability Coverage Part**

In consideration of an additional premium of $0 it is hereby understood and agreed that solely with respect to the following Directors & Officers Liability & Fiduciary **Coverage Part(s)**, the Policy is amended as follows:

I.      Item 2. of the Declarations is deleted and replaced with the following:

Item 2. **Policy Period**: From: 12:01 a.m. on April 25, 2022 To: 12:01 a.m. on April 25, 2028 Local time at the address shown in Item 1.

II.     Item 7. of the Declarations is deleted.

III.    Section **II. DEFINITIONS** of the General Terms and Conditions Part is amended to add the following definitions:

**Run-Off Date** means: April 25, 2022 and 12:01 a.m.

IV.     Section **IV. EXTENSIONS OF COVERAGE**, Paragraph B. **EXTENDED REPORTING PERIOD** is deleted and all other references to Extended Reporting Period are deleted.  The **Insurer** will not be required to renew this policy upon its expiration.

V.      Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph J. **TERMINATION, CANCELLATION AND NONRENEWAL** subparagraph 1. Cancellation is amended to add the following:

Notwithstanding anything to the contrary in this Subparagraph, this policy may not be terminated by the **Policyholder** for any reason after the **Run-Off Date**.  The entire premium will be deemed fully earned as of the **Run-Off Date**.

VI.     Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph H. **ORGANIZATIONAL CHANGES** is deleted.

VII.    No coverage will be available under this policy for **Loss** in connection with any **Claim** based upon, arising from, or in consequence of any fact, circumstance, or **Wrongful Act** committed, attempted, or allegedly committed or attempted on or after the **Run-Off Date**.

PPRO-4122-0220

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

All other terms and conditions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   April 25, 2022         Policy No.      ML4263632-0      Endorsement No.       5

Insured     Salvo Technologies, Inc                                                    Premium

Insurance Company      Argonaut Insurance Company       Authorized Signature

PPRO-4122-0220

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# STATE AMENDATORY INCONSISTENCY

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

In consideration of the payment of the premium, it is hereby understood and agreed that in the event there is an inconsistency between a state amendatory endorsement applicable to this Policy or any **Coverage Part** and any term or condition of this Policy or of any such **Coverage Part**, then where permitted by applicable law, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the Policy or any such **Coverage Part** that are more favorable to the **Insured**.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   April 25, 2022          Policy No.      ML4263632-0     Endorsement No.        6

Insured     Salvo Technologies, Inc                                          Premium

Insurance Company     Argonaut Insurance Company          Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ANTITRUST CLAIM COVERAGE SUBJECT TO A SUB-LIMIT AND COINSURANCE PERCENTAGE ENDORSEMENT

---

This Endorsement modifies the coverage provided under the following insurance policy:

**Private PROtect: Private Company Directors & Officers Liability Coverage Part**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Declarations and the Policy are amended as follows:

I.  Item 4.B. of the Declarations is amended to include the following:

Aggregate Sub-Limit of Liability for all **Loss** from all **Antitrust Claims**:  $1,000,000

II.  Item 5.A. of the Declarations is amended to add the following:

Each **Antitrust Claim** under **INSURING AGREEMENTS** B. and C.:  $50,000

III.  Section **II. DEFINITIONS** of the Directors & Officers Liability **Coverage Part** is amended as follows:

A.  Definition N. **Wrongful Act** is amended as follows:

**Wrongful Act** also includes any **Antitrust Wrongful Act**.

B.  The following definitions are added:

**Antitrust Claim** means any **Claim** based upon, arising out of, or attributable to any **Antitrust Wrongful Act**.

**Antitrust Wrongful Act** means any actual or alleged price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition or unfair business or trade practice or any interference in another's contractual or business relationship by an **Insured Person** while acting in his or her capacity as such and on behalf of the **Company** or with respect to **INSURING AGREEMENT** C, by the **Company**.

**Antitrust Wrongful Act** shall also include any actual or alleged violation of: the Federal Trade Commission Act; the Sherman Act; the Clayton Act; or any amendments to any of the foregoing or any regulations promulgated pursuant to any of the foregoing; any statutory or common law definition of unfair competition, or unfair business or trade practice; or any provision of any federal, state, local or foreign statute regulation or common law relating to any of the foregoing; by an **Insured Person** while acting in his or her capacity as such and on behalf of the **Company** or with respect to **INSURING AGREEMENT** C, by the **Company**.

