COMPLAINT

# EXHIBIT 10

*Salvo Technologies, Inc. v.*
*Landmark American Insurance Company and Argonaut Insurance Company*
U.S. District Court, Middle District of Florida, Tampa Division

# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

Brian W. Barnes
(202) 220-9623
bbarnes@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

(202) 220-9600
Fax (202) 220-9601

January 17, 2023

**VIA EMAIL**
Neal Desai
Argo Pro Claims
413 W. 14th Street, 3rd Floor
New York, NY 10014

   Re: **Salvo Technologies Inc. Coverage Denial Letters (Policy No. ML4263632-0 (Claim 305939 –** ***The People of the State of New York by Letitia James v. Arm or Ally, LLC* & *The City of New York v. Arm or Ally, LLC*)**)

Dear Mr. Desai:

  Please accept this letter as a formal response on behalf of Salvo Technologies Inc. ("Salvo") to your letters of August 22, 2022 ("First Denial Letter") and November 10, 2022 ("Second Denial Letter") (collectively "Letters"). By way of background, the Letters were sent in response to Salvo's notices of claims under its Florida Private PROtect Policy No. ML4263632-0 (the "Policy") in *The People of the State of New York v. Arm or Ally*,  No. 1:22-cv-06124 (JMF) (S.D.N.Y) (the "State Complaint") and Complaint for Injunctive Relief, *The City of New York v. Arm or Ally, LLC*, 1:22-cv-05525 (JMF) (S.D.N.Y.) (the "City Complaint") (collectively "New York Litigation"). The purpose of this response is to outline errors of law and fact in the Letters and to provide Argonaut Insurance Company ("Argo") an opportunity to amend its coverage position in the hope that litigation over these issues can be avoided.

  As a preliminary matter, Salvo contests Argo's complete denial of coverage to the extent that the Letters deem all coverage under the Policy unavailable, including Argo's contractual duty to defend Salvo in the New York Litigation. As outlined in Subsection C of the General Conditions and Limitations of the Policy, Argo "shall have the right and duty to defend any **Claim** . . . covered under any applicable **Coverage Part** under this Policy even if the allegations are false, fraudulent or groundless." *See* Policy, General Terms and Conditions Part, Section (V)(C)(1). Under Florida law,[1] the duty to defend is broad and all doubts are resolved against the

---

[1] Where the Policy was signed by Salvo in Florida, but performance is required in New York, and the insurance contract does not include a choice of law or venue provision, it is necessary to determine which state's law applies. Based on choice of law rules in New York and Florisa, the law of Florida would govern here. In Florida, courts use *lex loci contractus* to determine the choice of law in diversity cases litigating contracts. *See Sturiano v. Brooks*, 523

1

insurer in favor of the insured. *Psychiatric Assocs. V. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134, 137 (Fla. Dist. Ct. App. 1994). Simply put, "[i]f the complaint alleges facts that create *potential* coverage under the policy, an insurer must defend the lawsuit." *SM Brickell Ltd. P'ship v. St. Paul Fire & Marine Ins. Co.*, 786 So. 2d 1204, 1206 (Fla. Dist. Ct. App. 2001) (emphasis added) (citing *Fun Spree Vacations, Inc. v. Orion Ins*. Co., 659 So. 2d 419, 421 (Fla. Dist. Ct. App. 1995)). Moreover, it is well-settled in Florida that an insurer cannot escape its duty to defend even if portions of a complaint fall outside the scope of coverage. *See Tropical Park, Inc. v. U.S. Fid. & Guar. Co*., 357 So. 2d 253, 256 (Fla. Dist. Ct. App. 1978) ("Where the complaint contains allegations partially within and partially outside the scope of coverage, the insurance carrier is required to defend the entire suit."). Should Argo refuse to meet its obligation to defend Salvo in the Lawsuits, that refusal will be a breach of the explicit terms of the Policy.

Separate from the duty to defend, Argo's finding that coverage is "wholly unavailable" in the New York Litigation was made in contravention of all available evidence. The Letters set forth three grounds for Argo's wholesale denial of coverage under Salvo's Private PROtect Directors & Officers Liability Coverage ("the D&O Policy"). First, the Letters assert that the D&O Policy's "professional services" exclusion bars coverage "[b]ecause the Complaint is based upon, arising out of or attributable to the **Insured's** rendering of professional services in manufacturing and distributing the alleged gun parts . . . . " *See* First Denial Letter at 3. Second, the Letters assert that the D&O Policy's "false advertising" exclusion bars coverage due to "the allegation regarding advertising on the Insured's website." *Id.* Third, the Second Denial Letter asserts that Section VII of Endorsement No. 5 bars coverage because "[b]oth the City Action and the State Action allege that a New York City Sheriff's office investigator made an undercover purchase of an 'unfinished' frame from 80P Builder on May 11, 2022." *See* Second Denial Letter at 2–3. This letter will respond to each of these grounds for denial in turn.

