COMPLAINT

# EXHIBIT 11

*Salvo Technologies, Inc. v.*
*Landmark American Insurance Company and Argonaut Insurance Company*
U.S. District Court, Middle District of Florida, Tampa Division



E. JOSEPH O'NEIL
[617] 951-4705
eoneil@peabodyarnold.com

February 7, 2023

<u>*Via Email (bbarnes@cooperkirk.com)*</u>

Brian W. Barnes, Esq.
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036

|         |              |                                                              |
|---------|--------------|--------------------------------------------------------------|
| **RE:** | *Insured:*   | *Salvo Technologies Inc.*                                    |
|         | *Matter:*    | *The People of the State of New York by Letitia James*       |
|         | *Insurer:*   | *Argonaut Insurance Company*                                 |
|         | *Claim No:*  | *305939*                                                     |
|         | *Policy No:* | *ML4263632-0*                                                |

Dear Mr. Barnes:

This letter responds to your letter of January 17, 2023, and supplements Argo's letters dated August 22, 2022 and November 10, 2022, which decline coverage for the Lawsuits[1]. Argonaut Insurance Company ("Argo") has retained my firm to assist in its coverage evaluation under Private PROtect Policy No. ML4263632-0 (the "Policy") issued to Salvo Technologies Inc. ("Salvo"). Argo has received and reviewed your letter dated January 17, 2023, as well as the amended complaint filed in the State Action (the "Amended Complaint"). Argo's prior coverage correspondence is adopted and incorporated herein to the extent that it is consistent with the coverage analysis below.

Your January 17th letter disputes Argo's coverage analysis set out in its letters of August 22, 2022 and November 10, 2022 and seeks immediate withdrawal of Argo's declination of coverage. Argo has reviewed carefully the arguments set out in your letter. For the reasons discussed below, Argo maintains its denial of coverage for the Lawsuits.

As an initial matter, Argo notes that the factual allegations are virtually identical to those asserted in the original State Action complaint. The Amended Complaint adds the following causes of action against all defendants: Repeated and Persistent Illegal Conduct Pursuant to Executive Law § 63(12) (Deceptive Business Practices in Violation of GBL 349); Repeated and Persistent Illegal Conduct Pursuant to Executive Law § 63(12) (False Advertising in Violation of GBL 350); Deceptive Business Practice (General Business Law 349); False Advertising Deceptive Business Practice (General Business Law 350); and Repeated and Persistent Fraud or Illegality in Business in Violation of Executive Law § 63(12) (Aiding and Abetting the Possession of Unserialized Firearms). The Amended Complaint also seeks the following additional relief: civil penalties pursuant to general Business Law § 350-d and

---

[1]*The People of the State of New York v. Arm or Ally LLC, et al*., Case No. 22-cv-6124, currently pending in the U.S. District Court for the Southern District of New York (the "State Action"); and *The City of New York v. Arm or Ally LLC, et al.*, Case No. 22-cv-5525, in the U.S. District Court for the Southern District of New York (the "City Action"). Argo understands that Salvo was dismissed with prejudice from the City Action on December 12, 2022.

**PEABODY & ARNOLD** LLP
Brian W. Barnes, Esq.
February 7, 2023
Page 2

statutory costs pursuant to CPLR § 8303(a)(6).  The Amended Complaint does not appear to implicate any additional terms, conditions, exclusions, or endorsements of the Policy.  The additional causes of action reinforce the State Action's allegations of false advertising or misrepresentation in advertising, and thus trigger Exclusion III.L of the D&O Coverage Part.  Accordingly, Argo adopts and incorporates the coverage analysis set forth in its August 22, 2022 and November 10, 2022 letters as fully applying to the Amended Complaint.  Argo also points out that the D&O Coverage Part's definition of Loss does not include criminal or civil fines or penalties.

