COMPLAINT

# EXHIBIT 12

*Salvo Technologies, Inc. v.*
*Landmark American Insurance Company and Argonaut Insurance Company*
U.S. District Court, Middle District of Florida, Tampa Division



**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA  30326-1160

# PRIVATE COMPANY
# MANAGEMENT LIABILITY POLICY

**NOTICE:**  THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD**, OR EXTENDED REPORTING PERIOD (IF APPLICABLE) AND REPORTED IN ACCORDANCE WITH THIS POLICY'S REPORTING PROVISIONS.  THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF **DEFENSE EXPENSES**.

### PLEASE READ YOUR POLICY CAREFULLY

# CLAIM NOTICE

| | |
|---|---|
| **Mail notices to:** | **RSUI Group, Inc.**<br>**945 East Paces Ferry Rd.**<br>**Suite 1800**<br>**Atlanta, GA 30326-1160** |
| **Fax notices to:** | **(404) 231-3755**<br>**Attn: Claims Department** |
| **E-mail notices to:** | **reportclaims@rsui.com** |
| **RSUI's Panel Counsel Finder:** | **Panel Counsel Link** |

*A member of Alleghany Insurance Holdings LLC*

# FLORIDA - PRIVATE COMPANY COMMON POLICY DECLARATIONS

**RSUI**

Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| L | PP699354 | N/A |

●**THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.**●

THIS POLICY IS ISSUED BY:   Landmark American Insurance Company (hereinafter referred to as the Insurer)

**ITEM 1.**   INSURED ORGANIZATION'S NAME AND MAILING ADDRESS                    PRODUCER'S NAME AND ADDRESS

DBH TIDES SALVO HOLDCO, LLC
8060 BRYAN DAIRY ROAD
LARGO, FL 33777

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

FROM    4/25/2022    TO    4/25/2023    12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. COVERAGE SECTIONS APPLICABLE TO POLICY:**

| | **Purchased** | **Shared Limit** | **Separate Limit** |
|---|---|---|---|
| A.  Directors and Officers Liability Insurance | ☒ Yes ☐ No | ☐ | ☒ |
| B.  Employment Practices Liability Insurance | ☒ Yes ☐ No | ☐ | ☒ |
|    1)  Third Party Liability Coverage | ☒ Yes ☐ No | | |
| C.  Fiduciary Liability Insurance | ☒ Yes ☐ No | ☐ | ☒ |

**ITEM 4. LIMIT OF LIABILITY:**

$  3,000,000            Aggregate Limit of Liability for All **Coverage Sections**

**ITEM 5. PREMIUM:**

$  48,180.00            Total Policy Premium for All **Coverage Sections**

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE SCHEDULE OF ENDORSEMENTS – RSG 240041 0118

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

Countersigned: _____    June 16, 2022    _Kym Hadgsdl_
                                           DATE    AUTHORIZED REPRESENTATIVE

# PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER |
|---|---|
| L | PP699354 |

●THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:   Landmark American Insurance Company (hereinafter referred to as the Insurer)

**ITEM 1.**  INSURED ORGANIZATION'S NAME

DBH TIDES SALVO HOLDCO, LLC

## ITEM 2. LIMIT OF LIABILITY:

| | | |
|---|---|---|
| A.  Directors and Officers Limit of Liability | $ | 1,000,000 |
| B.  Additional Side-A Limit of Liability | $ | Not Applicable |
| C.  Investigative Costs Sublimit of Liability | $ | Not Applicable |

## ITEM 3. RETENTION:

A. Directors and Officers Liability Retentions

| | | |
|---|---|---|
| 1)  Insuring Agreement A | $ | 0 |
| 2)  Insuring Agreement B | $ | 50,000 |
| 3)  Insuring Agreement C | $ | 50,000 |

## ITEM 4. PRIOR AND/OR PENDING LITIGATION DATE:

Directors and Officers Prior and/or Pending Litigation Date:   04/25/2022

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____   June 16, 2022   _____
                                                DATE                AUTHORIZED REPRESENTATIVE

A member of Alleghany Insurance Holdings LLC

# PRIVATE COMPANY EMPLOYMENT PRACTICES LIABILITY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER |
|---|---|
| L | PP699354 |

●THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:   Landmark American Insurance Company (hereinafter referred to as the Insurer)

**ITEM 1.**   INSURED ORGANIZATION'S NAME

DBH TIDES SALVO HOLDCO, LLC

## ITEM 2. LIMIT OF LIABILITY:

| | | |
|---|---|---|
| A. Employment Practices Limit of Liability | $ | 1,000,000 |
| (Including Third Party Liability, if purchased) | | |
| B. Workplace Violence Expenses Sublimit | $ | 250,000 |

## ITEM 3. RETENTION:

A. Employment Practices Liability Retentions

| | | |
|---|---|---|
| 1) Employment Practices Liability | $ | 50,000 |
| 2) Third Party Liability Coverage | $ | 50,000 |

## ITEM 4. PRIOR AND/OR PENDING LITIGATION DATE:

Employment Practices Prior and/or Pending Litigation Date:   04/25/2022

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____   June 16, 2022 _____   _Kym Hadgek_____

| DATE | AUTHORIZED REPRESENTATIVE |
|---|---|

# PRIVATE COMPANY FIDUCIARY LIABILITY DECLARATIONS

**RSUI**

Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER |
|---|---|
| L | PP699354 |

●THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:   Landmark American Insurance Company (hereinafter referred to as the Insurer)

**ITEM 1.**   INSURED ORGANIZATION'S NAME

DBH TIDES SALVO HOLDCO, LLC

## ITEM 2. LIMIT OF LIABILITY:

Fiduciary Limit of Liability                                        $  1,000,000

## ITEM 3. RETENTION:

Fiduciary Liability Retention                                    $  0

## ITEM 4. PRIOR AND/OR PENDING LITIGATION DATE:

Fiduciary Liability Prior and/or Pending Litigation Date:          04/25/2022

## ITEM 5. FIDUCIARY LIABILITY ADDITIONAL COVERAGES:

| ADDITIONAL COVERAGES | SUBLIMIT | RETENTION | PRIOR/PENDING LITIGATION DATE |
|---|---|---|---|
| ☐ HIPAA Violations | N/A | N/A | N/A |
| ☐ Voluntary Compliance Fees or Sanctions | N/A | N/A | N/A |
| ☐ PPACA Civil Money Penalties | N/A | N/A | N/A |
| ☐ Plan Value Fiduciary Liability | N/A | N/A | N/A |
| ☐ Settlor Breaches of Duty | N/A | N/A | N/A |
| ☐ Other Penalties | N/A | N/A | N/A |

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____    June 16, 2022        *Kyun Hadgek*
                                            DATE                AUTHORIZED REPRESENTATIVE

# PRIVATE COMPANY MANAGEMENT LIABILITY POLICY
# SUPPLEMENTAL DECLARATIONS

RSUI

POLICY NUMBER:   LPP699354

### SCHEDULE OF FORMS AND ENDORSEMENTS

| TITLE | FORM NUMBER |
|---|---|
| Florida Changes | RSG 202250 0118 |
| Florida Changes-Marital Estate | RSG 202152 0118 |
| Florida Changes-Merger, Consolidation or Acquisition | RSG 202268 0118 |
| Florida Changes-No Action Against Insurer | RSG 202278 0121 |
| Florida-Changes-Punitive Damages | RSG 202061 0118 |
| Florida Changes-Cancellation and Nonrenewal | RSG 203009 0118 |
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0121 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204198 0118 |
| **FORMS APPLICABLE TO MULTIPLE COVERAGE PARTS** | |
| Common Policy Terms and Conditions Coverage Section-Private Company | RSG 241001 0121 |
| Absolute Exclusion-Bodily Injury and Property Damage with Allocation | RSG 206117 0119 |
| Amended Definition of Insured Person-Additional Positions | RSG 204089 0118 |
| Exclusion-Biometric Privacy Claims | RSG 206125 0120 |
| Exclusion-Network Security and Privacy Information | RSG 206126 1120 |
| Exclusion-Prior Acts | RSG 206108 0118 |
| Fully Non-Rescindable Coverage | RSG 204157 0119 |
| Service of Suit | RSG 204108 0118 |
| State Amendatory Discrepancy | RSG 204202 0118 |
| **FORMS APPLICABLE TO DIRECTORS & OFFICERS LIABILITY** | |
| Directors and Officers Liability Coverage Section-Private Company | RSG 241007 0121 |
| Exclusion-Broadcasting, Advertising and Publishing | RSG 206105 0118 |
| Exclusion-Products Liability | RSG 206109 0118 |
| Florida-Regulatory Coverage | RSG 202165 0320 |
| **FORMS APPLICABLE TO EMPLOYMENT PRACTICES LIABILITY** | |
| Employment Practices Liability Coverage Section-Private Company | RSG 241008 0118 |
| **FORMS APPLICABLE TO FIDUCIARY LIABILITY** | |
| Fiduciary Liability Coverage Section-Private Company | RSG 241009 0118 |
| Florida-Fiduciary Liability Changes | RSG 202219 0118 |

LANDMARK AMERICAN INSURANCE COMPANY

# *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO FLORIDA POLICYHOLDERS**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**QUESTIONS ABOUT YOUR INSURANCE? -** If you have any inquiries, need to obtain coverage information or need assistance in resolving complaints, please do not hesitate to contact your insurance company or agent.

FOR **COMMERCIAL INSURANCE** CONTACT:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

Call Collect          (404) 231-2366

RSG 99003 0803

# *IMPORTANT NOTICE*

**FLORIDA SURPLUS LINES DISCLOSURE NOTICE**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION IV. – EXCLUSIONS, 2. of  the Common Policy Terms and Conditions Coverage Section is deleted in its entirety.

**Policy No.:** LPP699354      **Effective:** 4/25/2022

RSG 202250 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – MARITAL ESTATE

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION II. – COVERAGE EXTENSIONS, A. Marital Estate of the Common Policy Terms and Conditions Coverage Section is deleted in its entirety and replaced with the following:

**A.  Marital Estate**

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized "domestic partner" of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or "domestic partner" of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or "domestic partner".

"Domestic Partner" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354        **Effective:** 4/25/2022

RSG 202152 0118

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – MERGER, CONSOLIDATION OR ACQUISITION

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION V. – CONDITIONS, G. Merger, Consolidation or Acquisition of the Common Policy Terms and Conditions Coverage Section is deleted and replaced by the following:

**G.  Merger, Consolidation or Acquisition**

1.  If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2.  If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition.  After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization,** unless:

    a.  Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization,** as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

    b.  The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

    c.  The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

    d.  The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

3.  If during the **Policy Period**:

    a.  The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    b.  Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

        (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction" ),

    then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction.