IV.  Solely with respect to the coverage provided by this Endorsement, Section **III. EXCLUSIONS**, Exclusion M. of the Directors & Officers Liability **Coverage Part** is deleted.

V.  Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph A. **LIMITS OF LIABILITY** of the General Terms and Conditions Part is amended to add the following:

PPRO-4027-0819

The Aggregate Sub-Limit of Liability for all **Loss** from all **Antitrust Claims** set forth in Section I. of this Endorsement is the **Insurer's** maximum aggregate Limit of Liability for all **Antitrust Claims** first made during the **Policy Period** or **Extended Reporting Period**, if exercised.  This Sub-Limit shall be part of and not in addition to, the maximum aggregate Limit of Liability applicable to the Directors & Officers Liability **Coverage Part**.

VI.    Section **V. GENERAL CONDITIONS AND LIMITATIONS**, Paragraph B. **RETENTION** of the General Terms and Conditions Part is amended to add the following:

Notwithstanding anything in the Policy to the contrary, the Retention amount applicable to each **Antitrust Claim** is set forth in Section II. of this Endorsement.

VII.   Notwithstanding any other provision in this Policy, the **Insurer's** liability for all **Loss** in connection with any **Antitrust Claim** shall be subject to a <u>zero</u> percent (0%) coinsurance obligation to be paid by the **Insured**.

VIII.  Solely with respect to any **Antitrust Claim**, Item 11.A. Pending or Prior Date of the Declarations is deleted and replaced with the date specified for such entity on the Schedule, below.  If no date is specified, the Pending or Prior Date for such entity shall be the date set forth in Item 11.A. on the Declarations.

**Schedule**

| Entity | Pending or Prior Date |
|---|---|
| N/A | N/A |
|  |  |
|  |  |
|  |  |

All other terms and conditions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   April 25, 2022          Policy No.        ML4263632-0        Endorsement No.          7

Insured     Salvo Technologies, Inc                                                    Premium

Insurance Company      Argonaut Insurance Company          Authorized Signature

Page **2** of 2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FIDUCIARY LIABILITY COVERAGE PART: SUB-LIMIT FOR CERTAIN CIVIL PENALTIES

This endorsement modifies insurance provided under the following:

FIDUCIARY LIABILITY COVERAGE PART

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Section **II. DEFINITIONS** of the **Fiduciary Liability Coverage Part** of this Policy is amended as follows:

I.      Subsection P. is amended to include the following:

Notwithstanding any provision in this Subsection, **Loss** shall also include **Pension Protection Act Penalties**, **Section 4975 Penalties**, **Section 502(c) Penalties** and **Health Care Reform Act Penalties.**

II.     Section **II. DEFINITIONS** is further amended to include the following additional definitions:

**Pension Protection Act Penalties** means the civil penalties imposed upon an **Insured** for inadvertent violations of the Pension Protection Act of 2006, subject to a sub-limit of $100,000, which shall be part of, and not in addition to, the Limit of Liability as indicated in Item 4.D. of the Declarations.

**Section 4975 Penalties** means the 15% or less civil penalties imposed upon an **Insured** for inadvertent violations under Section 4975 of the Internal Revenue Code of 1986, arising from or relating to a covered judgment, subject to a sub-limit of $100,000, which shall be part of, and not in addition to, the Limit of Liability as indicated in Item 4.D. of the Declarations.

**Section 502(c) Penalties** means the civil penalties imposed upon an **Insured** for inadvertent violations under Section 502(c) of **ERISA**, other than penalties under the Pension Protection Act, subject to a sub-limit of $100,000, which shall be part of, and not in addition to, the Limit of Liability as indicated in Item 4.D. of the Declarations.

**Health Care Reform Act Penalties** means the civil penalties imposed under rules and regulations (including interim final rules and regulations) provided by governmental agencies (including the U.S. Department of Health and Human Services, the U.S. Department of the Treasury, the U.S. Internal Revenue Service ("IRS"), and the Department of Labor, the Office of Consumer Information and Insurance Oversight, and the Employee Benefits Security Administration), for inadvertent violations by an **Insured** of the Patient Protection and Affordable Care Act ("PPACA") and the Health Care and Education Reconciliation Act of 2010, subject to a sub-limit of $100,000, which shall be part of, and not in addition to, the Limit of Liability as indicated in Item 4.D. of the Declarations.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ___April 25, 2022___ Policy No. ___ML4263632-0___ Endorsement No. ___8___

Insured ___Salvo Technologies, Inc___ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____