> *a.   The "professional services" exclusion is not applicable and does not bar coverage.*

The D&O Policy "professional services" exclusion is not applicable to the claims brought against Salvo in the State Complaint or City Complaint. This exclusion precludes coverage for "any **Loss** in connection with any **Claim** . . . based upon, arising out of or attributable to any **Insured's** actual or alleged rendering or failure to render professional services . . . ." Policy, Directors & Officers Liability Coverage Part, Section III(I–N). In denying coverage, the Letters assert that Salvo rendered "professional services" for "manufacturing and distributing the alleged gun parts." *See* First Denial Letter at 3; Second Denial Letter at 2. The letters do not, however, explain the basis upon which Argo contends that "manufacturing services" or "distribution services" are properly considered "professional services" under the Policy or that Salvo rendered such services.

---

So. 2d 1126, 1129 (Fla. 1988); *see also Serfozo v. Travelers Indem. Co*., 788 So. 2d 278 (Fla. Dist. Ct. App. 2000) (a policy is to be construed under the law of the state in which it was delivered). Here, that is Florida. In New York, while courts generally utilize a most significant relationship test for contract cases, in insurance matters where the risks of the policy spread nationwide, a court applies the law of the insured's domicile. *See analysis Fireman's Fund Ins. Co. v. Great Am. Ins. Co*., 10 F. Supp. 3d 460, 496 (S.D.N.Y. 2014), *aff'd sub nom. Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620 (2d Cir. 2016). Here too, that is Florida. Should litigation become required, Florida law will govern.

The Policy does not define the term "professional services," nor does it provide any examples of the types of services that fall within this excluded category. In such cases, courts interpreting Florida law have found that "professional services are those services performed by persons who belong to a learned profession or which require specialized skills, training, or experience." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F. Supp. 3d 1283, 1297 (S.D. Fla. 2015). The service must "aris[e] out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Laboss Transp. Servs., Inc. v. Glob. Liberty Ins. Co. of N.Y.*, 208 F. Supp. 3d 1268, 1276–77 (S.D. Fla. 2016) (cleaned up). Thus, "the term 'professional services' unambiguously refers to services unique to a specific profession." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 898 (11th Cir. 2009). Such services are "associated with a specialized knowledge and a mental or intellectual endeavor, **not production, manufacture or supply of goods and manufacturing**." *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 564 (3d Cir. 2001) (emphasis added); *see also* BARRY OSTRAGER & THOMAS NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 7.02(b)(6) (10th ed. 1999).

As Argo's first denial letter acknowledges, the New York Litigation alleges that Salvo engaged in misconduct through the manufacture and distribution of goods. Such activities fall outside the scope of any reasonable reading of the professional services exclusion. Argo's contrary position is inconsistent with the accepted meaning of the term "professional services" as interpreted by courts in Florida and elsewhere; the "production, manufacture or supply of goods" simply does not qualify as "professional services" under settled precedent. *Transportes Ferreos*, 239 F.3d at 564. What is more, Argo's unbounded understanding of the exclusion would render the insurance contract a nullity by making virtually everything Salvo does a "professional service." Construing the Policy in that way would be contrary to Florida law. *See Warwick Corp. v. Turetsky*, 227 So. 3d 621, 625 (Fla. Dist. Ct. App. 2017) ("an insurance policy cannot grant rights in one paragraph and then retract the very same right in another paragraph called an 'exclusion.' " (cleaned up)). For these reasons, Argo's interpretation of the professional services exclusion is unambiguously wrong, but it nevertheless bears emphasis that in litigation over this issue all ambiguities would be resolved in Salvo's favor. *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

Argo's assertion that the "professional services" exclusion serves as a wholesale bar to coverage under the policy is contrary to both fact and law. Salvo demands that Argo review its position and withdraw its wrongful denial of coverage and refusal to defend on this basis.

### b.   *The "false advertising" exclusion does not bar coverage.*

The D&O Policy "false advertising" exclusion also does not bar coverage for the claims brought against Salvo in the City Complaint or State Complaint. This exclusion precludes coverage for "any **Loss** in connection with any **Claim** . . . based upon, arising out of or attributable to any actual or alleged false advertising or misrepresentation in advertising, with respects to the advertising of the **Insured's** own goods, production, publications or services." Policy, Directors & Officers Liability Coverage Part, Section III(I–L).

3

First, the City Complaint includes two claims for relief: 1) A Violation of GBL § 898-b (a statutory public nuisance claim); and 2) Common Law Public Nuisance. *See* City Complaint at ¶¶ 94–113. A review of the City Complaint makes clear that neither of these claims is based on, arises out of, or is in any way attributable to any actual or alleged false statement or misrepresentation. The City Complaint never once uses the words "false," "advertising," "misrepresentation," or any derivation thereof. Moreover, the City Complaint does not identify a single statement, advertisement, or representation (truthful or otherwise) made by Salvo with respect to its products. In short, the City's claims do not arise out of *any* alleged false statements or misrepresentations. Accordingly, Argo's summary denial of coverage for the claims in the City case through application of the "false advertising" exclusion is meritless.