Your letter argues that Florida law governs this coverage dispute.  At this time Argo does not dispute the application of Florida law but points out that your arguments in favor of coverage under the Policy are based on a misapplication of the relevant caselaw.  For instance, you assert that where the underlying complaint contains allegations partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit.  *Tropical Park, Inc. v. U.S. Fid. & Guar. Co.*, 357 So. 2d 253, 256 (Fla. Dist. Ct. App. 1978).  But if the pleadings show that there is no coverage or that a policy exclusion applies to bar coverage entirely, the insurer has no duty to defend.  *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,* 143 F. Supp. 3d 1283, 1294 (S.D. Fla. 2015).  As discussed in more detail below, Exclusions III.L [false advertising or misrepresentation in advertising] and III.N [professional services] of the Policy's D&O Coverage Part clearly apply to bar coverage entirely for the Lawsuits and as such, Argo has no duty to defend.  Further, the Run-Off Endorsement excludes Claims arising out of Wrongful Acts that occurred after the Run-Off Date.

Your letter argues that Exclusion III.N does not apply because the "production, manufacture or supply of goods" does not qualify as "professional services" under Florida law.  But Exclusion III.N is not triggered by 80P Builder's alleged production, manufacture, and sale of "unfinished" receivers and "ghost gun" components.  Instead, it is triggered by 80P Builder's alleged circumvention of the federal laws which regulate the sale of its products.  "When an insurance contract fails to explicitly define the term 'professional services,' Florida Courts have considered, among other things, whether the service involves specialized skill, requires specialized training, <u>is regulated</u>, requires a degree, and/or <u>whether there is an entity that certifies or accredits persons or that sets forth standards of practice for the performance of those services</u>."  *Goldberg*, 143 F. Supp. 3d at 1297.  (Emphasis added).  The manufacture, production, and sale of firearms is a specialized industry regulated by state and federal governments.  Firearms "must be sold through a Federal Firearms Licensee ("FFL"), a person or business that has gone through an extensive investigation, review, and licensing process overseen by the Department of Justice."  State Action Am Compl. ¶ 40.  80P Builder's failure to subject customers to background checks or to engrave serial numbers on its units violates its FFL and falls within the scope of 80P Builder's professional services.  *See Goldberg,* 143 F. Supp. 3d at 1300 (failure to perform certain regulatory functions in order to preserve accounts and to facilitate business constituted professional services for others); *David Lerner Assocs.,* 934 F.Supp.2d at 536 (E.D.N.Y.2013) (the failure to engage in due diligence in connection with the sale of financial products were quintessential actions and inactions falling within the definition of professional services such that exclusion barring coverage for performance or failure to perform professional services for others applied); and *Colony Ins. Co. v. Suncoast Med. Clinic, LLC,* 726 F.Supp.2d 1369, 1377 (M.D.Fla.2010) (implementing policies and procedures are an intricate part of professional services which can trigger a professional services

PEABODY & ARNOLD LLP
Brian W. Barnes, Esq.
February 7, 2023
Page 3

exclusion).  Exclusion III.N applies to bar coverage for the Lawsuits not because it deemed "virtually everything Salvo does a 'professional service'" but because the conduct alleged in the Lawsuits is clearly based upon, arises out of or is attributable to the Insured's alleged failure to do the specific tasks regulators expect of Federal Firearms Licensees.  As discussed below, Florida courts would agree.

In the context of an exclusionary clause, the Florida Supreme Court broadly interprets the phrase "arising out of" to mean originating from, having its origin in, growing out of, flowing from, incident to or having a connection with.  To have arisen out of something, there must be some causal connection, or relationship that is more than a mere coincidence, but proximate cause is not required.  *Goldberg*, 143 F. Supp. 3d at 1298 (internal quotations and citations omitted).  All of the exclusions cited in the Argo coverage position letters contain this broad "arising out of" language.