    The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  LPP699354        **Effective:**  4/25/2022

RSG 202268 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy. Please Read It Carefully.*

## FLORIDA CHANGES – NO ACTION AGAINST INSURER

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION V. – CONDITIONS, I. No Action Against Insurer of the Common Policy Terms and Conditions Coverage Section is deleted in its entirety and replaced with the following:

**I.    No Action Against Insurer**

No action may be taken against the **Insurer** unless there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354        **Effective:** 4/25/2022

RSG 202278 0121

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA - CHANGES- PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The last paragraph of DEFINITIONS, **Loss** in the Directors and Officers Liability Coverage Section and Employment Practices Liability Coverage Section is amended to read as follows:

The DEFINITION of **Loss** shall include:

1) vicarious liability for punitive or exemplary damages incurred by the Insured, but only to the extent that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to Florida law, and the multiplied portion of any multiplied damage award, if and where insurable; or

2) punitive or exemplary damages, but only to the extent:

   a. such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to the **Insured**, the **Claim**, the **Insurer**, or this policy and is most favorable to the insurability of such damages; and

   b. that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354     **Effective:** 4/25/2022

RSG 202061 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION V. – CONDITIONS, F. Cancellation; Renewal Provision of the Common Policy Terms and Conditions Coverage Section is deleted and replaced by the following:

**F.  Cancellation; Renewal Provision**

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at its address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice accompanied by the specific reason for cancellation.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the refund may be less than pro rata.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

**Nonrenewal**

1.  If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

2.  Any notice of nonrenewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**.  If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354    **Effective:** 4/25/2022

RSG 203009 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

| |
|---|
| **Terrorism Premium**               **$0** |
| **Additional information, if any, concerning the terrorism premium:** <br> **The portion of your premium for the policy term attributable to coverage for all acts of terrorism covered under this policy including terrorist acts certified under the Act is listed above.** |
| *Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page. |

A. **Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended, the **Insurer** is required to provide the **Insured** with a notice disclosing the portion of the **Insured's** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of the **Insured's** premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations Page.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. **Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable **Insurer** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C. **Cap Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our **Insurer** deductible under the Terrorism Risk Insurance Act, the **Insurer** will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Policy No.:** LPP699354          **Effective:** 4/25/2022

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to the Common Policy Terms and Conditions Coverage Section:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our insurer deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Exclusion.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354        **Effective:** 4/25/2022

RSG 204198 0118



# *www.RSUIextra.com*

## Online Human Resource Loss Prevention Services for Directors and Officers Liability Policyholders

## Key Features

- Best Practice Help Line for call-in assistance
- Checklist database for lowering risk
- Links to important federal and state government sites
- Online library with up-to-date articles on productivity, leadership and loss prevention
- Sample Human Resource policies and forms
- Online reporting function allows the Site Administrator to monitor usage
- Online training modules designed for managers and supervisors with the ability to adapt programs to meet their own needs.  Best Practice training modules include:
    - Preventing Sexual Harassment
    - Preventing Discrimination
    - Preventing Wrongful Termination
    - Promoting Ethical Behavior

## How to get started

1. Designate a person to serve as the Site Administrator for your organization.
2. Go to *www.RSUIextra.com*.
3. Click the *Register* link on the left-hand side of the home page.
4. Enter your RSUI policy number as the Passcode/Organization Code (i.e. NHP123456).
5. Complete the Registration Information and click *Submit*.
6. You are now registered as the Site Administrator.

## Who is a Site Administrator?

A Site Administrator is often a person who works with personnel or legal matters and is the person who will oversee the use of *www.RSUIextra.com*.  A Site Administrator will have the ability to recruit and add other users as well as make training decisions.

## Questions?

Please call The McCalmon Group at (888) 712-7667 or click *CONTACT US* at *www.RSUIextra.com* on the upper right hand side of the home page.  You will be directed to The McCalmon Group for assistance.

*This site is administered by The McCalmon Group.*

RSG 204154 0716

# COMMON POLICY TERMS AND CONDITIONS
## COVERAGE SECTION (PRIVATE)
## PLEASE READ YOUR POLICY CAREFULLY

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. - DEFINITIONS.

In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

**SECTION I. – COMMON POLICY TERMS AND CONDITIONS**

The Common Policy Terms and Conditions Section of this policy shall apply to all **Coverage Sections**.  Unless stated to the contrary in any **Coverage Section**, the terms and conditions of each **Coverage Section** of this policy shall apply only to that **Coverage Section** and shall not apply to any other **Coverage Section** of this policy.  If any provision in the Common Policy Terms and Conditions sections is inconsistent or in conflict with the terms and conditions in any **Coverage Section**, including any endorsements attached thereto, the terms and conditions of such **Coverage Section** or endorsement, shall supersede for the purposes of that **Coverage Section**.

**SECTION II. - COVERAGE EXTENSIONS**

**A.  Marital Estate**

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized domestic partner of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or domestic partner.

**B.  Extended Reporting Period**

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or nonrenewal (herein referred to as the "Extended Reporting Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Common Policy Declarations Page and any additional premium(s) charged during the **Policy Period**.  The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at its address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or nonrenewal.

The Extended Reporting Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Extended Reporting Period.

The Limit of Liability available under the Extended Reporting Period is part of and not in addition to the Limit of Liability stated in Item 4. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

**C.  Estates and Legal Representatives**

This policy shall cover **Loss** arising from any **Claim** made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased, or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, for the **Wrongful Act** of such **Insured Person**.

**SECTION III. - DEFINITIONS**

**A.** **Application** means the application attached to and forming a part of this policy, including any materials submitted or requested in connection with such application within 12 months prior to the inception date of this policy, all of which are deemed a part of this policy.

**B.** **Claim** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**C.** **Coverage Section** means, individually or collectively, the purchased coverage sections listed in Item 3. of the Declarations, including all endorsements attached thereto.

**D.** **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses**, however, shall not include:

    **1.** Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

    **2.** Any obligation to apply for or furnish any appellate or similar bond.

**E.** **Employment Practices Wrongful Act** shall have the meaning set forth in the Employment Practices Liability Coverage Section, whether or not purchased.

**F.** **Fiduciary Wrongful Act** shall have the meaning set forth in the Fiduciary Liability Coverage Section, whether or not purchased.

**G.** **Insured** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**H.** **Insured Organization** means:

    **1.** The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

    **2.** Subject to SECTION V. - CONDITIONS, G. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall include any **Subsidiary** created or acquired after the inception date of this policy; or

    **3.** In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

**I.** **Insured Person** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**J.** **Insurer** means the Company providing this insurance as shown on the Declarations Page.

**K.** **Loss** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

**L.** **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or to any earlier policy cancellation or termination date.

**M.** **Subsidiary** means any entity of which the **Insured Organization**, either directly or indirectly, or through one or more of its **Subsidiaries**:

    **1.** Owns more than fifty percent (50%) of the voting stock and/or outstanding securities; or

    **2.** Has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers.

    A **Subsidiary** ceases to be a **Subsidiary** when the **Insured Organization** no longer owns more than fifty percent (50%) of the voting stock and/or outstanding securities, or no longer has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers, or the means by which the **Insured Organization** is legally enabled to exercise fifty percent (50%) ownership or control is formally extinguished.

**N.** **Third Party Discrimination** shall have the meaning set forth in the Employment Practices Liability Coverage Section, whether or not purchased.

**O.** **Third Party Harassment** shall have the meaning set forth in the Employment Practices Liability Coverage Section, whether or not purchased.

**P.  Wrongful Act** shall have the meaning set forth in each applicable **Coverage Section** or any applicable endorsements attached to this policy.

## SECTION IV. - EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

**1.** Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

**2.** Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any nuclear reaction, nuclear radiation, or radioactive contamination, or any related act or incident;

**3.** Any **Telecommunications Claim**, as defined below.

  A **Telecommunications Claim** is any **Claim**:

  **a.** Arising from, based upon, attributable to, or in consequence of any proceeding against any **Insured** brought by the Federal Trade Commission or any other federal, state or local regulatory agency or other administrative body alleging the violation of any federal, state or local laws or regulation pertaining to unsolicited or non-consensual advertising, through faxes, telephone calls, texting or any other medium; and/or

  **b.** Arising from, based upon, attributable to, or in consequence of, any actual or alleged violation of:

  **(1)** The Fair Debt Collection Practices Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

  **(2)** The CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

  **(3)** The Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world; or

  **(4)** Any other law, ordinance, regulation, statute or common law relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV.

## SECTION V. - CONDITIONS

**A.  Duty to Defend**

  It shall be the right and duty of the **Insurer** to defend any **Claim** against any **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

  **1.** The amount for which the **Insurer** could have settled such **Claim** plus **Defense Expenses** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"); plus

  **2.** Seventy percent (70%) of covered **Loss** in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability.

  In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 4. of the Common Policy Declarations Page.

**B.  Limit of Liability; Retention; Payment of Loss**

    **1.  Aggregate Limit of Liability**

Regardless of **Coverage Sections** purchased, as stated in Item 3. of the Common Policy Declarations Page, the amount shown in Item 4. of the Common Policy Declarations Page is the maximum aggregate limit that the **Insurer** will pay for all **Loss** under all **Coverage Sections** combined, arising out of any and all **Claims** first made against the **Insured** during the **Policy Period** and the Extended Reporting Period (if purchased) and reported in accordance with the terms and conditions of this policy.

The **Insurer** will have no obligation to pay **Loss** or to defend or continue to defend any **Claim** after the aggregate Limit of Liability, stated in Item 4. of the Common Policy Declarations Page, has been exhausted by payment of **Loss**.  **Defense Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Defense Expenses** by the **Insurer** will reduce the Limit of Liability.

    **2.  Separate Limit of Liability**

Regardless of any Separate Limit(s) of Liability purchased, as stated in Item 3. of the Common Policy Declarations, the maximum limit of the **Insurer's** liability for all **Loss** for each applicable **Coverage Section** purchased shall not exceed the Separate Limit of Liability as stated in Item 2. of each applicable Declarations for each applicable **Coverage Section**.  Where two or more Separate Limits of Liability are or could be applicable to one **Claim** or series of interrelated **Claims** deemed to be a single **Claim** pursuant to Section V.B.4. below, the larger of the applicable Separate Limits of Liability shall apply, but in no event shall more than one Separate Limit of Liability apply to any **Claim** or series of interrelated **Claims** and in no event shall the Insurer be obligated to pay **Loss** or to defend or continue to defend any **Claim** after the Insurer has paid the applicable Separate Limit of Liability or the Aggregate Limit of Liability per Section V.B.1. of these Common Policy Terms and Conditions.

    **3.**  As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 3. of the Declarations Page for each applicable **Coverage Section** or as otherwise identified.  The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

    **4.**  All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 3. of the Declarations Page for each applicable **Coverage Section**, or other applicable Retention, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

    **5.**  In the event that a **Claim** implicates more than one Retention amount, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a **Claim**.

    **6.**  Any Retention amount applicable to a **Claim** against an **Insured Person** shall apply where indemnification by the **Insured Organization** is permitted or required, regardless of whether the **Insured Organization** has agreed, failed or refused to indemnify such **Insured Person**, provided it shall not apply when indemnification cannot be made by the **Insured Organization** by reason of the **Insured Organization's** financial insolvency.

    **7.**  The **Insurer's** duty to defend the **Insured** and pay **Defense Expenses** ends upon exhaustion of the Limit of Liability, which includes paying or tendering the Limit of Liability into court.

    **8.**  Except for payment of **Defense Expenses**, the **Insurer** shall pay for **Loss** only upon final disposition of any **Claim**.

**C.  Notice of Claim or Circumstance**

    **1.**  If, during the **Policy Period** or Extended Reporting Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the **Policy Period** expires or any earlier cancellation date of this policy.