Second, the State Complaint includes eleven causes of action: 1) Repeated and Persistent Fraud or Illegality in Business in Violation of Executive Law § 63(12) (Selling and Shipping Unfinished Frames and Receivers); 2) Repeated and Persistent Fraud or Illegality in Business in Violation of Executive Law § 63(12) (Aiding and Abetting the Possession of Firearms by Convicted Persons); 3) Repeated and Persistent Fraud or Illegality in Business in Violation of Executive Law § 63(12) (Aiding and Abetting the Possession of Firearms by Unlicensed Persons); 4) Creation of a Public Nuisance by a Gun Industry Member; 5) Failure to Establish Reasonable Controls by a Gun Industry Member; and 6) Repeated and Persistent Fraudulent Conduct Pursuant to Executive Law § 63(12); 7) Repeated and Persistent Fraud or Illegality in Business in Violation of Executive Law § 63(12) (Deceptive Business Practices in Violation of GBL 349); 8) Repeated and Persistent Fraud or Illegality in Business in Violation of Executive Law § 63(12) (False Advertising in Violation of GBL 350); 9) Deceptive Business Practice (General Business Law 349); 10) False Advertising Deceptive Business Practice (General Business Law 350); 11) Repeated and Persistent Fraudulent Conduct Pursuant to Executive Law § 63(12) (Aiding and Abetting the Possession of Unserialized Firearms). *See* State Complaint at ¶¶ 465–538. A review of the State Complaint shows that five of the eleven causes of action are arguably "based on, arising out of or attributable to any . . . alleged false advertising or misrepresentation, with respect to the advertising of the Insured's own goods . . . ." But even if liability for those particular claims falls outside the scope of the Policy, the same is not true for the six other causes of action. Since at least some of the claims brought by the State are plainly within the scope of the Policy, Argo cannot escape its duty to defend in that case. *See Tropical Park, Inc.*, 357 So. 2d at 256.

  c. *The Run-Off Endorsement does not bar coverage.*

The Second Denial Letter focuses on the Run-Off Endorsement as a basis to deny coverage. Section VII of that endorsement provides "[n]o coverage will be available under this policy for **Loss** in connection with any **Claim** based upon, arising from, or in consequence of any fact, circumstance, or **Wrongful Act** committed, attempted, or allegedly committed or attempted on or after the **Run-Off Date**." Policy, Run-Off Endorsement ("Endorsement No. 5"), Section VII. Further, Section III defines the "Run-Off Date" as April 25, 2022. *Id* at § III. The Second Denial Letter asserts that "[b]ecause the Lawsuits allege that 80P Builder committed a **Wrongful Act** after April 25, 2022, Endorsement No. 5 of the Policy operates to exclude coverage for the Lawsuits." Second Denial Letter at 3.

Salvo does not deny that the Lawsuits include a "wrongful act" on May 11, 2022, which post-dates the Run-Off Date as defined in Endorsement No. 5. The Lawsuits, however, are not

4

limited to acts that occurred solely after the Run-Off Date, but instead accuse Salvo of selling products to purchasers in New York prior to April 25, 2022 and seek damages for allegedly unlawful sales from before that date. It is a fundamental tenet of Florida insurance law that "if the complaint alleges covered and non-covered claims, the insurer's duty to defend is triggered and the insurer is obligated to defend the entire suit." *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.*, 344 F. Supp. 2d 1358, 1365 (M.D. Fla. 2004), *aff'd sub nom. Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.*, 171 F. App'x 831 (11th Cir. 2006). Moreover, "if the complaint, fairly read, contains *any* allegations which could fall within the scope of coverage, the insurer is obliged to defend the entire action." *Psychiatric Assocs.*, 647 So. 2d at 137 (emphasis added). When it is not clear whether allegations in a complaint fall within a policy's coverage, "[a]ll doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured." *Grissom v. Com. Union Ins. Co.*, 610 So. 2d 1299, 1307 (Fla. Dist. Ct. App. 1992). Since the Lawsuits raise claims against Salvo for alleged unlawful activity pre-dating April 25, 2022, Argo's duty to defend is triggered. Argo cannot use a single non-covered event for a wholesale abandonment of its contractual obligations. *See IDC Constr., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1350 (S.D. Fla. 2004) ("Here, at least to the extent that it does not specify the exact date when the damages first occurred, the Underlying Complaint "alleges facts partially within and partially outside the coverage of the policy.").

## **CONCLUSION**

Argo's wholesale denial of coverage and refusal to defend in the New York Litigation is contrary to both law and fact. If Argo persists in its position, it will be in breach of its explicit obligations under the Policy and have committed a bad faith denial of coverage. As noted above, the purpose of this letter is to provide Argo an opportunity to change course so that litigation over these issues can be avoided. To that end, Salvo would welcome further engagement on these issues.

Sincerely,

Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601