Argo notes that you segregate the Lawsuits' false advertising counts from the other causes of action to avoid the application of Exclusion III.L.  However, the exclusion is not limited in its application to Loss in connection with a Claim "for" false advertising or misrepresentation in advertising.  Instead, Exclusion III.L. precludes coverage for Loss in connection with any Claim "based upon, arising out of or attributable to any actual or alleged false advertising or misrepresentation in advertising, with respects to the advertising of the Insured's own goods, products, publications or services."  (Emphasis added).  The State Action alleges that 80P Builder misrepresented in its advertising that it was legal to sell and possess the unfinished receivers, unfinished frames, and ghost gun components it sold in the State of New York and/or the City of New York.  Therefore, the State Action is a Claim that is based upon, arises out of and is attributable false advertising or misrepresentation in advertising, and Exclusion III.L applies to bar coverage for it, especially because the Florida Supreme Court interprets "arising out of" broadly.  *Goldberg*, 143 F. Supp. 3d at 1298.

Similarly, in order to avoid the application of the Run-Off Endorsement, your letter separates the Lawsuits' pre-April 25, 2022, allegations from the post-April 25, 2022, allegations.  But the Run-off Exclusion is not limited in its application only to Loss in connection with a Claim "for" a Wrongful Act committed after April 25, 2022.  Instead, the exclusion precludes coverage for Loss in connection with any Claim "based upon, arising from, or in consequence of any fact, circumstance, or Wrongful Act committed, attempted, or allegedly committed or attempted on or after the Run-Off Date."  (Emphasis added).  The Lawsuits both allege that the Insured sold an "unfinished" gun to an undercover New York City Sheriff's office investigator on May 11, 2022, after the Run-off date.  Because the Claim is based upon, arises out of and in consequence of Wrongful Acts which occurred after April 25, 2022, coverage again precluded entirely, especially because of the broad interpretation of the phrase "arising out of" adopted by the Florida Supreme Court.  *Goldberg*, 143 F. Supp. 3d at 1298.

Your letter argues that none of the exclusions discussed above serve as a wholesale bar to coverage for the Lawsuits under the Policy.  Even assuming, *arguendo*, that Exclusion III.L only applies to bar coverage for Counts 6-10 of the State Action, Exclusion III.N and the Run-Off Endorsement would still operate to bar coverage for the rest of Counts in the Lawsuits.  Moreover, by your citation to *Warwick Corp. v. Turetsky*, you suggest that the coverage provided by the Policy is illusory.  But a policy is illusory only if there is an internal contradiction that completely negates the coverage it

PEABODY & ARNOLD LLP
Brian W. Barnes, Esq.
February 7, 2023
Page 4

expresses to provide. *Warwick Corp. v. Turetsky*, 227 So. 3d 621, 625 (Fla. Dist. Ct. App. 2017). Here, the Insuring Agreements of the D&O Coverage Part provide coverage to the Insured for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty. The limitations on coverage do not "completely swallow" the insuring provisions. *Id*. (citing *Auto–Owners Ins. Co. v. Christopher*, 749 So.2d 581, 582 (Fla. 5th DCA 2000)). In addition, the Policy explicitly withholds coverage for any Claim based upon, arising from, or in consequence of any fact, circumstance, or Wrongful Act committed, attempted, or allegedly committed or attempted on or after the April 25, 2022. Accordingly, the broad coverage grant does not negate the policy's exclusions or other limitations of coverage. Nor do these exclusions and limitations make the broad grant "illusory." The policy provides coverage, it just does not provide coverage for the Lawsuits.

Finally, we note that the Lawsuits' allegations may implicate other insurance. To the extent you have not already done so, we ask that you put any other potentially responsive insurers on notice of this matter.

Argo fully reserves all rights, remedies, and defenses under the Policy, at law, and/or in equity, whether or not stated herein. Nothing stated is intended to waive any rights, remedies, or defenses Argo may now have or come to acquire in the future. s Argo confirms that the Insured reserves its rights also.

If you have any questions about this letter or Argo's coverage analysis, please do not hesitate to contact me.

Sincerely,

E. Joseph O'Neil

cc:     Christopher Stahlmann, Argo Group (christopher.stahlmann@argogroupus.com)