**2.** If, during the **Policy Period** or Extended Reporting Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** for any **Claim** made against the **Insured** for any **Wrongful Act** occurring prior to the end of the **Policy Period**, and as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

    **a.** The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

    **b.** The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

Further, if any **Claim** first made after the **Policy Period** expires is nonetheless deemed to be made during the **Policy Period** pursuant to Section V.B.4., then it is a condition precedent to coverage for such **Claim** that the **Insured** report it to the **Insurer** as soon as practicable.

## D. Cooperation

In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.

## E. Allocation

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**. If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim**.

## F. Cancellation; Renewal Provision

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at its address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due. In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice. The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page. The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration. The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of non-renewal, stating the reasons for non-renewal, at least sixty (60) days prior to the expiration date of this policy.

Any notice of non-renewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**G.  Merger, Consolidation or Acquisition**

1.  If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2.  If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition.  After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization,** unless:

    a.  Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization**, as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

    b.  The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

    c.  The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

    d.  The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

3.  If during the **Policy Period**:

    a.  The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    b.  Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

    (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction"),

    then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction.  This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

    The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

**H.  Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Insurer** under this policy.  This policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy will be void with respect to any **Insured** who knew of such untruth.

**I.  No Action Against Insurer**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

**J. Subrogation**

In the event the **Insurer** makes any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**, who shall execute all papers and take all necessary actions to secure such rights, including the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of an **Insured**.

**K. Authorization and Notices**

The **Insured Persons** agree that the **Insured Organization** shown in Item 1. of the Declarations Page acts on their behalf with respect to giving and receiving all notices and return of premium from the **Insurer**.

**L. Changes**

Notice to any agent or knowledge possessed by any agent or representations by persons acting on behalf of the **Insurer** do not effect a waiver or change in any part of this policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this policy.  The terms, conditions and limitations of this policy can only be waived or changed by written endorsement.

**M. Assignment**

Assignment of interest under this policy does not bind the **Insurer** without its prior written consent.

**N. Acceptance**

The **Insureds** agree that this policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** relating to this insurance policy.

**O. Headings**

The description in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**P. Governing Law Clause**

This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** shown in Item 1. of the Declarations Page or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

**Q. Territory**

This policy shall apply to **Claims** made against any **Insured** anywhere in the world.

**R. Other Insurance**

Unless specifically stated otherwise, the insurance provided under this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written as specific excess insurance over the Aggregate Limit of Liability or Shared Limit of Liability provided by this policy.  Any coverage otherwise available under any **Coverage Section** shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                                                           President

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE EXCLUSION – BODILY INJURY AND PROPERTY DAMAGE WITH ALLOCATION

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

A.  SECTION IV. – EXCLUSIONS, 6. of the Directors and Officers Liability Coverage Section is deleted and replaced by the following:

6.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision.

B.  The first paragraph in SECTION IV. – EXCLUSIONS, 2. of the Employment Practices Liability Coverage Section is deleted and replaced by the following:

2.  Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

a.  Bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; provided, this EXCLUSION 2.a. will not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim** or a **Claim** for **Third Party Discrimination** and/or **Third Party Harassment**; or

b.  Damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision.

All other terms and conditions of this policy remain unchanged.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED DEFINITION OF INSURED PERSON
# (ADDITIONAL POSITIONS)

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION III. – DEFINITIONS, **I. Insured Person** of the Common Policy Terms and Conditions Coverage Section, is amended to include <u>Advisory Board Member</u>.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354        **Effective:** 4/25/2022

RSG 204089 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## EXCLUSION – BIOMETRIC PRIVACY CLAIMS

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section and Employment Practices Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** under this policy in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any actual or alleged violation of **Biometric Privacy Information**.

For the purpose of this endorsement, **Biometric Privacy Information** is defined as the Biometric Information Privacy Act ("BIPA"), the California Consumer Privacy Act ("CCPA"), or any federal, state, municipal or local statutory biometric privacy law or any such similar law or statute anywhere in the world that governs or relates to the collection, use, safeguarding, handling, storage, retention or destruction of biometric identifiers, biometric data or biometric information of any kind, including but not limited to retina or iris scans, fingerprints, voiceprints or scans of hand or face geometry.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354    **Effective:** 4/25/2022

RSG 206125 0120

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – NETWORK SECURITY AND PRIVACY INFORMATION

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY
PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

A.  The following is added to SECTION IV. – EXCLUSIONS, of the Common Policy Terms and Conditions Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** under this policy in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any actual or alleged violation of **Network Security and Privacy Information**.

B.  The following is added to Section III. – DEFINITIONS, of the Common Policy Terms and Conditions Coverage Section:

1.  **Network Security and Privacy Information** shall mean:

    a.  failure to prevent the transmission of a **Computer Virus**; or

    b.  failure to provide any authorized user of the **Insured Organization's** website, or the **Insured Organization's** computer or communications network, with access to such website, or computer or communications network; or

    c.  failure to prevent unauthorized access to, or use of, data containing private or confidential information of others; or

    d.  failure to properly handle, manage, store, destroy or otherwise control confidential corporate or personally identifiable information; or

    e.  failure to provide notification of any actual or potential unauthorized access to, or use of, data containing private or confidential information of others if such notification is required by any state or federal regulation or statute.

2.  **Computer Virus** shall mean any malicious code which could destroy, alter, contaminate or degrade the integrity, quality or performance of data of any computer application software, computer network, or computer operating system or related network, upon the introduction of such malicious code through any computer, communications equipment or communications network that is owned or operated by the **Insured Organization**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354     **Effective:** 4/25/2022

RSG 206126 1120

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRIOR ACTS

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Common Policy Terms and Conditions Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged **Wrongful Acts** which first occurred prior to 4/25/2022.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354      **Effective:** 4/25/2022

RSG 206108 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## FULLY NON-RESCINDABLE COVERAGE

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to the Common Policy Terms and Conditions Coverage Section:

Notwithstanding anything contained in this policy to the contrary, the coverage provided under this policy shall be non-rescindable by the **Insurer**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354      **Effective:** 4/25/2022

RSG 204157 0119

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the **Insurer's** rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the **Insured Organization** named in Item 1. of the Declarations Page of this policy is located, and that in any suit instituted against it based upon this contract the **Insurer** will abide by the final decision of such court or any appellate court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the **Insured Organization** named in Item 1. of the Declarations Page of this policy is located, is hereby authorized and directed to accept service of process on behalf of the **Insurer** in any such suit and/or upon the **Insured's** request to give a written undertaking to the **Insured** that they will enter a general appearance upon the **Insurer's** behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354      **Effective:** 4/25/2022

RSG 204108 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# STATE AMENDATORY DISCREPANCY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to the Common Policy Terms and Conditions Coverage Section:

In the event that there is a discrepancy between a state amendatory attached to this policy and any term or condition of this policy, then it is understood and agreed that, where permitted by law, the **Insurer** shall apply the most favorable terms in the contract to the **Insured**, whether those terms and conditions are in either the amendatory or the policy.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354      **Effective:** 4/25/2022

RSG 204202 0118

# DIRECTORS AND OFFICERS LIABILITY
# COVERAGE SECTION (PRIVATE)
# PLEASE READ YOUR POLICY CAREFULLY

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. – DEFINITIONS in this Coverage Section or the Common Policy Terms and Conditions.

If purchased, as indicated in Item 3. of the Common Policy Declarations Page, and in consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations provided hereinafter or in the Common Policy Terms and Conditions, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

**Directors and Officers Liability**

**A.** With the **Insured Person**, that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Person** for such **Loss.**

**B.** With the **Insured Organization,** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.** With the **Insured Organization,** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

Notwithstanding anything contained in this policy to the contrary, the coverage provided under SECTION I. INSURING AGREEMENTS A. and B. shall be non-rescindable by the **Insurer**.

## SECTION II. – COVERAGE EXTENSIONS

**A.  Outside Board Extension**

This policy shall cover **Loss** arising from an **Insured Person** having served, at the direction of and with the consent of the **Insured Organization**, as Director, Officer, or Trustee for any eleemosynary corporation or other not for profit organization where such **Insured Person** is entitled to indemnification by the **Insured Organization**.

This COVERAGE EXTENSION shall be excess of any indemnification and/or insurance that may be permitted or provided by such eleemosynary corporation or organization, regardless of payment made by or on behalf of such eleemosynary corporation or organization, including but not limited to any other Director and Officer Liability Insurance or similar insurance provided for, to, or by any such eleemosynary corporation or organization.

**B.  Additional Side-A Limit of Liability**

If a limit is shown in Item 2.B of the Directors and Officers Liability Declarations, then there shall be an addition to the maximum aggregate Limit of Liability available under this Directors and Officers Coverage Section.  This amount shall be in addition to the Limit of Liability as set forth in Item 2.A. of the Directors and Officers Liability Declarations Page and shall be available solely for **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this coverage section, and shall be subject to the following additional conditions:

(1) Any **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this Directors and Officers Coverage Section shall first be paid under the Limit of Liability as set forth in Item 2.A. of the Directors and Officers Liability Declarations Page, and such Limit of Liability must be completely exhausted by payment of **Loss** under SECTION I. INSURING

AGREEMENTS A., B., and/or C. of this Directors and Officers Coverage Section before **Loss** shall be paid under the additional Limit of Liability dedicated for **Insured Persons:** and

(2) The additional Limit of Liability dedicated for **Insured Persons** shall be excess of any insurance available that is specifically excess of this policy and such excess insurance must be completely exhausted by payment of **Loss** thereunder before the **Insurer** shall have any obligation to make any payment on account of the additional Limit of Liability dedicated for **Insured Persons**.

**C.  Investigation Costs Sublimit of Liability**

The **Insurer's** maximum aggregate Limit of Liability for all **Loss** under this policy for all **Investigative Costs** shall be the Investigative Costs Sublimit of Liability as indicated in Item 2.C. of the Directors and Officers Liability Declarations Page.  This sublimit shall be part of and not in addition to the amount set forth in Item 2.A. of the Directors and Officers Liability Declarations Page.

This policy shall cover **Loss** arising from all **Investigative Costs** which the **Insured Organization** shall become legally obligated to pay as a result of a **Shareholder Derivative Demand** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Organization** for a **Wrongful Act** of an **Insured Person**.

**SECTION III. - DEFINITIONS**

**A.  Claim**, either in the singular or the plural, means:

**1.**  A written demand for monetary or non-monetary relief;

**2.**  A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by:

**a.**  Receipt or service of a complaint or similar pleading;

**b.**  Return of an indictment or filing of information; or

**c.**  Receipt of a notice of charges;

**3.**  A written request to an **Insured** to toll or waive a statute of limitations regarding a potential **Claim**, commenced by the receipt of such request by the **Insured**;

**4.**  A civil, criminal, administrative or regulatory investigation of an **Insured Person** by the Securities Exchange Commission ("SEC") or similar state or foreign government authority, after the **Insured Person** is identified in a written "Wells" or other notice from the SEC or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Insured Person**;

**B.  Employee** means any past, present or future employee of the **Insured Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee of the **Insured Organization**.  An individual who is leased or contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

**C.  Insured** means any **Insured Organization** and/or any **Insured Person**.

**D.  Insured Person** means:

**1.**  Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

**2.**  In the event the **Insured Organization** or a **Subsidiary** thereof operates outside the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

**E.  Investigative Costs** means reasonable costs, charges, fees (including attorneys' and experts' fees) and expenses incurred by the **Insured Organization**, its board of directors or any committee thereof in connection with the investigation or evaluation of any **Shareholder Derivative Demand**; provided, however, that **Investigative Costs** shall not include salaries, wages, benefits, expenses or fees of any director, officer or **Employee** of the **Insured Organization**.

**F.  Loss** means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**.  **Loss** (other than **Defense Expenses**) shall not include:

1. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2. Amounts owed under any contract, partnership, stock or other ownership agreement, or any other type of contract;

3. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4. The cost of creating or reinstating employment;

5. Any amounts owed to any **Employee** as wages, compensation, severance or benefits previously incurred or vested without regard to any **Claim**;

6. Civil or criminal fines or penalties;

7. Taxes, whether owed to or by any **Insured**;

8. Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person;

9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable.  For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

G. **Shareholder Derivative Demand** means any written demand by one or more shareholders of the **Insured Organization** made upon the board of directors of the **Insured Organization** to bring a proceeding in a court of law against any **Insured Person** for a **Wrongful Act**.

H. **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:

1. An **Insured Person** acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

2. The **Insured Organization**.

**SECTION IV. - EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

1. Based upon, arising out of or attributable to any remuneration received by an **Insured**, or the granting of any remuneration to any **Insured**, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** received remuneration to which such **Insured** was not legally entitled;

2. Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

3. Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** gained profit or advantage to which such **Insured** was not legally entitled;

4. Alleging, arising out of, based upon or attributable to, in whole or part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending on or before the date referenced in Item 4. of the Directors and Officers Liability Declarations Page, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

5. Alleging, arising out of, based upon or attributable to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

6.  For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

7.  Alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee;

8.  For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

9.  Brought by or on behalf of any **Insured**, or which is brought by any security holder of the **Insured Organization**, whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**.  Provided, however, this EXCLUSION shall not apply to:

    a.  Any **Claim** brought by an **Insured Person**, where such **Claim** is in the form of a cross-claim or a third-party claim for contribution or indemnity, which is part of and results directly from a **Claim** that is not otherwise excluded by the terms of this policy;

    b.  Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

    c.  Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least three (3) years prior to the date such **Claim** is first made, but only if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.c;

    d.  Any **Claim** brought by an **Employee** of the **Insured Organization** who is not or was not a director or officer of the **Insured Organization** and where such **Claim** is brought by such **Employee** only in their capacity as a stockholder and independently of assistance from **Insureds**, except those expressly as noted in section 9.c., above; or

    e.  Any instigation of or involvement in any **Claim**, or solicitation, assistance, active participation or intervention by any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law.

    Provided further, however, that in the event that an **Insured Person** brings a cross-claim or third-party claim, as described in 9.a. above, against another **Insured Person**, then solely with respect to the **Loss** derived from a cross-claim or third-party claim, the **Insurer** shall be liable solely for **Defense Expenses**;

10. For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**;

    Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

11. Alleging, arising out of, based upon or attributable to any initial public offering of securities by the **Insured Organization** or alleging the purchase or sale of such securities subsequent to such offering;

12. With respect to INSURING AGREEMENT C. of this policy, only:

    a.  For actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, secret or any other intellectual property rights;

**b.** For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; or

**c.** Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement.

**13.** Alleging, arising out of, based upon or attributable to, in whole or in part, any **Employment Practices Wrongful Act**.

**14.** Alleging, arising out of, based upon or attributable to, in whole or in part, any **Third Party Discrimination** and/or **Third Party Harassment**.

**15.** Alleging, arising out of, based upon or attributable to, in whole or in part, any **Fiduciary Wrongful Act**.

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV.

**SECTION V. - CONDITIONS**

**A. Bankruptcy and Priority of Payments**

The bankruptcy or insolvency of the **Insured Organization** or any **Subsidiary** shall not relieve the **Insurer** of any of its obligations hereunder.  The coverage provided by this policy, however, is intended primarily to protect and benefit the **Insured Persons**.

With respect to the payment of the policy proceeds, it is agreed that covered **Loss** due under this policy shall be paid by the **Insurer** in the following order of priority:

**1.** First pay such **Loss** for which coverage is provided under INSURING AGREEMENT A. of this policy;

**2.** With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT B. of this policy; and

**3.** With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT C. of this policy.

The **Insured Organization** or its representatives and the **Insurer** shall use their best efforts to agree upon the priority of payment of all **Loss** under this policy.  If no agreement is reached regarding the priority of payments, then the **Insurer** and **Insured Organization** will submit the issue of such priority, and only that issue, to binding arbitration.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                                                                                                President

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – BROADCASTING,
# ADVERTISING AND PUBLISHING LIABILITY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to, directly or indirectly or in any way involving:

a.  Publishing or re-publishing;

b.  Advertising;

c.  Broadcasting or re-broadcasting;

d.  Telecasting or re-telecasting;

e.  Any actual or alleged piracy;

f.  Any actual or alleged idea misappropriation under implied contract;

g.  Any actual or alleged libel, slander, or other defamation or invasion of privacy in connection with any advertisement, publicity, article, broadcast or telecast;

h.  Any actual or alleged plagiarism, infringement of patent, copyright, trademark, title or slogan; or

i.  Any actual or alleged false arrest, false imprisonment, wrongful entry or eviction or other wrongful invasion of the right to private occupancy, wrongful detention, malicious prosecution, humiliation, defamation of character or invasion of rights of privacy.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354      **Effective:** 4/25/2022

RSG 206105 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRODUCTS LIABILITY

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section:

The **Insurer** shall not be liable to make any payment for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to, directly or indirectly, in whole or in part, or in any way involving the failure, malfunction or misuse of any product(s) manufactured, designed or sold by the **Insured Organization**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** LPP699354       **Effective:** 4/25/2022

RSG 206109 0118

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA - REGULATORY COVERAGE

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

A. The following is added to SECTION II. – COVERAGE EXTENSIONS, of the Directors and Officers Liability Coverage Section:

The **Insurer** will pay on behalf of the **Insured** any **Loss** from a **Regulatory Claim** first made against them during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of the Common Policy Conditions Coverage Section, which shall be applicable to **Regulatory Claims** as it is for **Claims** generally.  The **Insurer's** maximum aggregate Limit of Liability for **Loss** under this policy in connection with **Regulatory Claims** made against all **Insureds** shall be $250,000. This sublimit shall be part of and not in addition to the amount set forth in Item 2.A of the Directors and Officers Liability Declarations Page.

A Retention in the amount of $250,000 shall apply to any **Loss** arising from a **Regulatory Claim**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** arising from a **Regulatory Claim** which is in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered as "Side A", or non-indemnifiable or non-indemnified **Loss** in keeping with Policy terms and conditions, the Retention normally applicable in such situations shall apply to such **Claim**, and the Retention stated here shall not apply.

B. The following are added to SECTION III. – DEFINITIONS, of the Directors and Officers Liability Coverage Section:

1. **Regulatory Claim** shall mean:

   (a) a written demand for monetary damages or non-monetary relief;

   (b) a search warrant, subpoena, notice of investigation, or contact letter;

   (c) a civil proceeding commenced by the service of a complaint or similar pleading;

   (d) a criminal proceeding commenced by the return of an indictment or information;

   (e) a civil administrative or civil regulatory proceeding commenced by the filing of a demand or notice of charges; or

   (f) a qui tam action or a relator lawsuit commenced by the service of a complaint or similar pleading,

   brought by or on behalf of a federal, state or local governmental, regulatory or administrative agency or entity against an **Insured** for a **Regulatory Wrongful Act**, including any appeal therefrom.

   **Regulatory Claim** shall not include any customary or routine audit or reconciliation involving an **Insured** by any federal, state or local governmental, regulatory or administrative agency or entity.

   A **Regulatory Claim** will be deemed to have first been made when, with respect to any civil, criminal, or civil administrative or civil regulatory proceeding or qui tam action or relator lawsuit described in (c) - (f) above, such **Regulatory Claim** is commenced as set forth in this definition or, in the case of any written demand, search warrant, subpoena, notice of investigation, or contact letter described in (a) or (b) above, when such demand is first received by an **Insured**.

2. **Regulatory Wrongful Act** shall mean any actual or alleged violation by an **Insured** of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world, any federal, state, or local anti-kickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or

**Policy No.:** LPP699354      **Effective:** 4/25/2022

regulations promulgated under any such law; provided that a **Regulatory Wrongful Act** shall not include any actual or alleged **Retaliation**.

**Retaliation** shall mean retaliatory treatment against any **Insured Person** on account of such individual:

(a) exercising his or her rights under law;

(b) refusing to violate any law;

(c) opposing any unlawful practice;

(d) disclosing or threatening to disclose to a superior or to any governmental agency alleged violations of law; or

(e) having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Insured Entity**.

C. Solely with respect to coverage afforded by this endorsement, the term **Loss**, as defined in SECTION III. - DEFINITIONS of the Directors and Officers Liability Coverage Section, is amended to include the amount that any **Insured** shall become legally obligated to pay on account of any covered **Regulatory Claim**, including but not limited to:

(a) damages;

(b) judgments;

(c) settlements; and

(d) pre-judgment and post-judgment interest.

D. Solely with respect to coverage afforded by this endorsement, the term **Loss**, as defined in SECTION III. - DEFINITIONS of the Directors and Officers Liability Coverage Section shall not include:

(a) any bond or surety requirement;

(b) any amount of overpayment or restitution that is identified as such in any document or instrument effecting any settlement;

(c) fees, profits, or other revenue lost, or any costs incurred, by an **Insured** in connection with the termination, suspension, or limitation of such **Insured's** right to participate in any program of a federal, state or local governmental, regulatory or administrative agency or entity; or

(d) the cost of any compliance program, or the cost of complying with any integrity agreement made as part of, or in anticipation or expectation of, or otherwise in connection with any such settlement.

E. If any **Regulatory Claim** is filed under seal, the **Insured** shall, as a condition precedent to exercising any right to coverage under this policy, immediately upon becoming aware of such **Regulatory Claim** petition the applicable court, agency, or entity to allow such sealed information be provided to the **Insurer**.

All other terms and conditions of this policy remain unchanged.

# EMPLOYMENT PRACTICES LIABILITY
# COVERAGE SECTION (PRIVATE)
# PLEASE READ YOUR POLICY CAREFULLY

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. – DEFINITIONS in this Coverage Section or the Common Policy Terms and Conditions.

If purchased, as indicated in Item 3. of the Common Policy Declarations Page, and in consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations provided hereinafter or in the Common Policy Terms and Conditions, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

### A. Employment Practices Liability

The **Insurer** shall pay **Loss** up to the Limit of Liability applicable to this **Coverage Section** on behalf of the **Insured** in connection with any **Employment Practices Claim** first made against any **Insured** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy**.**

### B. Third Party Liability Coverage

The **Insurer** shall pay for **Loss** up to the Limit of Liability applicable to this **Coverage Section** arising out of or in connection with any **Claim** for **Third Party Discrimination** and/or **Third Party Harassment** first made against any **Insured** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy.

## SECTION II. – COVERAGE EXTENSIONS

**Workplace Violence Expenses Sublimit**

If a sublimit is shown in Item 2.B. of the Employment Practices Liability Declarations Page, the **Insurer** shall provide coverage for **Workplace Violence Expense** the **Insured Organization** incurs resulting directly from any **Workplace Violence**.  This sublimit shall be part of and not in addition to the Limit of Liability set forth in Item 2.A. of the Employment Practices Liability Declarations Page.

No Retention shall apply to the **Workplace Violence Expense** Coverage.

## SECTION III. - DEFINITIONS

### A. Claim, for purposes of this Coverage Section shall be an Employment Practices Claim, which means:

A written demand for monetary or non-monetary relief solely where alleging an **Employment Practices Wrongful Act**, including:

1. A civil, criminal, administrative, regulatory or arbitration proceeding or arbitration demand for monetary or non-monetary relief which is commenced by:

   a. Receipt or service of a complaint or similar pleading;

   b. Return of an indictment or filing of information; or

   c. Receipt of a notice of charges;

2. A written request to an **Insured** to toll or waive a statute of limitations regarding a potential **Claim**, commenced by the receipt of such request by the **Insured**;

3. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

Provided, such **Employment Practices Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

### B. Employee means any past, present or future employee of the Insured Organization, whether such

employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee of the **Insured Organization**.  An individual who is leased or

contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

**C.** **Employment Practices Claim** means any **Claim** for an **Employment Practices Wrongful Act**.

**D.** **Employment Practices Wrongful Act** means any actual or alleged:

   **1.** Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;

   **2.** Employment related harassment (including but not limited to sexual harassment);

   **3.** Employment related discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

   **4.** Employment-related retaliation;

   **5.** Employment-related misrepresentation to an **Employee** or applicant for employment with the **Insured Organization**;

   **6.** Employment-related libel, slander, humiliation, defamation and/or invasion of privacy;

   **7.** Wrongful failure to employ or promote;

   **8.** Wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of defamatory statements in connection with an **Employee** reference;

   **9.** Employment related wrongful discipline;

  **10.** Failure to grant tenure or practice privileges;

  **11.** Failure to provide or enforce adequate or consistent organization policies or procedures relating to employment performance;

  **12.** Violations of the following federal laws (as amended) including all regulations promulgated thereunder:

    **a.** Family and Medical Leave Act of 1993;

    **b.** Americans with Disabilities Act of 1992 (ADA);

    **c.** Civil Rights Act of 1991;

    **d.** Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or

    **e.** Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

  **13.** Violation of an **Insured Person's** civil rights relating to any of the above; or

  **14.** Negligent hiring, retention, training or supervision, infliction of emotional distress, or violation of an individual's civil rights, when alleged in conjunction with any of the foregoing items 1. through 13.,

whether such **Employment Practices Wrongful Act** as described in 1-14 above is committed directly, indirectly, intentionally or unintentionally, but only if the **Employment Practices Wrongful Act** actually or allegedly pertains to acts committed by an **Insured** and are alleged against an **Insured** by an **Insured Person** or applicant for employment with the **Insured Organization**.

**E.** **Insured** means any **Insured Organization** and/or any **Insured Person**.

**F.** **Insured Person** means:

   **1.** Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

   **2.** In the event the **Insured Organization** or a **Subsidiary** thereof operates outside the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

**G.** **Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

    **1.** Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

    **2.** Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

    **3.** Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

    **4.** The cost of creating or reinstating employment;

    **5.** Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

    **6.** Civil or criminal fines or penalties;

    **7.** Taxes, whether owed to or by any **Insured**;

    **8.** Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any actual or alleged liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**;

    **9.** Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

**H.** **Premises** means the buildings, facilities or properties occupied by the **Insured Organization** in conducting its business.

**I.** **Third Party** means any person(s) with whom an **Insured** interacts.

**J.** **Third Party Discrimination** means any discrimination by an **Insured** in his or her capacity as such against a **Third Party** based on such **Third Party's** race, color, creed, religion, age, gender, national origin, sexual orientation or preference, disability, pregnancy or other protected status that is protected pursuant to any applicable federal, state or local statute or ordinance.

**K.** **Third Party Harassment** means any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment that is by an **Insured** to a **Third Party**.

**L.** **Workplace Violence** means any intentional and unlawful act:

    **1.** of deadly force involving the use of lethal weapon; or

    **2.** the threat of deadly force involving the display of a lethal weapon,

which occurs on or in the **Premises** and which did or could result in bodily injury or death to an **Insured Person**.

**M.** **Workplace Violence Expense** means the reasonable fees and expenses, or cost of:

    **1.** an independent security consultant for ninety (90) days following the date **Workplace Violence** occurs;

    **2.** an independent public relations consultant for ninety (90) days following the date **Workplace Violence** occurs;

    **3.** a counseling seminar for all **Employees** conducted by an independent consultant following **Workplace Violence**;

    **4.** independent security guard services for up to fifteen (15) days; and

    **5.** an independent forensic analyst.

**SECTION IV. - EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

**1.** Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending on or before the date referenced in Item 4. of the Employment Practices Liability Declarations Page, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

**2.** For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged; provided, this EXCLUSION shall not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**;

The **Insurer** shall not be liable to make any payment, and shall have no duty to defend or pay **Loss** of any sort, in connection with any **Workplace Violence**:

    **a.** which occurs at any location other than the **Insured Organization's Premises**;

    **b.** arising from declared or undeclared war, civil war, insurrection, riot, civil commotion, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization;

    **c.** that reflects legal costs, judgments and settlements incurred as the result of any **Claim**, suit or judicial action brought against an **Insured Organization** in connection with **Workplace Violence**; or

    **d.** resulting from the use or threat of force or violence occurring on the **Premises** for the purpose of demanding money, securities or property.

**3.** For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**;

Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

**4.** For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

**5.** Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement; provided this EXCLUSION shall not apply to **Defense Expenses** in connection with an **Employment Practices Claim**;

**6.** Alleging, arising out of, based upon or attributable to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

**7.** Alleging, arising out of, based upon, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such Insured committed such criminal or fraudulent act.

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.


Secretary                                                          President

# FIDUCIARY LIABILITY COVERAGE SECTION (PRIVATE)
# PLEASE READ YOUR POLICY CAREFULLY

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. – DEFINITIONS in this Coverage Section or the Common Policy Terms and Conditions.

If purchased, as indicated in Item 3. of the Common Policy Declarations Page and in consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations provided hereinafter or in the Common Policy Terms and Conditions, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

**Fiduciary Liability**

The **Insurer** shall pay **Loss** up to the Limit of Liability applicable to this **Coverage Section** on behalf of the **Insured** in connection with any **Fiduciary Claim** first made against any **Insured** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy.

Notwithstanding anything contained in this policy to the contrary, the coverage provided under this Coverage Section shall be non-rescindable by the **Insurer**.

## SECTION II. – ADDITIONAL COVERAGES

The **Insurer** shall pay **Loss** arising from **Additional Claims** first made against any **Insured** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy which result in **Loss** as described in the Additional Coverages as shown below.

Any Sublimits and Retentions set forth in the Fiduciary Liability Declarations Page for the Additional Coverage(s) shall apply separately and specifically to any **Loss** arising from the specified Additional Coverage(s).  Such Retentions shall be borne by the **Insured Organization**, and the **Insurer** shall only be liable for the amount of **Loss** arising from the specified Additional Coverage(s) that is in excess of the specifically stated Retention amount applicable to such Additional Coverage, and subject to the applicable Sublimit.

### A. HIPAA Violations

**Loss** is amended to include any civil money penalties imposed upon an **Insured** for violation of the privacy provisions of the Health Insurance Portability and Accountability Act ("HIPAA").

### B. Voluntary Compliance Fees/Sanctions

The definition of **Loss** is amended to include:

**1.** Any sanctions imposed upon an **Insured** as a fiduciary; or

**2.** Any compliance fees incurred by an **Insured**, under the Employee Plans Compliance Resolution System described in any applicable Internal Revenue Service Revenue Procedure ("EPCRS Sanctions/Fees").

### C. PPACA Civil Money Penalties

**Loss** is amended to include any civil money penalties imposed upon an **Insured** for inadvertent violation of the Patient Protection and Affordable Care Act, as amended ("PPACA"), and any rules or regulations promulgated thereunder.

### D. Plan Value Fiduciary Liability

**Loss** is amended to include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** and/or loss in the actual account of participants in a **Plan** by reason of a change in the value of investments held by that **Plan**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits".

### E. Settlor Breaches of Duty

**Loss** is amended to include amounts incurred arising from Settlor Breaches of Duty meaning any actual or alleged breach of duties, obligations and responsibilities imposed by **ERISA**, COBRA, or HIPAA, in the discharge of any **Insured's** duties in a settlor capacity with respect to **Employee Benefits**.

**F.   Other Penalties**

**Loss** is amended to include **Defense Expenses** resulting from any **Claim** arising out of:

**1.**   the civil penalties under Section 502(c) of **ERISA**;

**2.**   the civil penalties under the Pension Protection Act of 2006; and

**3.**   the 15% or less tax penalty imposed upon an Insured under Section 4975 of the Internal Revenue Code of 1986, with respect to covered judgments.

## SECTION III. – DEFINITIONS

**A.   Additional Claims** means written demands or written allegations demanding relief as described in Section II., Additional Coverages, of this **Coverage Section**.

**B.   Administration** means:

**1.**   handling records in connection with **Employee Benefits**;

**2.**   effecting enrollment, termination or cancellation of **Employees** under an **Employee Benefits** program;

**3.**   giving counsel to **Employees** with respect to **Employee Benefits**; or

**4.**   interpreting **Employee Benefits**.

**C.   Claim** means a **Fiduciary Claim**.

**D.   Employee** means any natural persons whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees.  **Employee** shall not include any independent contractor.

**E.   Employee Benefits** means any **Plan** or **Healthcare Exchange**, and any workers' compensation insurance, unemployment insurance, Social Security or disability benefits for **Employees** of the **Insured Organization**.

**F.   ERISA** means:

**1.**   the Employee Retirement Income Security Act of 1974, as amended and any rules or regulations promulgated thereunder (including, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Heath Insurance Portability and Accountability Act of 1996 ("HIPAA"));

**2.**   the English Pension Scheme Act of 1993, and the English Pensions Act of 1995, as such Acts are amended and any rules or regulations promulgated under such Acts, and

any similar statutory or common law anywhere in the world, and any rules or regulations promulgated thereunder, and

**3.**   the privacy provisions under HIPAA.

**G.   Fiduciary Claim** means a:

**1.**   written demand for money or other civil relief commenced by the receipt of such demand;

**2.**   civil proceeding, including any arbitration or other alternative dispute resolution proceeding commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

**3.**   criminal proceeding commenced by the return of an indictment;

**4.**   written notice of the commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation; or

**5.**   formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar documents;

against an **Insured** for a **Fiduciary Wrongful Act**.

**H.   Fiduciary Wrongful Act** means any actual or alleged:

**1.**   breach of the duties, responsibilities or obligations imposed upon fiduciaries of any **Plan** by **ERISA** or the common law or statutory law of any jurisdiction governing such **Plan**; or

**2.**   any negligent act, error or omission by an **Insured** in the **Administration** of **Employee Benefits** or any other matter claimed against an **Insured** solely by reason of their service as a fiduciary of any **Plan**.

3. Violation of any of the responsibilities, obligations or duties imposed upon fiduciaries of any **Plan** by the Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder ("HIPAA"); or

4. Other violation of HIPAA claimed against an **Insured** due solely to such **Insured's** service as a fiduciary of any **Plan**; or

5. Negligent violation of HIPAA by an **Insured** in the **Administration** of any **Plan**.

**I.** **Healthcare Exchange** shall be any facility or vehicle set up to facilitate the purchase of health insurance in each state in accordance with the Patient Protection and Affordable Care Act.

**J.** **Insured** means the **Insured Persons**, the **Plan** and the **Sponsor Organization**.

**K.** **Insured Person** means any director, officer, trustee, partner or **Employee** of the **Plan** or of the **Sponsor Organization** while acting in his or her capacity as a fiduciary or settlor of the **Plan**.

**L.** **Loss** means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

1. Fines, penalties or taxes imposed by law, except that **Loss** may include claimant's attorney's fees awarded by a court pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974, as amended, against an **Insured**; civil penalties of up to five percent (5%) imposed pursuant to Section 502(i) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**") for inadvertent violation of Section 406 of **ERISA**, and civil penalties of up to twenty percent (20%) of any settlement or judgment imposed pursuant to Section 502(l) of **ERISA** for breach of fiduciary duty;

2. Benefits due or to become due under the terms of any **Plan**, unless and then only to the extent that recovery for such benefits is based on a **Fiduciary Wrongful Act** and is payable as the personal obligation of an **Insured** who is a natural person; provided that **Loss** shall include **Defense Expenses** with respect to any **Claim** seeking benefits due or to become due under the terms of any **Plan**; and **Loss** shall include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** and/or loss in the actual account of participants in a **Plan** by reason of a change in the value of investments held by that **Plan**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits";

3. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

4. Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

5. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

6. The cost of creating or reinstating employment;

7. Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

8. Civil or criminal fines or penalties not expressly provided for in this **Coverage Section**;

9. Taxes, whether owed to or by any **Insured**;

10. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

**M.** **Pension Benefit Plan** means any employee pension benefit plan, as such term is defined in **ERISA**, which is operated solely by the **Insured** or jointly by the **Insured** and a labor organization solely for the benefit of the **Employees**.

**N.** **Plan** means any:

1. **Pension Benefit Plan** and any trust established to hold the assets of any such **Pension Benefit Plan**;

2. **Welfare Benefit Plan** which was, is now, or becomes sponsored solely by any **Sponsor Organization**;

3.   **Pension Benefit Plan**, or any trust established to hold the assets of any such **Pension Benefit Plan**, created during the **Policy Period** by any **Sponsor Organization** or by any interest owned or controlled by such **Sponsor Organization** for the **Employees** thereof, but only if the Insured provides the Insurer with written notice of the creation of such **Pension Benefit Plan** within ninety (90) days of the effective date of such **Pension Benefit Plan**; and

4.   otherwise covered **Plan** of any **Subsidiary** as that term is defined in the Common Policy Terms and Conditions SECTION III. - DEFINITIONS, M., or as allowed in the Common Policy Terms and Conditions SECTION V. – CONDITIONS, G., but only if:

(a)   **Insured** provides the **Insurer** such additional information with respect thereto as the **Insurer** may reasonably require;

(b)   **Insured** provides the **Insurer** written notice of such acquisition as soon as practicable after the effective date thereof; and

(c)   **Insurer** specifically agrees by written endorsement to provide coverage with respect to such **Plan** and the **Insured** has accepted any additional terms, conditions and limitations of coverage, and agrees to pay any additional premium that the **Insurer** in its sole discretion, shall deem appropriate.

**Plan** shall not include any multiemployer plan.

**O.   Sponsor Organization** means the **Insured Organization** while acting in its capacity as a sponsor of a **Plan** solely for the benefit of its **Employees**.

**P.   Welfare Benefit Plan** means any employee welfare benefit plan, as such term is defined in **ERISA** which is operated solely by the **Insured** or jointly by the **Insured** and a labor organization solely for the benefit of the **Employees**.

## SECTION IV. - EXCLUSIONS

Specifically with respect to **Fiduciary Claims** or **Additional Claims**, exclusions in this endorsement shall govern in the event of any specific conflict between them and other exclusions in the policy.

The **Insurer** shall not be liable to make any payment for **Loss**, and shall have no duty to defend or pay **Defense Expenses**, in connection with any **Fiduciary Claim** made against any **Insured**:

1.   Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Fiduciary Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding which was brought on or before the date referenced in Item 4. of the Fiduciary Liability Declarations Page;

2.   Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged failure by any **Insured** to comply with any law, rule or regulation concerning workers' compensation insurance, unemployment insurance, Social Security or disability benefits, whether or not such failure to comply is willful;

3.   For the failure to collect contributions owed to any **Plan** from any employer unless such failure is due to the negligence of an **Insured,** or for the return to any employer of any contributions if such amounts are or could be chargeable to a **Plan**; provided, this EXCLUSION 3. shall not apply to the **Insurer's** obligations, subject to the applicable Limit of Liability, to defend such **Fiduciary Claim** and to pay **Defense Expenses** resulting therefrom;

4.   For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

5.   For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**;

Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

**6.** Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement;

**7.** Made by or on behalf of a fidelity insurer against a natural person whose conduct has resulted in a **Loss** which has been paid under a fidelity bond; or

**8.** Based upon, arising out of, directly or indirectly resulting from any discrimination, retaliation or wrongful termination of employment; provided, this EXCLUSION 8. will not apply to **Fiduciary Claims** asserted under Section 510 of **ERISA**.

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## SECTION V. - CONDITIONS

### A. Coverage for New Plans

If during the **Policy Period** the **Insured**:

**1.** forms or acquires an employee welfare benefit plan, as defined by **ERISA**, which is sponsored solely by the **Insured**, or jointly by the **Insured** and a labor organization exclusively for the benefit of **Employees** of the **Insured**; this **Coverage Section** shall automatically apply; or

**2.** forms or acquires an employee pension benefit plan or pension plan, as defined by **ERISA**, which is sponsored solely by the **Insured**, or jointly by the **Insured** and a labor organization exclusively for the benefit of **Employees** of the **Insured** and whose assets are less than ten percent (10%) of the total consolidated assets of the **Insured** as of the Policy inception date; this **Coverage Section** shall automatically apply; or

**3.** forms or acquires an employee pension benefit plan or pension plan, as defined by **ERISA**, which is sponsored solely by the **Insured** or jointly by the **Insured** and a labor organization exclusively for the benefit of **Employees** of the **Insured** and whose assets are equal to or greater than ten percent (10%) of the total consolidated assets of the **Insured** as of the Policy inception date, then coverage is provided under this **Coverage Section**, but only upon the condition that within ninety (90) days of it becoming an **Employee Benefits** plan, the **Insured** provides the **Insurer** with full particulars of the new **Employee Benefits** plan and agrees to any additional premium and/or amendment of the provisions of this **Coverage Section** required by the **Insurer** related to such new **Employee Benefits** plan.  Further, coverage as shall be afforded to the new **Employee Benefits** plan is conditioned upon the **Insured** paying when due any additional premium required by the **Insurer** relating to such new **Employee Benefits** plan.

In all events, coverage as afforded with respect to this Section V.A. shall not apply to an Employee Stock Ownership Plan, a Multi Employer Plan, a Multiple Employer Plan, or a Defined Benefit Plan.

### B. Creation or Acquisition of an ESOP

Notwithstanding anything in this **Coverage Section** to the contrary, if during the **Policy Period** any **Sponsor Organization** creates or directly or indirectly acquires an employee stock ownership plan ("ESOP"), the **Sponsor Organization** shall promptly give to the **Insurer** written notice thereof together with such other information requested by the **Insurer**.  The **Insurer** shall, at the request of the **Sponsor Organization**, provide to the **Sponsor Organization** a quotation for coverage for **Claims** based upon, arising from or in consequence of such ESOP, subject to such terms, conditions, limitations of coverage and such additional premium as the **Insurer**, in its sole discretion, may require.

### C. Recourse

It is agreed that, in the event an **Insured** breaches a fiduciary obligation under **ERISA**, the **Insurer** has the right of recourse against any such **Insured** for any amount paid by the **Insurer** as a result of such breach of fiduciary duty, but the **Insurer** shall have no such right of recourse if the policy has been purchased by the fiduciary or by an employer or an employee organization.

**D.   Termination of Plan**

If the **Sponsor Organization** terminates a **Plan**, coverage shall be afforded under this coverage extension with respect to such terminated **Plan** and its **Insureds**.   Such continuation of coverage shall apply with respect to **Fiduciary Claims** for **Fiduciary Wrongful Acts** committed, attempted, or allegedly committed or attempted prior to or after the date the **Plan** was terminated.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                                                                                               President

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA – FIDUCIARY LIABILITY CHANGES

This endorsement modifies insurance provided under the following:

**NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY**
**PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

SECTION III – DEFINITIONS, L. Loss of the Fiduciary Liability Coverage Section is deleted and replaced with the following:

**L.  Loss** means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**.  **Loss** (other than **Defense Expenses)** shall not include:

1.  Fines, penalties or taxes imposed by law;

2.  Benefits due or to become due under the terms of any **Plan**, unless and then only to the extent that recovery for such benefits is based on a **Fiduciary Wrongful Act** and is payable as the personal obligation of an **Insured** who is a natural person; provided that **Loss** shall include **Defense Expenses** with respect to any **Claim** seeking benefits due or to become due under the terms of any **Plan**;

3.  Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

4.  Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

5.  Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

6.  The cost of creating or reinstating employment;

7.  Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

8.  Civil or criminal fines or penalties not expressly provided for in this **Coverage Section**;

9.  Taxes, whether owed to or by any **Insured**;

10. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include:

1)  vicarious liability for punitive or exemplary damages incurred by the Insured, but only to the extent that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to Florida law, and the multiplied portion of any multiplied damage award, if and where insurable; or

2)  punitive or exemplary damages, but only to the extent:

    a.  such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to the **Insured**, the **Claim**, the **Insurer**, or this policy and is most favorable to the insurability of such damages; and

    b.  that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida.

CHUBB

*The ForeFront Portfolio*[SM]
*for Private Companies*
*New Business Application*

**BY COMPLETING THIS NEW BUSINESS APPLICATION ("APPLICATION") THE APPLICANT IS APPLYING FOR COVERAGE WITH FEDERAL INSURANCE COMPANY (THE "COMPANY")**

**NOTICE: THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "MATTERS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE APPLICATION CAREFULLY BEFORE SIGNING.**

## RENEWAL APPLICATION INSTRUCTIONS

1.   Whenever used in this Application, the term "**Applicant**" shall mean the Parent Organization and all Subsidiaries, as defined by the Policy unless otherwise stated.

2.   All **Applicants** must complete this Application in accordance with the specific coverages being renewed. Attach additional pages if necessary.

## I.   NAME, ADDRESS AND CONTACT INFORMATION

1.   Name of **Applicant**: _____

2.   Address of **Applicant***: _____

     City: _____ State: _____ Zip Code: _____-_____

     EIN: _____

3.   **Applicant's** Web Site: _____

4.   State of Incorporation: _____

5.   Years of Operation: _____

6.   Description of the **Applicant's** business: _____

7.   Primary SIC Code: _____

8.   Name and email address of Primary Contact (Executive Officer authorized to receive notices and information regarding the proposed policy):

     Name: _____ E-Mail: _____

     *If documents related to the Policy should be sent to a mailing address different than noted in 2. above, please indicate as such in the designated area at the end of this Application.*

## II.   INSURANCE INFORMATION

Please indicate below, by placing an "X" in the box, which coverages are being requested.

| Coverage Requested | Current Insurer (or N/A) | Current (or Requested) Limit | Current (or requested) Retention | Current Pending or Prior Proceedings Date (or N/A) |
|---|---|---|---|---|
| ☐  Directors & Officers and Entity Liability | | | | |

**CHUBB**

*The ForeFront Portfolio*<sup>SM</sup>
*for Private Companies*

| Coverage Requested | Current Insurer (or N/A) | Current (or Requested) Limit | Current (or requested) Retention | Current Pending or Prior Proceedings Date (or N/A) |
|---|---|---|---|---|
| ☐ Employment Practices Liability | | | | |
| ☐ Fiduciary Liability | | | | |
| ☐ Employed Lawyers Liability | | | | |
| ☐ Crime | | | | |
| ☐ Kidnap Ransom & Extortion | | | | |
| ☐ Workplace Violence Expense | | | | |

## III.    GENERAL RISK INFORMATION

1.    Please complete the following employee and location information:

| | Full Time Employees | Part Time Employees (including Seasonal & Temporary) | Contractors (Independent or Leased) |
|---|---|---|---|
| **U.S. Employees** | | | |
| *AK, AZ, CA, CT, DC, KY, MS, NJ, NM, NV, WA, WV* | | | |
| *AL, CO, DE, FL, GA, IL, KS, LA, ME, MO, MT, SC, TN, UT, WY* | | | |
| *All Other States* | | | |
| **Employees Outside the U.S.\*** | | | |
| *Country 1:* | | | |
| *Country 2:* | | | |
| **Total Worldwide Employees** | | | |

*\* If the number of foreign locations exceeds space in the table above, please attach such information as an addendum to this Application or provide details in the designated area at the end of this Application.*

2.    Please provide the **Applicant's** most recent annual financial statements as an attachment to this Application. If financial statements are not available or do not contain any of the information requested below, please provide the following financial information:

| | Most Recent Fiscal Year End | Prior Fiscal Year End (Optional) |
|---|---|---|
| | Month/Year _____ | Month/Year _____ |
| **Cash & Cash Equivalents** | | |
| **Current Assets** | | |
| **Total Assets** | | |
| **Current Liabilities** | | |
| **Long Term Debt** | | |

**CHUBB**

*The ForeFront Portfolio*<sup>SM</sup>
*for Private Companies*

| | | |
|---|---|---|
| **Total Liabilities** | | |
| **Revenue** | | |
| **Operating Income** | | |
| **Interest Expense** | | |
| **Net Income** | | |
| **Cash Flows From Operating Activities** | | |

3.  Has the **Applicant** in the last 12 months completed or is the **Applicant** anticipating in the next 12 months any:

    (i)      Reorganization or arrangement with creditors under federal or state law?   ☐ Yes ☐ No

    (ii)     Closings, consolidations, or divestments of any branch, location, office, or subsidiary?   ☐ Yes ☐ No

    (iii)    Proposed, actual, or attempted merger or acquisition?   ☐ Yes ☐ No

    (iv)    Layoffs or reductions in workforce?   ☐ Yes ☐ No

    (v)     Breach or violation of any debt covenant?   ☐ Yes ☐ No

    (vi)    Public or private offering of securities or debt?   ☐ Yes ☐ No

    (vii)   Change in senior executive officers other than due to illness?   ☐ Yes ☐ No

If "Yes" to any question in 4(i) – 4(vii) above, please provide details in the designated area at the end of this Application.

4.  Is this organization formed as a partnership?   ☐ Yes ☐ No

If "Yes", please attach a copy of the most recent partnership agreement or organizational chart.

5.  Does the **Applicant** conduct any professional ethics, peer review, accrediting, standard setting, credentialing, or licensing activity for third parties?   ☐ Yes ☐ No

If "Yes", please provide details in the designated area at the end of this Application.

6.  Is the **Applicant** seeking coverage for entities that are <u>not</u> direct or indirect Subsidiaries of the Parent Organization (i.e. commonly owned entities, affiliates, entities without controlling interest but managed by the **Applicant** via contract or agreement)?   ☐ Yes ☐ No

If "Yes", please complete the Additional Named Insured Supplemental Application

**CHUBB**

*The ForeFront Portfolio*[SM]
*for Private Companies*

---

| IV. | COVERAGE SPECIFIC RISK INFORMATION |
|---|---|

**A.    DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE INFORMATION**

    1.    **Recent or Pending Matters**

        (a)    Has the **Applicant** in the past 3 years experienced any of the following:

            (i)    Antitrust, copyright or patent litigation;    ☐ Yes ☐ No

            (ii)   Accusations or investigations for deceptive trade practices or consumer fraud;    ☐ Yes ☐ No

            (iii)  Any civil, criminal or administrative proceeding alleging a violation of any federal or state securities laws;    ☐ Yes ☐ No

            (iv)   Any other criminal actions other than those listed above?    ☐ Yes ☐ No

        (b)    Other than those identified in your response to question 1(a), has any claim or other matter been made at any time during the last 3 years against:

            (i)    Any **Applicant;** or    ☐ Yes ☐ No

            (ii)   Any proposed insured individual in his or her capacity as a director, officer, or employee of any entity?    ☐ Yes ☐ No

        If "Yes" to any question in this Section A, please provide details in the designated area at the end of this Application.

    2.    Please complete the table below for all shareholders who own ten percent (10%) or more of the outstanding securities of the **Applicant.** If the number of shareholders exceeds space in the table below, please attach complete ownership information as an addendum to this Application.

| Shareholder Name | Ownership | Is shareholder a Director or Officer or represented by a designated Director on the Board? | |
|---|---|---|---|
| | % | ☐ Yes | ☐ No |
| | % | ☐ Yes | ☐ No |
| | % | ☐ Yes | ☐ No |
| | % | ☐ Yes | ☐ No |
| | % | ☐ Yes | ☐ No |

    8.    Approximately what percentage of the **Applicants** revenues are derived from government sources? _____%

**B.    EMPLOYMENT PRACTICES LIABILITY COVERAGE INFORMATION**

    1.    **Recent or Pending Matters**

        During the past 3 years has any **Applicant**, in any capacity, been involved in any of the following:

        (i)    EEOC or other similar administrative proceedings; or    ☐ Yes ☐ No

        (ii)   Any employment-related civil suit, claim, or other matter?    ☐ Yes ☐ No

        If "Yes" to 1(i) or 1(ii) above, please provide details including date, type of suit, claim, or other matter, allegations, current status, defense costs incurred and any applicable judgment or settlement amounts in the designated area at the end of this Application or by attachment to this Application.

CHUBB                                    *The ForeFront Portfolio*[SM]
                                           *for Private Companies*

2.     **U.S. Employee Salary Ranges**

| Annual Employee Compensation Ranges (including bonuses) | Approximate % in Range Current Year |
|---|---|
| Up to $50,000 | % |
| $50,001 to $150,000 | % |
| Greater than $150,000 | % |

3.     What was the annual employee turnover rate for the last 3 years?
       Past year_____% 1 year previous _____% 2 years previous _____%

4.     Does the **Applicant** have written policies regarding:

       (i)      Equal Opportunity Employment?                          ☐ Yes ☐ No

       (ii)     Anti-discrimination?                                    ☐ Yes ☐ No

       (iii)    Anti-harassment, including sexual harassment?           ☐ Yes ☐ No

*For Applicants with <u>more than 500 Employees</u>, please also answer questions 5-7 below:*

5.     Do you, or others on your behalf or at your direction, collect, store, use or
       transmit biometric information or biometric identifiers, including but not
       limited to fingerprints, retina or iris scans, or scans of hand or face geometry?   ☐ Yes ☐ No

       If "Yes", do you receive written consent and a release from each individual?         ☐ Yes ☐ No

6.     Please provide the **Applicant's** current employee handbook, or equivalent,
       as an attachment to this Application. If none exist or is not available, please
       confirm whether written procedures are in place regarding:

       (i)      Progressive Discipline                                  ☐ Yes ☐ No

       (ii)     Terminations                                           ☐ Yes ☐ No

       (iii)    Handling complaints of harassment and discrimination    ☐ Yes ☐ No

       (iv)     Leave of Absence including FMLA                         ☐ Yes ☐ No

7.     Does the **Applicant**:

       (i)      Utilize outside counsel to review written policies and procedures?    ☐ Yes ☐ No

       (ii)     Review terminations with outside counsel?               ☐ Yes ☐ No

       (iii)    Conduct training regarding anti-discrimination and anti-harassment?   ☐ Yes ☐ No

       (iv)     Review pay practices for inequities among protected class employees?   ☐ Yes ☐ No

       (v)      Require employees to attend diversity training?         ☐ Yes ☐ No

CHUBB

*The ForeFront Portfolio*<sup>SM</sup>
*for Private Companies*

**C.    FIDUCIARY LIABILITY COVERAGE INFORMATION**

1.    **Recent or Pending Matters**

During the past 3 years, has:

(i)    any fiduciary been accused, found guilty or held liable for a breach of trust or convicted of criminal conduct?                    ☐ Yes ☐ No

(ii)    there been any assessment of fees, fines or penalties under any voluntary compliance resolution program or similar voluntary settlement program administered by the IRS, DOL or other government authority against any plan?                    ☐ Yes ☐ No

(iii)    any **Applicant**, benefit program, or any past or present individual in his or her capacity as a fiduciary of any employee benefit plan experienced any claims or other matters (other than for benefits under 29 C.F.R. § 2560.503-1(h) or similar procedures pursuant to applicable law)?                    ☐ Yes ☐ No

If "Yes" to any question in 1(i) - 1(iii) above, please provide details in the designated area at the end of this Application.

2.    **Plan Information**

Please list the names and types of **Applicant's** employee benefits plans. Attach additional pages if needed. If the **Applicant** has an ESOP, please complete the Supplemental ESOP Application.

| Plan Names (Do not include Health & Welfare Plans) | Type of Plan* | Plan Assets (current year) | Total Plan Participants | If a DB plan, current funded percentage? |
|---|---|---|---|---|
|  |  |  |  | % |
|  |  |  |  | % |
|  |  |  |  | % |

*Defined Contribution (DC), Defined Benefit (DB), Employee Stock Ownership Plan (ESOP), Excess Benefit or Top Hat (EBP)*

3.    Has there been any merger, termination, or freezing of any plan in the past 3 years?                    ☐ Yes ☐ No

If "Yes", please provide details in the designated area at the end of this Application.

4.    Are any plans NOT in compliance with plan agreements or ERISA?                    ☐ Yes ☐ No

If "Yes", please provide details in the designated area at the end of this Application.

***For all Defined Contribution retirement plans proposed for coverage with combined plan assets greater than $100,000,000, please also answer questions 5-6 below:***

5.    **Plan Administration**

| Name of DC Plan | Name of Recordkeeper | Recordkeeping Fees (Per Capita) | Name of Investment Consultant/ Manager |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

6.    In the past 18 months, has the **Applicant** reviewed all plan operation, administration and investment related fees and expenses for reasonableness?                    ☐ Yes ☐ No

CHUBB                                    *The ForeFront Portfolio*$^{SM}$
                                         *for Private Companies*

---

**D.**     **CRIME COVERAGE INFORMATION**

1.     **Past Activities**

During the past 3 years, has the **Applicant** discovered any employee theft, forgery, computer fraud, social engineering fraud, or other crime losses?     ☐ Yes ☐ No

If "Yes", please attach details itemizing each loss separately and provide the date, description, and total amount of such loss.

2.     Does the **Applicant**:

(i)     Completely segregate all accounting duties such that no one person can complete a financial transaction (such check payments, wire and electronic transfers) from beginning to end by themselves without the involvement of another person?     ☐ Yes ☐ No

(ii)    Perform a monthly reconciliation of all bank accounts by someone who does not handle deposits, sign checks or have access to electronic or mechanical signatures?     ☐ Yes ☐ No

(iii)   Allow employees to make changes to vendor or supplier details (including routing numbers, account numbers, telephone numbers, and contact information) <u>without</u> confirming those changes with a direct call using only the contact number previously provided by the vendor or supplier before the request was received?     ☐ Yes ☐ No

(iv)    Require that all outgoing payments or funds transfers be subject to dual authorization by at least one executive after being initiated by a third employee?     ☐ Yes ☐ No

(v)     Employ Multifactor Authentication (MFA) on all external access to the **Applicant's** computer systems, including Office 365 and other cloud-based email?     ☐ Yes ☐ No

***For Applicants with <u>over 500 employees</u>, please also answer questions 3-4 in their entirety below:***

3.     Does the **Applicant**:

(i)     Maintain an internal audit department?     ☐ Yes ☐ No

(ii)    Use a competitive bidding process for high value supplies and services, including IT, legal, and professional services?     ☐ Yes ☐ No

(iv)    Conduct physical inventory counts at least annually and reconcile the results with a perpetual inventory system by someone <u>not associated</u> with the control of inventory?     ☐ Yes ☐ No

(iv)    Have custody, access to or control of any clients' funds, accounts, computer systems, or tangible goods?     ☐ Yes ☐ No

4.     Does the **Applicant**:

(i)     Have procedures in place to verify the existence and ownership of all vendors prior to doing business with them?     ☐ Yes ☐ No

(ii)    Maintain a master vendor list?     ☐ Yes ☐ No

(iii)   Require all additions, removals and changes to the master vendor list or accounts payable system be performed by a person that is <u>not authorized</u> to make or process payments?     ☐ Yes ☐ No

CHUBB                                    *The ForeFront Portfolio*<sup>SM</sup>
                                            *for Private Companies*

**E.     KIDNAP RANSOM & EXTORTION COVERAGE INFORMATION**

1.     **Past Activities**

In the past 3 years, has any **Applicant** discovered an occurrence of any of the
following prior events: extortion threats, cyber extortion, hijacking, wrongful
detention, or political threats?                                              ☐ Yes ☐ No

If "Yes", please attach full details of any occurrence in the designated area
at the end of this Application.

2.     Please complete the following table regarding the **Applicant's** foreign travel
plans for the next 12 months *:

| Destination City or Region & Country | Purpose of Travel | Number of Employees Traveling | Number of Trips Per Year |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

*please attach a separate schedule of locations if additional travel information applies.*

3.     Describe the **Applicant's** security precautions at overseas locations and during outside U.S.
travel, including use of security consultants:

**F.     EMPLOYED LAWYERS LIABILITY COVERAGE INFORMATION**

1.     **Recent or Pending Matters**

In the past 3 years, has any person proposed for this coverage been the subject
of, or been involved in, any of the following arising out of his or her provision of
legal services, irrespective of whether such activity arose out of work performed
for the **Applicant:**

(i)     any reprimand, sanction, fine or discipline by, or refused admission to, a bar
association, court, administrative or regulatory agency; or          ☐ Yes ☐ No

(ii)     Any civil or criminal litigation, arbitration, claim, or administrative or
regulatory proceeding?                                              ☐ Yes ☐ No

If "Yes" to question 1(i) or 1(ii) above, please provide details in the designated
area at the end of this Application.

2.     Provide the total number of Employed Lawyers, Temporary and Contact Attorneys: _____

3.     Do any Employed Lawyers, Temporary Attorneys or Contract Attorneys provide
legal services in any of the following: Environmental Law & Compliance, Copyright,
Patent, Trademark and Other Intellectual Property Law, Litigation, or Securities Law? ☐ Yes ☐ No

4.     Do any Employed Lawyers provide Moonlighting Legal Services or legal
services for others?                                              ☐ Yes ☐ No

If "Yes" to question 4 above, describe the scope of services provided and the
total number of hours annually in the designated area at the end of this Application.

**CHUBB**

*The ForeFront Portfolio*<sup>SM</sup>
*for Private Companies*

**G.    WORKPLACE VIOLENCE EXPENSE COVERAGE INFORMATION**

1.    **Past Activities**

In the past 3 years, has any **Applicant** discovered or experienced any
workplace violence incidents?                    ☐ Yes ☐ No

If "Yes", please provide details in the designated area at the end of this
Application.

2.    Does the Applicant provide goods or services to general public?        ☐ Yes ☐ No

If "Yes", please describe the level of access the general public has to the
company's Premises in the designated area at the end of this Application.

***For Applicants with*** <u>***over 500 employees***</u>***, please answer Question 3 in
its entirety below:***

3.    Does the Applicant have all of the following policies and procedures in effect:

(i)     An Employee Assistance Program (EAP)                ☐ Yes ☐ No

(ii)    A progressive discipline policy                    ☐ Yes ☐ No

(iii)   Employee and customer complaint/grievance resolution procedures   ☐ Yes ☐ No

(iv)    A written policy on workplace violence that is circulated to all employees   ☐ Yes ☐ No

(v)     Training for supervisory and management employees to recognize,
report and respond to potentially hostile employees or situations       ☐ Yes ☐ No

(vi)    A process for performing background checks for potential employees   ☐ Yes ☐ No

(vii)   Security precautions to limit access to its premises from hostile or
volatile person                           ☐ Yes ☐ No

---

**V.     WARRANTY: PRIOR KNOWLEDGE OF FACTS/CIRCUMSTANCES/SITUATIONS**

The **Applicant** must complete the warranty statement herein for which coverage is requested and is not currently
purchased, as indicated in Section II, INSURANCE INFORMATION, of this Application.

For Alaska, Arizona, Delaware, Florida, Georgia, Idaho, Kansas, Kentucky, Maine, Montana, Nebraska, Nevada,
New Hampshire, New York, North Carolina, Oklahoma, Oregon, Puerto Rico, South Dakota, Virginia, Washington,
Wyoming and West Virginia Residents ONLY: the title of this section and any other reference to "Warranty" is
deleted and replaced with "**Applicant** Representation".

No person or entity proposed for coverage is aware of any fact, circumstance, or situation which could reasonably be
expected to give rise to any claim, action, inquiry or other matter that would fall within the scope of the proposed
**Liability Coverage Parts**:

NONE ☐ or, except:

Without prejudice to any other rights and remedies of the Company, the **Applicant** understands and agrees that if
any such fact, circumstance, or situation exists, whether or not disclosed above, any claim, action, inquiry or other
matter arising from such fact, circumstance, or situation is excluded from coverage under the proposed policy, if
issued by the Company.

---

**VI.     MATERIAL CHANGE**

CHUBB

*The* **ForeFront** *Portfolio*<sup>SM</sup>

*for Private Companies*

If there is any material change in the answers to the questions in this Application before the policy inception date, the **Applicant** must immediately notify the Company in writing, and any outstanding quotation may be modified or withdrawn.

## VII.    DECLARATIONS, FRAUD WARNINGS AND SIGNATURES

The **Applicant's** submission of this Application does not obligate the Company to issue, or the **Applicant** to purchase, a policy. The **Applicant** will be advised if the Application for coverage is accepted. The **Applicant** hereby authorizes the Company to make any inquiry in connection with this Application.

The undersigned authorized agents of the person(s) and entity(ies) proposed for this insurance declare that to the best of their knowledge and belief, after reasonable inquiry, the statements made in this Renewal Application and in any attachments or other documents submitted with this Application are true and complete. The undersigned agree that this Application and such attachments and other documents shall be the basis of the insurance policy should a policy providing the requested coverage be issued; that all such materials shall be deemed to be attached to and shall form a part of any such policy; and that the Company will have relied on all such materials in issuing any such policy.

The information requested in this Application is for underwriting purposes only and does not constitute notice to the Company under any policy of a Claim, potential Claim or other Matter.

**Notice to Alabama and Maryland Applicants:** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Notice to Arkansas, New Mexico and Ohio Applicants:** Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim or other matter containing a false, fraudulent or deceptive statement is, or may be found to be, guilty of insurance fraud, which is a crime, and may be subject to civil fines and criminal penalties.

**Notice to Colorado Applicants:** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory agencies.

**Notice to District of Columbia Applicants:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

**Notice to Florida Applicants:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Notice to Kansas Applicants:** Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

**Notice to Kentucky Applicants:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Notice to Louisiana and Rhode Island Applicants:** Any person who knowingly presents a false or fraudulent

**CHUBB**

*The ForeFront Portfolio*℠
*for Private Companies*

claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Notice to Maine, Tennessee, Virginia and Washington Applicants:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Notice to New Jersey Applicants:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Notice to Oklahoma Applicants:** Any person who, knowingly and with intent to injure, defraud or deceive any employer or employee, insurance company, or self-insured program, files a statement of claim containing any false or misleading information is guilty of a felony.

**Notice to Oregon and Texas Applicants:** Any person who makes an intentional misstatement that is material to the risk may be found guilty of insurance fraud by a court of law.

**Notice to Pennsylvania Applicants:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Notice to Puerto Rico Applicants:** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand (5,000) dollars and not more than ten thousand (10,000) dollars, or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances are present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Notice to New York Applicants:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to: a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

---

**SIGNATURE OF APPLICANT'S AUTHORIZED REPRESENTATIVE**

Date                          Signature*                          Title

_____        _____        _____

*This Application must be signed by the chief executive officer, president, executive director, chief financial officer, or any person with the responsibility for the management of insurance matters (or any equivalent position to any of the foregoing) of the Parent Organization acting as the authorized representatives of the person(s) and entity(ies) proposed for this insurance.

| |
|---|
| Produced By: |
| Agent (Print & Sign): _____   _____ |
| Agency: _____ |
| Agency Taxpayer ID or SS No.: _____   Agent License No.: _____ |
| Address: _____ |
| City: _____   State: _____   Zip: _____ |
| Submitted By: |
| Agency: _____ |
| Agency Taxpayer ID or SS No.: _____   Agent License No.: _____ |
| Address: _____ |
| City: _____   State: _____   Zip: _____ |

APP-55410_PRV (07/21)

| Section for Additional Information / Responses: | | |
|---|---|---|
| **Section #** | **Question #** | **Details** |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |